**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

      -against-

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

               Defendants.

18 Cr. 567 (VSB)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**FOR THE PRODUCTION OF *BRADY* AND RULE 16 MATERIAL**


BAKER HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
*Attorneys for Christopher Collins*


CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
*Attorneys for Cameron Collins*


DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
*Attorneys for Stephen Zarsky*

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................................2

II.   RELEVANT BACKGROUND ..............................................................................6

    A.    The Joint Government-SEC Investigation ............................................. 6

    B.    The Government's Discovery Productions ............................................. 8

        1.    Defendants' Request for a Tailored Review of the SEC Files................... 9

        2.    Defendants' Request for Review, and Production, of Additional Materials the Government Obtained from Alleged Co-Conspirators ...................... 10

        3.    Defendants' Request for FD-302s for Two Individuals .......................... 11

III.  ARGUMENT .....................................................................................................11

    A.    The Government Must Disclose All Brady Material in the Files of the SEC That Has Not Already Been Produced ................................................. 13

        1.    The Government and the SEC Engaged in a Joint Investigation............. 13

        2.    The Requested Remedy is Limited in Nature and Not Burdensome ........ 18

    B.    The Government Must Produce All Brady and Rule 16 Material Obtained from Alleged Co-Conspirators .......................................................... 20

        1.    The Entirety of the Seized ESI is Under the Government's Possession, Custody, and Control ............................................................... 20

        2.    The Requested Remedy is Necessary to Satisfy the Government's Disclosure Obligations ............................................................. 27

        3.    Materials Provided on Consent by Alleged Co-Conspirators Must Be Produced in Their Entirety ....................................................... 28

    C.    The Government Should Produce Notes and FD-302s Related to Interviews of Two Individuals That Contain Brady Material.............................. 29

IV.   CONCLUSION ................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963)....................................................................................................1

*Kyles v. Whitley*,
   514 U.S. 419 (1995)................................................................................................11

*Leka v. Portuondo*,
   257 F.3d 89 (2d Cir. 2001).....................................................................................30

*In re Search of Information Associated with [Redacted]@Mac.com*,
   13 F. Supp. 3d 157 (D.D.C. 2014) .........................................................................26

*SEC v. Christopher Collins, et al.*,
   18-cv-7128 (KPF) ....................................................................................................4

*United States v. Armstrong*,
   517 U.S. 456 (1996)................................................................................................28

*United States v. Brooks*,
   966 F.2d 1500 (D.C. Cir. 1992) .............................................................................19

*United States v. Certified Envtl. Svcs, Inc.*,
   753 F.3d 72 (2d Cir. 2014)......................................................................................31

*United States v. Connolly*,
   1:16-cr-00370 (CM), 2017 WL 945934 (S.D.N.Y. Mar. 2, 2017) .........................15

*United States v. Galanis*,
   No. 16-cr-371 (RA) (S.D.N.Y. Aug. 3, 2017) ........................................................25

*United States v. Ganias*,
   824 F.3d 199 (2d Cir. 2016) (*en banc*) ..................................................................26

*United States v. Giglio*,
   405 U.S. 150 (1972)................................................................................................12

*United States v. Gil*,
   297 F.3d 93 (2d Cir. 2002)......................................................................................12

*United States v. Gupta*,
   848 F. Supp. 2d 491 (S.D.N.Y. 2012)...............................................................4, 13, 14, 15

*United States v. Holihan*,
   236 F. Supp. 2d 255 (W.D.N.Y. 2002) ...................................................................13, 24, 28

*United States v. Kilroy*,
   523 F. Supp. 206 (E.D. Wis. 1981) .......................................................................23, 24, 29

*United States v. Mahaffy*,
   693 F.3d 113 (2d Cir. 2012) ...........................................................................................12

*United States v. Martoma*,
   990 F. Supp. 2d 458 (S.D.N.Y. 2014) .................................................................4, 13, 14, 15

*United States v. Middendorf*,
   No. 18-cr-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) ......................................30

*United States v. Ohle*,
   No. S3 08 CR 1109 (JSR), 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011) ................................27

*United States v. Rittweger*,
   524 F.3d 171 (2d Cir. 2008) ...........................................................................................31

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007) ...........................................................................................30

*United States v. Rubin/Chambers, Dunhill Ins. Svcs.*,
   825 F. Supp. 2d 451 (S.D.N.Y. 2011) ..............................................................................27

*United States v. Safavian*,
   233 F.R.D. 12 (D.D.C. 2005) ..........................................................................................12

*United States v. Savedoff*,
   No. 16-cr-41G, 2017 WL 2305751 (W.D.N.Y. May 25, 2017) ...................................23, 25, 27

*United States v. Shakur*,
   543 F. Supp. 1059 (S.D.N.Y. 1982) .................................................................................14

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) .......................................................................12, 13, 23, 24

*United States v. Stevens*,
   985 F.2d 1175 (2d Cir. 1993) .........................................................................................13

*United States v. Triumph Cap. Group, Inc.*,
   544 F.3d 149 (2d Cir. 2008) ...........................................................................................30

**Rules**

Fed. R. Crim. P. 16 ....................................................................................................1, 13

Fed. R. Crim. P. 16(a)(1)(E)(i) .................................................................12

Fed. R. Crim. P. 41 ...............................................................................22

Fed. R. Crim. P. 41(e)(2)(B).....................................................................22

**Other Authorities**

Exchange Act Rule 24c-1, 17 C.F.R. 240.24c-1...........................................16

Justice Manual § 9-5.001(A)....................................................................16

Justice Manual § 9-5.001(B)(2)................................................................16

Justice Manual § 9-5.002 ....................................................................16, 17

Memorandum from David Ogden, Deputy Attorney General, to Department
    Prosecutors, *Guidance for Prosecutors Regarding Criminal Discovery*, (Jan.
    4, 2010) https://www.justice.gov/jm/criminal-resource-manual-165-guidance-
    prosecutors-regarding-criminal-discovery ............................................2, 25, 26, 27

Moore's Federal Practice § 34.14[2][b], 34-63 to 34-64 (3d ed. 2006)........................23

SEC Rules of Practice, 17 C.F.R. §§ 201.100 *et seq.* ......................................8

Defendants Christopher Collins, Cameron Collins, and Stephen Zarsky (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to compel production of material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16 ("Rule 16"). In particular, Defendants respectfully request that the Court order the government to:

- Review for and disclose all *Brady* material and information material to the defense that is within the possession, custody, or control of the Securities and Exchange Commission ("SEC") that the government directed the SEC not to produce to Defendants or which the SEC has withheld from disclosure for any other reason;

- Review for and disclose all *Brady* and Rule 16 material contained in the devices, email accounts, iCloud accounts, and/or social media accounts belonging to the alleged co-conspirators identified by the government as CC-1, CC-2, CC-3, CC-5, and CC-6 (collectively, the "Alleged Co-Conspirators") obtained in response to search warrants or consents to search,[1] which materials are in the government's physical possession, actual custody, and complete control, or, in the alternative, produce in their entirety copies of all such devices and accounts rather than only materials the government through its sole determination deemed "responsive" as a result of a unilateral and undisclosed review; and

- Produce the full notes and Federal Bureau of Investigation ("FBI") FD-302 reports ("FD-302s") of interviews of two individuals that, as recently disclosed by the government, contain exculpatory statements made by those two individuals.

---

[1] At this time, Defendants do not request that the government search the devices and/or electronic mail accounts of the alleged co-conspirator identified by the government as CC-4 because, based upon information and belief, they are not currently in the government's possession. Should these materials, however, come into the government's possession, Defendants reserve the right to extend this motion to CC-4. Similarly, to the extent that the government possesses other "non-responsive" materials that were obtained in response to search warrants or consents to search, Defendants reserve all rights under *Brady* and Rule 16 concerning such materials. In addition, in his Motion to Compel Limited Production of Material Bearing on the Speech or Debate Clause of the Constitution that is being filed contemporaneously, Congressman Collins seeks the disclosure of the entire contents of the devices and email accounts that the government has seized from current or former congressional staffers.

The relief requested is appropriate to avoid any unnecessary and avoidable prejudice to Defendants, and to enable the Court and the parties to efficiently engage in motion practice and proceed to trial.[2]

## I.    PRELIMINARY STATEMENT

A cornerstone of a criminal defendant's right to a fair trial is a prosecutor's obligation to produce all documents and information material to preparing the defense, or favorable to the accused either because it is exculpatory or because it is impeaching. This fundamental principle is the premise for the Department of Justice's ("DOJ") instruction to federal prosecutors that they "are also encouraged to provide discovery broader and more comprehensive than the discovery obligations" under Rule 16 and *Brady*. Memorandum from David Ogden, Deputy Attorney General, to Department Prosecutors, *Guidance for Prosecutors Regarding Criminal Discovery*, (Jan. 4, 2010) https://www.justice.gov/jm/criminal-resource-manual-165-guidance-prosecutors-regarding-criminal-discovery (hereinafter, the "DOJ Memorandum"). Defendants' motion is necessitated by concern that the government is pursuing a risky and overly "close to the vest" discovery strategy based on an unduly narrow view of what must be disclosed to the defense at this stage of the proceedings.

Unfortunately, the government's treatment of *Brady* to date has been a moving target. Accompanying the government's first discovery production was an August 22, 2018 letter to counsel for each in which the government assured counsel that it "recognizes" its obligations under *Brady*, but that it was "unaware of any *Brady* material regarding your client[s]." Likewise, the government has twice represented to the Court in status conferences that it believes discovery

---

[2] On January 9, 2019, each Defendant received a hard drive from the SEC containing discovery consisting of approximately 342,000 pages. Because of the voluminous nature of the SEC's production, Defendants' review is ongoing.

is complete. During each conference, defense counsel expressed a collective disbelief that discovery was complete and that all information material to the defense had been provided.

In advance of, and following, the October 11, 2018 status conference, Defendants repeatedly requested production of additional, specific materials, including that which Defendants contended constitutes *Brady* material. Each time, and notwithstanding the prior representations, the government responded by providing *additional* disclosures or documents. These subsequent productions included several FD-302s summarizing interviews of alleged CC-5 and memorializing, among other things, that he informed the FBI and U.S. Attorney's Office that he had *not* been tipped by defendant Stephen Zarsky. Moreover, other FD-302s memorialized witness statements of individuals who asserted that they had traded their Innate shares before the public announcement because of a trading halt in Australia rather than because of any information related to drug trial results. There is no question that these reports contained *Brady* and other information required to be produced to Defendants.

Although the government represented again to the Court on December 18, 2018, that discovery was complete, Defendants have requested additional material and made further discovery requests, which they believe will yield yet more documents material to the defense or which constitute *Brady* material. The government has refused to produce certain of the requested documents or agree to all of the discovery requests.

Among these disputed issues is Defendants' request that the government review for *Brady* the documents that it instructed its civil law enforcement partner, the SEC, to withhold from producing, or which the SEC otherwise has not disclosed to Defendants. Because the SEC has already produced a significant amount of material in the related civil action,[3] Defendants

---

[3] *SEC v. Christopher Collins, et al.*, 18-cv-7128 (KPF) (hereinafter, the "SEC Action").

believe this request is quite narrow and not burdensome. Nonetheless, the government, having directed the SEC to withhold production from Defendants, surprisingly refuses to review this limited amount of material to comply with its *Brady* or Rule 16 obligations.

It is well-settled that the government's discovery obligations extend to the duty to review the files of the SEC where, as here, the government and the SEC conducted a joint investigation of the same conduct. *See, e.g., United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012); *United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014). The government cannot escape this fundamental duty by putting form over substance and calling its joint investigation with the SEC by another name. Defendants are aware from discovery that in the course of their investigation, the government and the SEC jointly interviewed numerous witnesses and exchanged work product; the SEC relied on the notes taken by FBI agents of those interviews; the SEC shared with the government hundreds of thousands of pages of documents that it had obtained through its civil regulatory powers; FBI agents relied on information provided to them by the SEC in order to obtain search warrants; and the SEC and the government announced criminal and civil enforcement actions on the same day at a joint press conference where leaders of each organization thanked the other organization for assistance in their investigation. Thus, the government's discovery obligations should include the non-burdensome requirement of reviewing the limited universe of documents not already produced by the SEC, particularly where the non-production occurred at the government's direction.

The government has also refused Defendants' request that it either fully review for *Brady* or Rule 16 material, or produce the full contents of email accounts, iCloud accounts, devices, and other evidence obtained from the Alleged Co-Conspirators pursuant to consent or seized pursuant to search warrants. The government seeks to abdicate its discovery obligations to either

fully review the material or produce it to the defense for their review by positing that it is only required to produce records that it unilaterally identified as "responsive" to the warrant through undisclosed procedures. The government apparently seeks to hide behind the nonsensical argument that it only legally possesses documents that, in the sole judgment of government reviewers, it has determined to be "responsive." However, Rule 16 and *Brady* require the government to review all documents in its possession, custody, or control. The full images or collections of emails, iCloud accounts, and devices related to the Alleged Co-Conspirators are within the government's complete control, and it cannot arbitrarily pretend they are not. The Court should order the government to either review the full collections for required disclosures or produce them in full to Defendants.

Finally, the third category of discovery requests rebuffed by the government concerns Defendants' request that the government produce full notes and FD-302s of interviews of two of Congressman Collins' former staffers that, as recently disclosed by the government, contain exculpatory statements. Although the government provided abbreviated descriptions "in substance and in part" of limited, unquestionably exculpatory statements by these two witnesses, the government has refused to provide either a copy of the notes from the interviews or the FD-302s for each. This refusal prevents Defendants from understanding the nature, scope, and full context of the exculpatory statements. Moreover, this decision stands in stark contrast to the government's decision to provide the notes of interviews and FD-302s for numerous other witnesses, including certain Alleged Co-Conspirators. Given that the government has identified these witnesses as making exculpatory statements, the Court should order the government to produce the notes of interviews and FD-302s so that the full context, scope, and nature of the

exculpatory statements can be understood, and be subjected to additional investigation, by the defense.

## II.      RELEVANT BACKGROUND

      *A.      The Joint Government-SEC Investigation*

The government's indictment in this case was unsealed on August 8, 2018. On the same day, the SEC initiated a related civil enforcement action based on the same conduct and alleging many of the same facts contained in the indictment. This was no coincidence as the criminal and civil proceedings are the product of a joint investigation conducted by the DOJ and the SEC. These agencies shared investigative resources and information from as early as September 2017. For instance, several FBI agents, in support of search warrant applications, acknowledged joint fact-gathering by stating that their knowledge was based, *inter alia*, on ████████████ ████████████████████████████ *See, e.g*. Declaration of Kendall Wangsgard ("Wangsgard Decl."), Ex. A. Thus, the fruits of the SEC investigation were relied on to obtain search warrants in the criminal investigation. Undoubtedly, information obtained from these searches was shared with the SEC.

Based on discovery produced to date, the government and the SEC jointly interviewed at least eight witnesses. The government has produced in discovery notes and some FD-302s documenting that SEC attorneys participated in the interviews of these witnesses. It is also clear from discovery that the government and SEC apparently arranged for an FBI agent to be the sole note taker for each interview. Because the government has refused to produce interview notes or FD-302s for all of the individuals it interviewed in its investigation, it is impossible to determine whether SEC attorneys jointly participated in even more witness interviews, but it is likely that this is the case. Notably, the SEC apparently did not conduct a single on-the-record interview or take any investigative testimony. In any event, it is clear that both the government and the SEC

6

relied on these joint interviews and proffers to build the cases they ultimately brought against Defendants and jointly announced publicly. Furthermore, discovery reflects that the government obtained and relied on a considerable number of documents from the SEC through an access request approved by the SEC.

The joint nature of the investigation is also evident from the circumstances surrounding an unusual meeting held at the U.S. Attorney's Office on July 18, 2018. As routinely occurs in a criminal investigation, counsel for Congressman Collins and Cameron Collins each separately requested an opportunity to meet with the line prosecutors to discuss the status of the government's then-ongoing investigation and also an opportunity to, if necessary, later meet with their supervisors prior to any charging decisions to argue why criminal charges should not be filed. *Id*., Ex. B.[4] In response, the government made the highly unusual offer of a single meeting with the line assistants and "the leadership of the U.S. Attorney's Office," with a caveat that it expected "to invite relevant officials from the SEC to be present for any meeting." *Id*. at 4 (July 2, 2018). Counsel for Congressman Collins responded that "we do not believe it would be appropriate for the SEC Enforcement Division members to attend the proposed meeting with the leadership of the U.S. Attorney's Office," because, among other reasons, counsel understood that the discussion would concern the government's criminal charging decision and that information potentially covered by grand jury secrecy might be discussed. *Id*. at 3 (July 11, 2018). Counsel also objected because the SEC Enforcement Division had not yet indicated that it was considering recommending that the Commission authorize the Enforcement Division to initiate a

---

[4] Counsel for Stephen Zarsky declined the U.S. Attorney's Office and SEC's request for a joint meeting with government leadership.

civil enforcement action. *Id*.[5] Counsel for Cameron Collins made similar objections. However, the government insisted that the meeting proceed jointly with the SEC. Ultimately *19* representatives from the U.S. Attorney's Office, the FBI, and the SEC attended and participated in the meetings, including the leadership of the U.S. Attorney's Office and both Co-Directors of the SEC's Enforcement Division.

This joint investigation culminated in the government and SEC filing parallel criminal and civil charges against Defendants, jointly announced at a press conference at the U.S. Attorney's Office. At that conference, the government and the SEC each openly thanked the other for their assistance during the investigation.

### B.    *The Government's Discovery Productions*

When the government made its first discovery production on August 22, 2018, it stated that "[t]o date, the Government is unaware of any *Brady* material regarding your client." *Id*., Ex. C. On two subsequent occasions, the government also asserted during status conferences that "we've now completed all the discovery," Tr. 3:25-4:1, Oct. 11, 2018, and "from our standpoint discovery is complete." Tr. 4:1-2, Dec. 18, 2018. Defendants have continuously disputed this contention. Following each of Defendants' requests for production of additional, specific materials, and notwithstanding their prior representations, the government responded by providing additional disclosures or documents. These productions have included exculpatory and impeachment materials within the ambit of *Brady*.[6] The fact that the government, after each

---

[5] The SEC has a well-defined process for meeting with leadership of the Enforcement Division once a "Wells" notice has been given to putative defendants, which had not occurred prior to the meeting at the U.S. Attorney's Office. *See* SEC Rules of Practice, 17 C.F.R. §§ 201.100 *et seq.*

[6] Notably, in some instances these productions explicitly referenced undisclosed *Brady* material. For example, the government produced an FD-302 for an interview of CC-5 that referenced at least one initial interview at which CC-5 purportedly lied to the government. Yet the government did not produce that report until defense counsel

affirmative request, has come forth with additional *Brady* and Rule 16 material belies its previous assertions that none existed and that its discovery obligations were satisfied. Accordingly, Defendants have issued targeted requests to ensure the government produces all information necessary to prepare their defense in a timely manner.

### 1. *Defendants' Request for a Tailored Review of the SEC Files*

For instance, Defendants requested that the government review its files, and a discrete set of material contained in the files of the SEC, and promptly produce any *Brady* material. *See* November 8, 2018 Letter, attached as Exhibit E to the Wangsgard Decl. The government, however, rejected this request and attempted to recast the SEC investigation as parallel, rather than the joint investigation it was. *See* November 27, 2018 Letter, attached as Exhibit F to the Wangsgard Decl. Defendants' request was limited because of the SEC's agreement to produce a significant portion of its investigative file to Defendants — which portion Defendants are not contending that the government must review — pursuant to a consent motion whereby the government intervened, and obtained a partial stay of discovery, in the SEC Action, and whereby the SEC was ordered to produce certain materials to Defendants (the "SEC Order"). While many materials were produced by the SEC in response, there was, however, one key exception to the SEC Order:

> Transcripts of testimony and notes of or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of *any person whom the Government designates to the SEC as an individual who may be called as a witness* in the Criminal Action.

---

identified the deficiency and specifically requested its production. *See* September 13, 2018 Letter, attached as Exhibit D to the Wangsgard Decl.

SEC Action, ECF No. 32 (emphasis added). This negotiated carve-out was expressly requested by the government. The government's position creates a hazardous situation where it has directed the SEC not to produce material to Defendants, but then asserts that it is not obligated to review the material withheld at its direction.

> 2.      *Defendants' Request for Review, and Production, of Additional Materials the Government Obtained from Alleged Co-Conspirators*

The government has acknowledged that it received materials during its investigation, including from the Alleged Co-Conspirators, in three ways: through search warrants, compulsory process (*i.e.*, subpoenas), and consensual searches. Indeed, materials produced in discovery show that the government obtained documents or information from each of CC-1, CC-2, CC-3, CC-5, and CC-6. Yet, the government has not produced a significant portion of the material in its actual possession, custody, or control, that it deemed "non-responsive" to certain search warrants. Nonetheless, the government contends that it has satisfied its *Brady* and Rule 16 obligations. This "responsiveness" determination apparently is undertaken through review of electronically stored information ("ESI"), such as the entire contents of email accounts in the full discretion of the government.

The government has asserted that its Rule 16 and *Brady* obligations extend no further than material designated by it as "responsive" to the search warrant. In fact, the government asserts that it cannot even be deemed to possess "non-responsive" materials, notwithstanding that it actually holds them within its possession, custody, or control. Defendants have requested that the government review for *Brady* and Rule 16 all materials within its actual possession, custody, or control, or simply produce the entirety of these materials. Anything less, Defendants contend, creates an artificial, government-crafted distinction based on a legal fiction that threatens to significantly prejudice the defense.

3. *Defendants' Request for FD-302s for Two Individuals*

In all discovery productions prior to November 27, 2018, the government provided full FD-302s (and often the underlying notes), even where the government disagreed with the characterization of such material as *Brady*. In following this course of conduct, the government produced interview notes and FD-302s for 20 witnesses. However, in correspondence dated November 27, 2018, the government oddly changed course for two witnesses, both of whom are former staffers of Congressman Collins and have made important exculpatory statements. Instead, the government provided only a bare-bones paraphrased summary of certain partial statements made by them. The government has been unwilling to produce the full notes and FD-302s, notwithstanding the fact that the paraphrased partial statements indicate the existence of *Brady*. The government has offered no explanation as to why the treatment for these two witnesses should diverge from its prior practice, nor is there any apparent prejudice to the government by production of the FD-302s at this time. Defendants' respectfully submit that the full FD-302s should be produced, rather than piecemeal interpretive summaries crafted secondhand by government attorneys, which do not reflect the full context, nature, or substance of the statements.

## III.   <u>ARGUMENT</u>

The law of this Circuit requires that the government take a more expansive view of its *Brady* and Rule 16 obligations and be more transparent in its discovery practices. The government has an affirmative obligation, under *Brady* and its progeny, to disclose all evidence favorable to the defense and known to the government, even absent a specific request for disclosure. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case."). As the Supreme Court held in *United States v. Giglio*, material that is favorable to an

accused includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the government's witnesses. *United States v. Giglio*, 405 U.S. 150, 154-55 (1972).

*Brady* does not permit the government to make a determination as to the reliability, admissibility, or usefulness of evidence as a pre-requisite to its disclosure. Such an exception would swallow the rule. *See, e.g.*, *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed – with the benefit of hindsight – as affecting the outcome of the trial."). Instead, *Brady* requires disclosure of any material that "would be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise" and requires disclosure of items so long as they "could lead to admissible evidence." *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002); *see also United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) (reaffirming the principles set forth in *Gil* where government's failure to disclose transcripts of SEC testimony containing both exculpatory and impeaching material constituted *Brady* violation).

The government is also required under Rule 16 to produce, upon Defendants' request, information that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16's materiality standard "normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). Even "[e]vidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense. . . ."

*United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). Indeed, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would . . . enable [a defendant] significantly to alter the quantum of proof in his favor." *Stein*, 488 F.2d at 357 (internal quotation marks and citations omitted); *see also United States v. Holihan*, 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002) (explaining that "there must be some indication that the requested discovery will have a significant effect on the defense").

As the 1974 Advisory Committee's Note to Rule 16 makes clear, however, in certain instances, "[l]imiting [Rule 16] to situations in which the defendant can show that the evidence is material seems unwise. It may be difficult for a defendant to make this showing if he does not know what the evidence is." *See* Fed. R. Crim. P. 16 advisory committee's note. As a result of the government's shielded discovery strategy, this motion addresses such an instance.

### A.  The Government Must Disclose All Brady Material in the Files of the SEC That Has Not Already Been Produced

In the Second Circuit it is well-settled that when prosecutors and the SEC work together to investigate potential misconduct, the government is required to review the SEC's files and produce any additional *Brady* material promptly. *See, e.g., Gupta*, 848 F. Supp. 2d at 493; *Martoma*, 990 F. Supp. 2d at 461. There is no question that, in this case, a joint investigation occurred. Accordingly, the result should be no different: the government should be required to review for *Brady* that material in the SEC's file which has not been produced. As described below, this is not a burdensome request.

### 1.  The Government and the SEC Engaged in a Joint Investigation

The relationship between the government and the SEC during the investigation that preceded this prosecution (and the related civil enforcement action) is substantially similar to *Gupta* and *Martoma*. Although government agencies routinely coordinate and cooperate when

investigating potential misconduct that may result in criminal or civil actions (or both), when operating in this fashion the character and nature of the relationship between enforcement bodies easily lends itself to blurring the lines to the point where purportedly "parallel" investigations converge and are thus more appropriately viewed as joint. Where, as here, this occurs, prosecutors' obligations under *Brady* expand accordingly.

A "joint investigation" does not require prosecutors and the SEC to exercise the same prosecutorial discretion, share the same trial strategy, or even conduct "coterminous investigation[s]." *Gupta*, 848 F. Supp. 2d. at 494-95. Instead, "whether parallel investigations are also 'joint' investigations must be evaluated in light of the disclosures being requested, and when it comes to *Brady* disclosures, the relevant context is one of fact-gathering, not charging determinations or otherwise." *Id.* at 494. This focus on the factual investigative stages is necessary to effectuate the purpose of *Brady*: "appris[ing] the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Id.*

Several factors are indicative of a joint investigation, including the "degree of cooperation between agencies, such as their coordination in conducting witness interviews and otherwise investigating the facts of the case." *Martoma*, 990 F. Supp. 2d at 461 (internal citations and quotations omitted). Acknowledgment of joint investigative activity also supports the extension of *Brady* obligations to documents in the sole possession of an investigative partner. *See United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982) (requiring the U.S. Attorney for the Southern District of New York to obtain *Brady* material that is in the possession of the District Attorney of Rockland County where the U.S. Attorney acknowledged the existence of "cooperative activity between [the two] with respect to the alleged crime charged in this indictment").

14

In *Gupta*, Judge Rakoff held that the government had an obligation to review SEC interview notes and memoranda for *Brady* material, following determination that the government and SEC conducted a "joint investigation" evidenced by, among other things, 44 joint witness interviews during which both the government and the SEC posed questions and only the FBI took notes. 848 F. Supp. 2d at 493-95. Similarly, in *Martoma* (another insider trading case), Judge Gardephe found that the government and the SEC conducted a "joint investigation" where, among other things, they conferred about the investigation, coordinated efforts, jointly conducted 20 interviews of 12 witnesses, and the SEC provided the government with documents it obtained during its investigation. 990 F. Supp. 2d at 461. In short, Judge Gardephe concluded that the two law enforcement agencies were "engaged in joint fact gathering." *Id.* at 462 (quoting *Gupta*, 848 F. Supp. 2d at 494). Given the joint investigation, the court held that the government's *Brady* obligations extended to documents in the sole possession of the SEC. *Id.*[7]

In the present case, materials produced in discovery to date reflect that the government and SEC "engaged in joint fact-gathering" of such a nature that it established a joint investigation. *Gupta*, 848 F. Supp. 2d at 494. As in *Gupta*, the government and the SEC conducted joint interviews of at least eight witnesses, and perhaps many more, during which only an FBI agent took notes. The government and the SEC, like in *Gupta* and *Martoma*, also exchanged work product during the course of their joint investigation. In fact, the government and the FBI relied on information they received from the SEC to establish probable cause for search warrants underpinning this case. Several of the government's productions also include

---

[7] More recently, a court recognized that this obligation was satisfied where the government undertook to "collect and review for *Brady* and *Giglio* material any notes taken by representatives from other agencies [here, the CFTC] that were present during DOJ interviews, if such notes exist." *United States v. Connolly*, 1:16-cr-00370 (CM), 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017).

documents the government received from the SEC, further reflecting joint fact-gathering efforts. By definition, this means that the government sought, and the SEC granted, an "access request" pursuant to which it shared information from its enforcement file. *See* Exchange Act Rule 24c-1, 17 C.F.R. 240.24c-1. Finally, like in *Gupta*, the SEC did not take any on-the-record testimony or independent notes of joint interviews that could be discoverable. Instead, the SEC relied entirely on the FBI to document and share its documentation of witness statements, further indicating the existence of a joint investigation.

The DOJ recognizes its obligation to review the files of its law enforcement partners in situations like the one here. In particular, the Justice Manual's policy regarding the disclosure of exculpatory and impeachment information requires the following "to ensure that trials are fair":

> It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant. . . . . *[I]n complex cases that involve parallel proceedings with regulatory agencies (SEC, FDIC, EPA, etc.), or other non-criminal investigative or intelligence agencies, the prosecutor should consider whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes.*

Justice Manual §§ 9-5.001(A), (B)(2) and 9-5.002 (emphasis added). This policy, in fact, "encourage[s]" the government "to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes." *Id.* § 9-5.002. Among other factors, this policy notes consideration of certain factors "in determining whether to review potentially discoverable information from another federal agency," which include:

- Whether the prosecutor and the agency conducted a joint investigation or shared resources related to investigating the case;

- Whether the agency played an active role in the prosecution, including conducting arrests or searches, interviewing witnesses,

>  developing prosecutorial strategy, participating in targeting discussions, or otherwise acting as part of the prosecution team;
>
>  - Whether the prosecutor knows of and has access to discoverable information held by the agency; . . .
>
>  - Whether the prosecutor has obtained other information and/or evidence from the agency;
>
>  - The degree to which information gathered by the prosecutor has been shared with the agency; [and]
>
>  - The degree to which decisions have been made jointly regarding civil, criminal, or administrative charges.

*Id.* § 9-5.002.

Here, the same transactions were investigated, resulting in substantially similar criminal and civil charges, announced by the government and the SEC on the same day in a joint press conference. During that press conference, the U.S. Attorney for the Southern District of New York, Geoffrey Berman, recognized that "a case of this type and significance obviously involves the SEC" and thanked them "for their hard work on this matter." *See* Dep't of Just., U.S. Attorney's Office Southern District of New York, *Congressman Christopher Collins Charged with Insider Trading & Lying to Federal Law Enforcement* (last visited on Feb. 8, 2019) https://www.justice.gov/usao-sdny/video/congressman-christopher-collins-charged-insider-trading-lying-federal-law. Co-Director of the SEC's Enforcement Division, Stephanie Avakian, also underscored their joint efforts by similarly thanking the prosecutors "who worked on this matter for their assistance." *Id.* In addition, the press releases issued by the government and SEC openly patted each other on the back for the other's assistance in bringing each case. *See* Press Release, Dep't of Just., U.S. Attorney's Office Southern District of New York, Aug. 8, 2018 (last visited Feb. 8, 2019) https://www.justice.gov/usao-sdny/pr/congressman-christopher-collins-and-others-charged-manhattan-federal-court-insider ("Mr. Berman praised the work of the FBI and

thanked the SEC for its assistance."); Press Release, U.S. SEC, Aug. 8, 2018, (last visited Feb. 8, 2019) https://www.sec.gov/news/press-release/2018-151 (last visited Jan. 24, 2018) ("The SEC appreciates the assistance of the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation."). These public statements reflect the joint efforts and shared resources between the government and SEC, which, according to the DOJ itself, requires the government to review the SEC's investigative file for *Brady* and Rule 16 material.

Finally, the government's insistence that "relevant officials from the SEC" be included at a meeting defense counsel sought only with the government further reflects the joint nature of the investigation. *See* Wangsgard Decl., Ex. B at 4 (July 2, 2018). In fact, the government insisted that the SEC attend the meeting without any explanation for their participation. *See id*. at 2-3. The meeting ultimately included *19* representatives from the government, the FBI, and the SEC, including the leadership of the U.S. Attorney's Office and both Co-Directors of the SEC's Enforcement Division.[8] Within three weeks of counsels' meetings, the SEC went from taking no position on charges to filing a civil enforcement action largely mirroring the government's indictment. This type of close coordination and cooperation is precisely what courts in this District have found to constitute a "joint investigation."

### 2.   *The Requested Remedy is Limited in Nature and Not Burdensome*

On November 5, 2018, the government filed a motion on consent to intervene in the SEC Action to allow it to seek a stay of discovery, with the exception of certain party document discovery, until the conclusion of this criminal case. As agreed by the parties, and ordered by Judge Failla, the discovery to be provided by the SEC to Defendants covers much of what the

---

[8] Counsel for Cameron Collins and Congressman Collins both requested similar meetings and received a similar response regarding the attendance of the SEC. Both meetings were conducted in the same fashion and included the same, or a substantially similar, group of individuals from the various agencies (including the SEC).

SEC obtained in connection with its investigation including subpoenas issued and responses received, transcripts and testimony (if any), notes and memoranda of witness interviews conducted outside the presence of the government and the FBI, other documents obtained from third parties, and a log of productions received by the SEC. *See* SEC Action, ECF No. 32.

Essentially, the SEC agreed to produce its investigative file minus certain materials the government directed it to withhold until the production of Jencks Act/§3500 material in this case. Subsequently, on January 9, 2019, each Defendant received a hard drive from the SEC containing discovery consisting of approximately 342,000 pages. Presumably, this production includes the bulk of the SEC's file and contains the information covered by the various categories set forth in the SEC Order (perhaps subject to some stragglers). Defendants do not contend that the government must review this information for *Brady*.

Instead, Defendants merely ask that the government review those portions of the documents within the SEC's possession, custody, or control relating to the investigation that the SEC has not produced, whether because of the government's affirmative request to hold it back or because the SEC withheld the information for some other reason. Review of this limited universe should pose little burden to the government. *See, e.g.*, *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (holding prosecutor has duty to search files in government offices "closely aligned with the prosecution," particularly when files can be searched "without difficulty"). In any event, it would offend the principles of *Brady* and Due Process for the government to direct the SEC not to produce certain witness statements, but at the same time disclaim any obligation to review those same materials for necessary disclosures to the defense. In light of the inextricably intertwined nature of the underlying joint investigation, the Court

should order the government to review and disclose all *Brady* material contained in that portion

of the SEC's investigatory file withheld by the SEC from its January 8, 2019 production.

B.    *The Government Must Produce All Brady and Rule 16 Material Obtained from Alleged Co-Conspirators*

The government has acknowledged that it obtained materials by executing search

warrants, through compulsory process (i.e., subpoenas), and by consensual searches. While some

of these materials were obtained from third parties,[9] others were obtained from the Alleged Co-

Conspirators or the ESI of the Alleged Co-Conspirators, and even from Defendants themselves.

While Defendants and the government both agree that the government's discovery obligations

certainly cover such documents, they fundamentally disagree on the reach of those obligations.

1.    *The Entirety of the Seized ESI is Under the Government's Possession, Custody, and Control*

In representations to counsel, the government has outlined its position regarding its

obligation to review or produce ESI obtained via search warrants as follows:

> [T]he Government has disclosed all materials responsive to the respective warrants.
> To the extent you seek additional materials obtained by the Government that are
> not responsive to those warrants, that is, materials that the Government was not
> authorized by the warrants to seize and utilize, the Government will not produce
> such materials. Consistent with developing law in this area, the Government does
> not view itself as having a right to disclose to third parties material that was not
> identified as responsive to the corresponding warrant.

Wangsgard Decl., Ex. G. This position is alarming. The government acknowledges that there

exist "additional materials obtained by the Government" or, in other words, ESI that it physically

possesses. However, it refuses to review for *Brady* and *Giglio* material and make necessary

disclosures in accordance with its *Brady* and *Giglio* obligations, simply because the government

---

[9] Such third parties include current or former members of Congressman Collins' staff, as detailed in Congressman Collins' Motion to Compel Production on the Basis of the Speech or Debate Clause of the Constitution.

in its sole discretion has labeled the materials as "non-responsive." The government's position is contrary to the warrants themselves and premised on an essentially untested and incorrect legal theory that has only recently been adopted by the U.S. Attorney's Office. Further, while the government has advised defense counsel that it "did a holistic review of the data," to determine "responsiveness" to the warrant, meaning that *somebody* from the government has, presumably, already looked at every document, it has not represented that a document by document review was performed to determine whether *Brady*, *Giglio,* or information material to the defense existed. Wangsgard Decl., Ex. H. Moreover, it is clear that no such review was done following defense counsel's notification to the government of specific areas that constitute information material to the defense. To suggest that the government can undertake a review of documents in its possession for one purpose (its own investigative needs) but not review those same documents for another (to satisfy its constitutional obligations) is nonsensical, and must not be countenanced by the Court.

    In applying for search warrants for email accounts, iCloud accounts, and/or social media accounts belonging to the Alleged Co-Conspirators, FBI agents sought search warrants directing service providers to produce to the government a digital copy of ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ associated with those accounts. Wangsgard Decl., Ex. I. The agents further represented to the magistrate judge that law enforcement personnel thereafter ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

    The corresponding search warrants issued by the magistrate judge ordered the service providers to turn over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10] Upon receipt of the data, the

---

[10] This identical formulation can be found in 13 warrants produced by the government in discovery.

warrants further authorized the government to ███████████████████████████████ ████████████████████████████████████ of certain crimes under investigation. Thus, in accordance with Fed. R. Crim. P. 41(e)(2)(B), the warrants authorized *seizure* of the *entire contents* of the accounts to be followed by a later review of that ESI consistent with the warrants. *See* Fed. R. Crim. P. 41 advisory committee's note (rule provides "for a two-step process: officers may seize or copy the entire storage medium and review it later…"). Notably, the warrants did not include any limitation on the length of time for which the government could retain the entire production of data it received from the service providers. Indeed, it does not appear that the government returned any materials to the service providers or owners of the material seized on the basis of it not being authorized by the warrants to possess them.

Thus, contrary to the government's current position, the search warrants did, in fact, authorize them to seize and retain the entire contents of the accounts. That the warrants further authorized the government to review the seized records for evidence, fruits, and instrumentalities of certain crimes does not change the scope of the seizure or limit the documents that are legally in its possession. Rather, while the search warrants *permit* the government to undertake a search for the purpose of furthering its investigation, *Brady* and Due Process *require* the government to review everything in its possession, custody, or control. The government cannot avoid its constitutional discovery obligations by asserting that it does not "legally" possess the material.

Remarkably, the government's position appears to be that it can unilaterally determine what it considers to be "responsive" using an undisclosed methodology, setting aside and walling off parts of the seized data that it does not identify as useful for its own investigation, yet claim that the material is not in its "legal possession" when it comes to satisfying discovery obligations. This level of discretion, which is unauthorized by the Federal Rules of Criminal

Procedure and the warrants themselves, infuses the process with unnecessary secrecy and arbitrarily shields from disclosure of information in the possession of the government that may well be exculpatory or material to the defense. If in the course of its review, the government viewed documents, containing *Brady*, *Giglio*, or Rule 16 material, but that it otherwise deemed "non-responsive," it apparently believes that it is prohibited from disclosing such material to the defense. And this entire determination occurred pre-indictment, at a point when the ability to assess what is *Brady*, *Giglio*, or Rule 16 material would have been next to impossible to achieve with any certainty. The Court should not allow the government to determine what is *Brady*, *Giglio*, or Rule 16 material in a pre-indictment setting.

The government's position is untenable. Not only does the government physically possess all of the ESI, it also legally possesses and controls it. *See, e.g., United States v. Savedoff*, No. 16-cr-41G, 2017 WL 2305751, at *2 (W.D.N.Y. May 25, 2017) (citation omitted) (finding that government's copy of hard drive voluntarily provided by an employee of the alleged victim was in government's possession and noting that government failed to demonstrate how government's possession changed based on its receipt). This district has squarely addressed this question:

> Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items. *Control* has been defined to include 'the legal right to obtain the documents requested upon demand.' The term 'control' is broadly construed.

*Stein*, 488 F. Supp. 2d at 361 (quoting Moore's Federal Practice § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006)).

As explained in *Stein*, the proper consideration is not merely "possession," as argued by the government, but rather "possession, custody or control." 488 F. Supp. 2d at 363. In construing the meaning of "possession, custody or control," the *Stein* court applied *United States*

*v. Kilroy*, 523 F. Supp. 206 (E.D. Wis. 1981), where the defendant, charged with interstate transportation of stolen securities, sought Rule 16 discovery from the government of certain bank records physically in the possession of his former employer, Standard Oil. *See id.* at 362. Because Standard Oil was cooperating with the government, the court ordered the government to use its "best efforts" to try to obtain the records from Standard Oil within 30 days. *Kilroy*, 523 F. Supp. at 215. The district court explained:

> Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government. The alternative course is to require the defendant to subpoena the records for production at trial and, at the time of production, to grant him a recess adequate to allow him to thoroughly review the records. I see no need for disruption of the trial in that manner when it appears that the records are, practically speaking, within the Government's control.

*Id.*; *see also Holihan*, 236 F. Supp. 2d at 261 (ordering government to inquire of other government agencies and banks assisting in investigation as to existence of requested information by defense, finding such material discoverable under Rule 16). Here, the government already has documents from the Alleged Co-Conspirators or the ESI accounts maintained by them, and the Defendants merely ask that the government review them and make the necessary disclosures.

Moreover, the government's interpretation of its obligations with regard to ESI is of recent vintage. For example, in *United States v. Galanis*, the government initially produced all non-privileged emails that it possessed — both "responsive" and "non-responsive" — because, as it explained to the Court:

> There was also the possibility – however remote – that the non-responsive emails could contain exculpatory material as to various co-defendants. . . . The Government thus determined that the course most protective of the defendants' rights to exculpatory information was to produce all non-privileged documents to *all* defendants.

Letter to the Hon. Ronnie Abrams, dated July 27, 2017, *United States v. Galanis*, No. 16-cr-371 (RA) (S.D.N.Y. Aug. 3, 2017) (Dkt. No. 195). Thus, as recently as eighteen months ago, the government recognized that its *Brady* and Rule 16 discovery obligations extended to even "non-responsive" documents in its possession, custody, or control. Now, however, the government seeks to place a newly-minted limitation on its discovery obligations that potentially impairs the rights of criminal defendants. The government must, instead, proceed in a way that protects Defendants' rights to *Brady* material.[11]

The government's position also contradicts the DOJ's own guidance provided to prosecutors on how to meet their discovery obligations. *See* DOJ Memorandum. Indeed, the DOJ Memorandum provides that "[g]enerally, all evidence and information gathered during the investigation should be reviewed, including anything obtained during searches or via subpoenas, etc." *Id*. at Step 1 ¶ B(3). Information related to the credibility of cooperating witnesses should, in particular, "be reviewed for discoverable information. . . ." *Id*. at Step 1 ¶ B(2). That is, "[t]he entire informant source file, not just the portion relating to the current case, including all proffer, immunity and other agreements, validation assessments, payment information, and other potential witness impeachment information should be included within this review." *Id*. In

---

[11] In *Galanis*, the issue concerned the government's unfiltered production of one defendant's entire email account, including documents deemed "non-responsive" to the search warrant, to other co-defendants where a protective order was not in place. Ultimately Judge Abrams ordered the return of materials produced in the absence of any objection by the defendants. Unlike in *Galanis*, a protective order is already in place here obviating any concern regarding the confidentiality of the material sought by Defendants. *See Savedoff*, 2017 WL 2305751 at *2 (acknowledging reasonable concerns raised by government about personal information of third parties, but finding that "protective order already in place suffices to allay the [g]overnment's concern").

addition, this review must include "[a]ll potential *Giglio* information known by or in the possession of the prosecution team relating to non-law enforcement witnesses." *Id.* at Step 1 ¶ B(7).

The government's contention to defense counsel that its position is "[c]onsistent with developing law in this area" is equally unavailing. In *United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) (*en banc*), the Second Circuit recognized that after a seizure of ESI pursuant to a search warrant, "[r]etention of the original storage medium or its mirror may also be necessary [among other things] to afford criminal defendants access to that medium or its forensic copy . . . to locate exculpatory evidence that the government missed." In that case, the criminal defendant argued that the government retained non-responsive data on mirrored hard drives in violation of the Fourth Amendment. In challenging this contention, the government took a position consistent with Defendants' request here (and, therefore, contrary to what the government now argues):

> [T]he retention of complete forensic images allows the government to comply with its discovery obligations, including those obligations imposed by the Constitution. If the government were to delete data, or only maintain small portions of computer data that it seized, it could be accused of destroying exculpatory evidence in violation of [*Brady*].

*United States v. Ganias*, No. 12-240, ECF No. 191, at *34–35, Br. of Appellee United States of America (2d Cir. Aug. 28, 2015). This is a critical admission by the government: once it has seized materials, of any sort, its *Brady* obligations are conterminous with the entirety of the material in its actual possession. *See also In re Search of Information Associated with [Redacted]@Mac.com*, 13 F. Supp. 3d 157, 167 n.10 (D.D.C. 2014) (recognizing as "valid" the government's concern about deleting potentially exculpatory evidence if it destroyed or returned evidence received from Apple).[12]

---

[12] Although Defendants request that the government review the information, rather than producing it wholesale, an alternative remedy would be for the government to produce all of the "non-responsive" ESI to Defendants for their

2.      *The Requested Remedy is Necessary to Satisfy the Government's Disclosure Obligations*

The requested remedy — an order directing the government to review (or turn over) the documents it collected and withheld as "non-responsive" — is necessary to comply with *Brady* and Rule 16. There is a critical difference between the review undertaken by the government in support of its investigation and a review to capture exculpatory, impeaching, or otherwise favorable documents material to the defense. There is no indication that government reviewers focused on anything other than "responsiveness," however that is defined (unilaterally by the government). It would be illogical and improper to suggest that a government reviewer can review a document for the sole, narrow purpose of determining responsiveness to an investigation, while turning a blind eye to *Brady* and Rule 16 disclosures that are mandated later during a criminal proceeding. Nonetheless, under the government's formulation, it suggests that it can disregard information material to the *defense* simply because it is deemed not to neatly fall into some bucket established by the government during its investigation. This artificial construct should not be used to block Defendants from discovering favorable information simply because the government did not view it as evidence supportive of their investigation.

This remedy is also necessary because information obtained by the government from the Alleged Co-Conspirators is likely material to the defense because some or all of the Alleged Co-

---

own review. The DOJ Memorandum contemplates this solution: "In cases involving a large volume of potentially discoverable information, prosecutors may discharge their disclosure obligations by choosing to make the voluminous information available to the defense." *Id*. at Step 2: Conducting the Review; *see also, United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849 at *4 (S.D.N.Y. Feb. 7, 2011) (finding that government's production of electronically searchable database, which provided equal access to defendants, satisfied government's *Brady* obligations); *United States v. Rubin/Chambers, Dunhill Ins. Svcs.*, 825 F. Supp. 2d 451, 454-57 (S.D.N.Y. 2011) (citations omitted) (finding government's provision of database with access to all potential *Brady* material and facilitation of defendants' review of that material satisfied government's *Brady* obligations, but noting circumstances in which courts may, "under their discretionary authority to manage the cases before them," require the government "to identify *Brady* material contained in a previously disclosed but 'voluminous' production of documents and data").

Conspirators may be government witnesses at trial. *Savedoff*, 2017 WL 2305751 at *2 (finding

production of entire copy of hard drive sought by defense appropriate where hard drive belonged

to likely prosecution witness) (citing *United States v. Armstrong*, 517 U.S. 456, 463 (1996)

(explaining that Rule 16 authorizes defendants "to examine [g]overnment documents material to

the preparation of their defense against the [g]overnment's case in chief")). Furthermore, without

adequate disclosure, Defendants have no knowledge as the volume of disregarded material, the

parameters used in reaching that determination, or what other information may exist in the

possession of the government. This hamstrings Defendants in making additional *Brady* requests,

investigating and developing their defense, and coming before the Court with information

supporting Rule 17 applications. It is also likely that any initial culling by the government did

not include flagging documents tending to poke holes in their witnesses' testimony, knowledge,

or credibility, which Defendants should be allowed to properly search for in the preparation of

their defense. *See Holihan*, 236 F. Supp. 2d at 262 (finding "that the use of [documents] to

impeach government witnesses will have a significant effect on the defense and, as thus, are

material to the defense . . . [and] are, therefore, discoverable under Rule 16"). Regardless of the

volume or nature of the investigative material collected by the government, its discovery

obligations remain the same.

> 3.    *Materials Provided on Consent by Alleged Co-Conspirators Must Be Produced in Their Entirety*

With respect to documents obtained consensually or from cooperating witnesses,

including any of the Alleged Co-Conspirators, the government's position is even more untenable.

If the government did not rely on a court-authorized search warrant to seize the materials, there

is no "responsiveness" determination to be made. The government has in its possession

everything that it obtained consensually, and such materials must be produced to Defendants in

their entirety. Similarly, to the extent that any witness or Alleged Co-Conspirator is cooperating with the government, the government should review and disclose all materials that it has obtained from them regardless of their purported "responsiveness." *Cf. Kilroy*, 523 F. Supp. 206, 215.

C.      The Government Should Produce Notes and FD-302s Related to Interviews of Two Individuals That Contain Brady Material

In prior discovery productions, the government provided full notes and FD-302s related to interviews of more than 20 witnesses. In its most recent disclosure related to two witnesses, however, the government suddenly eschewed an approach that favors full disclosure and instead provided short, paraphrased summaries reflecting only a portion of what the witnesses said, and without context. These brief summaries — drafted by the government well after the respective interviews — fail to provide the necessary context in which exculpatory statements were made and omit information necessary to develop the defense. Because such limited snippets obscure material information that will be found in the full notes and FD-302s, complete disclosure is warranted.

The sudden departure from the government's prior practice raises significant concerns about its shifting approach and strategy for discovery, particularly where it highlights exculpatory witness statements. Naturally, questions arise. Why is this approach warranted for these two individuals? How can Defendants evaluate the disclosures in an arbitrarily imposed vacuum? Why is the complete context of these statements being obscured? Is unique treatment for these particular witnesses warranted in fact and in law? The government has declined to explain why material for those interviews should be treated differently. Nor has the government attempted to explain how production of those materials would cause any prejudice, particularly

29

where these two witnesses have been identified and, presumably, the general substance of at least

part of their statements disclosed.[13]

*Brady* requires disclosures to be sufficiently specific and complete. *See, e.g.*, *Leka v.

Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001) (finding *Brady* not satisfied when the defendant was

left in the dark on what a witness would say because the government did not disclose details of

potential witness's knowledge); *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007)

("*Brady* information must be disclosed, furthermore, in a manner that gives the defendant a

reasonable opportunity to use the evidence in the trial or to use the information to obtain

evidence for use in the trial."); *but see United States v. Middendorf*, No. 18-cr-36 (JPO), 2018

WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (holding that government satisfied its *Brady*

obligations when it provided a list of individuals who made exculpatory statements and the topic

of those statements). Details provided in interview notes and FD-302s, for instance, often contain

important context surrounding witness knowledge (and the basis thereof) and the manner in

which exculpatory statements were elicited and made. Such details are absent from the

condensed, post hoc summaries drafted by government attorneys. Moreover, where, as here,

exculpatory and impeaching statements by witnesses are recorded in notes and other materials,

the Second Circuit has required the government to produce those materials to satisfy its *Brady*

obligations. For example, the Second Circuit remanded for a new trial where it found a *Brady*

violation due to the government withholding altogether an FBI agent's proffer notes that

contained exculpatory and impeaching witness statements. *United States v. Triumph Cap. Group,

Inc.*, 544 F.3d 149, 161 (2d Cir. 2008) (finding a *Brady* violation where undisclosed notes could

---

[13] Because the two individuals in question are former staffers of Congressman Collins, he respectfully submits that disclosure of this material is also appropriate pursuant to his concurrently filed motion seeking materials pursuant to the Speech or Debate Clause of the U.S. Constitution, as detailed in that motion. *See supra* note 1

have been used to negate an element of the charges as well as to impeach the witness's credibility through cross-examination or questioning the FBI agent or the witness's attorney). The Defendants here are similarly disadvantaged by the government's withholding of exculpatory and impeaching material even if the prosecution will eventually provide it.

Furthermore, courts routinely encourage prosecutors to "act[] in favor of disclosing the *Brady* material earlier" in situations when the timing of disclosure is in the prosecutor's discretion. *United States v. Rittweger*, 524 F.3d 171, 182 (2d Cir. 2008); *see also United States v. Certified Envtl. Svcs, Inc.*, 753 F.3d 72 (2d Cir. 2014) (quoting *Rittweger*, 524 F.3d at 182) (warning prosecutors that, although they did eventually turn over typewritten summaries, the belated disclosure of handwritten notes was unnecessary and they should have "acted in favor of disclosing the Brady material earlier."). Here, Defendants submit that the government's summaries are no substitute for full notes and FD-302s. Accordingly, the government should be consistent with the open, and forthright approach to disclosure that characterized its earlier productions.

For all these reasons and those articulated in Congressman Collins' Motion to Compel Limited Production of Materials Bearing on the Speech or Debate Clause of the Constitution, the notes and FD-302s of these two former congressional staffers should be disclosed forthwith.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Defendants' motion in full, and order the government to (1) review and disclose all investigatory material withheld by the SEC and make required disclosures; (2) review and disclose all *Brady* and Rule 16 material contained in ESI collected from the Alleged Co-Conspirators that is in the government's possession or, in the alternative, produce the entirety of such material; and (3) produce the full notes and FD-302s

31

from the interviews of two individuals that, as recently disclosed by the government, contain

exculpatory statements made by them.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

New York, New York
February 8, 2019

<div style="margin-left: 50%;">

BAKER HOSTETLER LLP
By: /s/ *Jonathan B. New*
Jonathan B. New
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
T: 212.589.4200
F: 212.589.4201
jnew@bakerlaw.com

Jonathan R. Barr (*pro hac vice*)
Kendall E. Wangsgard
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
T: 202.861.1500
F: 202.861.1783
jbarr@bakerlaw.com
kwangsgard@bakerlaw.com

*Attorneys for Christopher Collins*


CROWELL & MORING LLP
Rebecca M. Ricigliano
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 895-4268
rricigliano@crowell.com

Thomas A. Hanusik
Patrick S. Brown (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2530
thanusik@crowell.com

</div>

<div style="text-align: center;">32</div>

pbrown@crowell.com

*Attorneys for Cameron Collins*


Mauro M. Wolfe
Amanda L. Bassen
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1017
mmwolfe@duanemorris.com
abassen@duanemorris.com

*Attorneys for Stephen Zarsky*