**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

        -against-

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

                Defendants.

18 Cr. 567 (VSB)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER COLLINS'**
**MOTION TO COMPEL LIMITED PRODUCTION OF MATERIALS**
**<u>BEARING ON THE SPEECH OR DEBATE CLAUSE OF THE CONSTITUTION</u>**

BAKER HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, New York 10111

*Attorneys for Christopher Collins*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT .........................................................................................................2

       A.      The Government Incorrectly Suggests That This Disclosure
               Motion Should be Treated as a Motion on the Substantive Merits........................2

       B.      The Government Conflates Congressman Collins' Exercise of His
               Rights with a Request for Special Treatment ...........................................6

       C.      The Government's Reliance on Decisions of the Third and Ninth
               Circuits is Unavailing ...............................................................8

       D.      Stated Succinctly, the Government Has Overstepped ..........................................10

III.   CONCLUSION....................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown & Williamson Tobacco Corp. v. Williams*,
  62 F.3d 408 (D.C. Cir. 1995) ...................................................................................8

*Eastland v. United States Servicemen's Fund*,
  421 U.S. 491 (1975) ...............................................................................................2

*In re Fattah*,
  802 F.3d 516 (3d Cir. 2015) ................................................................................8, 9

*Fields v. Office of Johnson*,
  459 F.3d 1 ................................................................................................................7

*In re Grand Jury Subpoena*,
  571 F.3d 1200 (D.C. Cir. 2009) .............................................................................3

*Gravel v. United States*,
  408 U.S. 606 (1972) ......................................................................................1, 7, 12

*Howard v. Office of Chief Admin. Officer of U.S. House of Reps.*,
  720 F.3d 939 (D.C. Cir. 2013) ...............................................................................8

*Jewish War Veterans of the United States of America, Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) .........................................................................6

*Rangel v. Boehner*,
  20 F. Supp. 3d 148 (D.D.C. 2013) *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) ...................4

*Ray v. Proxmire*,
  581 F.2d 998 (D.C. Cir. 1978) ............................................................................3, 4

*Securities and Exchange Comm'n v. Committee on Ways and Means of the U.S. House of Reps.*,
  161 F. Supp. 3d 199 (S.D.N.Y. 2015) ..........................................................9, 10, 14

*United States v. Brewster*,
  408 U.S. 501 (1972) ......................................................................................6, 7, 10

*United States v. Dowdy*,
  479 F.2d 213 (4th Cir. 1973) .................................................................................4

*United States v. Helstoski*,
  635 F.2d 200 (3d Cir. 1980) ...................................................................................4

*United States v. Jefferson,*
    534 F. Supp. 2d 645 (E.D. Va. 2008) .................................................................6

*United States v. Johnson,*
    383 U.S. 169 (1966)............................................................................................7

*United States v. Myers,*
    635 F.2d 932 (2d Cir. 1980)...............................................................................7

*United States v. Rayburn House Office Building,*
    497 F.3d 654 (D.C. Cir. 2007), *cert. denied,* 552 U.S. 1295 (2008) ..........2, 8, 9, 13

*United States v. Renzi,*
    651 F.3d 1012 (9th Cir. 2011) ...........................................................................8

*United States v. Rose*
    28 F.3d 181 (D.C. Cir. 1994).............................................................................3

*United States v. Rostenkowski,*
    59 F.3d 1291 (D.C. Cir. 1995)........................................................................4, 5

*United States v. Swindall,*
    971 F.2d 1531 (11th Cir. 1992) .........................................................................4

**Other Authorities**

The Federalist No. 48 (James Madison, 1788) ......................................................1

U.S. Const. art. I, § 5, cl. 2...................................................................................4

U.S. Const. art. I, § 6, cl. 1...................................................................................9

I.      **INTRODUCTION**

The government purports to agree with the broad principles embedded in the Speech or Debate Clause, including that it functions as a shield against "intimidation or threats from the Executive Branch," *Gravel v. United States*, 408 U.S. 606, 616 (1972), and that it is a core constitutional protection reinforcing the separation of powers. However, while the government pays lip service to these important goals, its opposition ("Opp.") to Congressman Collins' motion for limited production of materials (the "Motion" or "Mot.") belies a different approach. The arguments that the government presses, in response to a motion requesting transparency, demonstrate anything but fidelity to the Framers' vision of the Speech or Debate Clause as "practical security" for the Legislature. The Federalist No. 48 (James Madison). Instead, the government asks the Court to jump to a decision on the merits, thereby short-circuiting the disclosure that stands as a prerequisite to such a determination. In taking this tack, the government adopts three core rhetorical positions: *first*, it suggests that the mere exercise of the right should be treated as a request for special treatment; *second*, it implores the Court to adopt the reasoning of out-of-Circuit cases previously rejected in this District; *third*, it provides no answer for, and indeed ignores, already-identified violations and concerns.

But context remains important. The Motion presently before the Court seeks only a *limited* disclosure of discrete information — materials collected by the government from two Congressional staffers; statements or testimony of staff; and any testimony before, or materials shown to, the grand jury related to the Office of Congressional Ethics ("OCE") or Committee on Ethics investigations — to flesh out the issues highlighted therein. Mot. at 24. This discovery is necessary to allow for a streamlined, efficient resolution of these weighty constitutional issues on the merits, with a full record. Congressman Collins is before the Court merely to ask that it order appropriate scrutiny where the government's actions so directly intersect with a constitutional

1

guarantee that is "absolute" and "admits [] no balancing." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975); *United States v. Rayburn House Office Building*, 497 F.3d 654, 662 (D.C. Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008). Congressman Collins' motion for limited disclosure should be granted.

II.   **ARGUMENT**

      A.   *The Government Incorrectly Suggests That This Disclosure Motion Should be Treated as a Motion on the Substantive Merits*

Rather than simply produce the limited information sought in the Motion, the government desperately opposes relief that, at bottom, requests transparency. In doing so, it confuses the procedural status of this Motion and seeks to jump straight to the merits. The government's motive is clear: to preclude inquiry into the full scope of the Speech or Debate violations, at least until well after the deadline to bring substantive motions for dismissal or the suppression of evidence. The government thus seeks to keep secret the full extent of its actions in investigating this case while injecting uncertainty and inefficiency into the proceedings. If, as the government suggests, it applied sufficient safeguards to protect against any possible intrusion into the constitutional privilege, then the discovery sought by Congressman Collins should be unremarkable.

As explained in the Motion, fulsome disclosure is necessary well in advance of trial and prior to the filing of substantive motions to enable Congressman Collins to fully protect his Legislative rights and to allow the Court to consider the entire context when fashioning an appropriate remedy. Mot. at 1-2. This is inherently a two-step process, as the Court seemed to observe in setting a bifurcated motion schedule. Mot. at 24-27; Tr. 24:12-17, Dec. 18, 2018 ("So you can actually see the statements and the parties can give their relative position about if there are any statements whether or not they fit within the rubric of speech or debate and the like. That,

I think, makes sense, so we can deal with the discovery issue first."). Despite this, the government argues that even if it may have overstepped, the Indictment cannot be dismissed on that basis in whole or in part. Opp. at 39-41. In effect, the government argues that it can shield from disclosure materials relevant to a potential constitutional violation because it believes that it can act with impunity.

The government also relies on a series of cases that focus on the question of the remedy for violations, Opp. at 39-40, whether that be redaction of the Indictment, suppression of evidence, preclusion of evidence at trial, and so forth. However, addressing a remedy is premature where the scope of the infringement is singularly known to the government. *See* Mot. at 1-2. Here, disclosure is of paramount importance because the government seeks to obscure the degree of its encroachment on the Legislative constitutional privilege.

For instance, the government completely misconstrues the import of the OCE investigation. The government relies on a distinction drawn in *United States v. Rose* between Congressional investigations of private conduct versus official acts. 28 F.3d 181 (D.C. Cir. 1994). However, *Rose* is not binding precedent in this district and its reasoning has been criticized as flawed. *See In re Grand Jury Subpoena*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) ("[T]he *Ray/Rose* test does not accord with the text of the Speech or Debate Clause and the Supreme Court's precedents. A Member's statement to a congressional ethics committee is speech in an official congressional proceeding and thus falls within the protection of the Clause."). More significantly, the government distorts the facts of *this* case in an attempt to align them to *Rose*, rather than *Ray v. Proxmire*, 581 F.2d 998, 1000 (D.C. Cir. 1978).

The government incorrectly asserts that "the OCE inquiry concerned matters entirely unrelated to the Congressman's legislative function." Opp. at 41. To the contrary, the OCE investigation concerned allegations that Congressman Collins received favorable treatment based on his status as a Member and that he took official actions to assist a private enterprise.[1] These two issues were fundamentally directed at an inquiry as to whether the Congressman had violated House rules or standards of conduct. As detailed in the Motion, this is a question squarely implicating the Discipline Clause of the Constitution, U.S. Const. art. I, § 5, cl. 2, and thus plainly within the legislative sphere. *Rangel v. Boehner*, 20 F. Supp. 3d 148, 177 (D.D.C. 2013) *aff'd*, 785 F.3d 19 (D.C. Cir. 2015). This OCE inquiry falls neatly under the rubric of *Ray*.[2]

In any event, even the authority cited by the government supports Congressman Collins' request. *See United States v. Rostenkowski*, 59 F.3d 1291, 1298 (D.C. Cir. 1995) ("[T]he circuits that have focused their attention more precisely upon the use of Speech or Debate material before a grand jury are unanimous in their condemnation of the practice.") (citing *United States v. Swindall*, 971 F.2d 1531, 1543 (11th Cir. 1992); *United States v. Helstoski*, 635 F.2d 200, 204-06 (3d Cir. 1980); *United States v. Dowdy*, 479 F.2d 213, 223 (4th Cir. 1973)). Indeed, as the *Rostenkowski* court observed, "[b]oth the purpose of the Speech or Debate Clause and all of the most relevant decisions of the other circuits point forcefully to the conclusion that the Clause

---

[1] As noted in the Motion, these allegations are erroneous. Mot. at 20. Moreover, the OCE determined that there is no substantial reason to believe any special treatment occurred and recommended that the Committee on Ethics dismiss this allegation.

[2] At two points, the government misconstrues Congressman Collins' position. Opp. at 31 ("[A]s Congressman Collins appears not to dispute, the allegations in this case have nothing whatsoever to do with the Congressman's legislative acts."); at 38 ("Congressman Collins does not appear to argue that the Indictment's reference to the OCE interview on its face implicates the Speech or Debate Clause, nor could he."). Congressman Collins reiterates that violations have *already* been established, but the full breadth thereof is uniquely known to the government.

protects not only against the reference to Speech or Debate material on the face of the indictment but also against its use before the grand jury, at least under some circumstances." *Id*

Finally, as further support for its refusal to disclose such information, the government broadly asserts that principles of grand jury secrecy pose a bar to Congressman Collins' requested relief. This argument is unavailing. First, only a part of the requested relief even pertains to grand jury testimony, as Congressman Collins has also requested disclosure of documents and interview materials. Second, the government posits that "unless the face of the indictment suggests that conduct protected by the Speech or Debate Clause is essential proof of the charge, neither dismissal nor inspection of the grand jury minutes is warranted." Opp. at 40. However, Congressman Collins has asserted just that. *See* Mot. at 21 ("It would appear that the conscious decision to inject protected materials into the prosecution is for the purpose of straining to allege motive and the purpose of the conspiracy. . . ."); ("[T]he prosecution has improperly made privileged materials a pillar of its theory of the case.").[3] Therefore, these issues will shortly be before the Court in a substantive motion, and the Court should have the benefit of a full record. Last, the government will ultimately have to disclose this information to prove the allegations in the Indictment related to the OCE investigation. Disclosure at this time will not offend traditional notions of grand jury secrecy. *Compare* Opp. at 38 ("There is a tradition in the United States, a tradition that is older than our Nation itself that proceedings before a grand jury shall generally remain secret.") (citations and quotation marks omitted), *with Rostenkowski*, 59 F.3d at 1299 ("Nor does our decision significantly threaten the historical independence of the

---

[3] The government acknowledges that "the grand jury was made aware of the fact" of the OCE investigation. Opp. at 38, n.11. This cryptic assertion only raises more questions. How was the grand jury made aware? Through what documents or witnesses? How prominently was the fact discussed and in what manner? What evidence will the government introduce and is it tainted by a violation of the Speech or Debate Clause?

grand jury.") (citation and quotation marks omitted). By the same token, while the government

proposes *in camera* review, Opp. at 36 n.10 and at 41-42, there is no reason to burden the Court

in this manner, particularly in light of the limited nature of the requested relief. *See, e.g., Jewish

War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 62 (D.D.C.

2007) ("[J]udicial resolution of claims of legislative privilege is a last resort, not a first step. This

order of operation best serves the principal purposes underlying the Speech or Debate Clause . . .

[c]utting in the same direction are the practical problems posed by judicial review.") (citation

omitted); *United States v. Jefferson*, 534 F. Supp. 2d 645, 649 (E.D. Va. 2008) (describing how

the government allowed defense counsel to review the grand jury testimony transcripts of seven

former and current members of congressional staff). None of the concerns identified by the

government justifies withholding the discrete categories of information necessary for

Congressman Collins to fully protect his constitutional privilege.

B.     *The Government Conflates Congressman Collins' Exercise of His Rights with a
        Request for Special Treatment*

As noted above, and detailed in his opening brief, Congressman Collins has *already*

identified constitutional violations by the government. Mot. at 17-21. It is on the basis of these

grave concerns that the Motion seeks additional, necessary information. Yet, the government

somehow attributes an improper motive to this request, namely the use of a constitutional

guarantee "for personal, private benefit." Opp. at 28. That position misconstrues the relief

requested and the law on which it is based.

As an initial matter, there is complete agreement that the Speech or Debate Clause does

not function to make Members of Congress "super-citizens, immune from criminal

responsibility." *United States v. Brewster*, 408 U.S. 501, 516 (1972). Nevertheless, this

constitutional protection is "a very large, albeit essential, grant of privilege," *id.*, that must be

6

read "broadly to effectuate its purpose." *Id.*; *see also United States v. Johnson*, 383 U.S. 169, 180 (1966). While the privilege extends to Members, as individuals, the privilege is institutional, mandated by the Constitution for the benefit of Congress as an independent, co-equal branch of government. *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980). Viewed appropriately through this lens, Congressman Collins' Motion is straightforward and uncontroversial. It insists that the government respect the legislative autonomy found at the core of the Clause, *Gravel*, 408 U.S. at 617; *Brewster*, 408 U.S. at 524; *Fields v. Office of Johnson*, 459 F.3d 1, 8 (D.C. Cir. 2006) (*en banc*), and be held accountable when it oversteps. From this, the government manufactures the straw man premise that Congressman Collins wants special treatment.

In fact, it is the government that has afforded "special" treatment to Congressman Collins in this case. Although the government emphasizes in its Opposition that the conduct at issue in this case is "personal criminal conduct," *see*, *e.g.*, Opp. at 31, it has repeatedly drawn attention to Congressman Collins' status as a Member to suit its own purposes. For example, the Indictment alleges (although of no relevance) that "at all times relevant to this Indictment, CHRISTOPHER COLLINS, the defendant, was a Congressman representing the 27th District of New York." ECF No. 2, ¶ 3. Likewise, in the government's press conference announcing the charges, U.S. Attorney Berman touted in the opening words of his speech: "Today, we announce criminal charges against Christopher Collins, a United States Congressman." *See* Department of Justice, U.S. Attorney's Office Southern District of New York, "Congressman Christopher Collins Charged with Insider Trading & Lying to Federal Law Enforcement" *available at* https://www.justice.gov/usao sdny/video/congressman-christopher-collins-charged-insider-trading-lying-federal-law (last visited Mar. 14, 2019). Similarly, in the first status conference before this Court, the government protested that "[t]he congressman has been on television

declaring his innocence, Judge," as if asserting one's innocence was not an entirely proper exercise of additional rights guaranteed by the Constitution. Tr. 14:22-23 (Oct. 11, 2018). The government cannot complain about Congressman Collins asserting his constitutionally protected privilege under the Speech or Debate Clause, while at the same time using his position as a Congressman as a sword against him.

   C.   *The Government's Reliance on Decisions of the Third and Ninth Circuits is Unavailing*

As detailed in Congressman Collins' Motion, the protections of the Speech or Debate Clause are threefold:

- an immunity from legal challenge to actions within the legislative sphere;

- a non-evidentiary use privilege that bars prosecutors and parties from advancing claims against a member by revealing information as to a legislative act; and

- a testimonial/discovery privilege against being compelled to testify about legislative matters, including through production of documents.

Mot. at 8-11; s*ee also Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013) ("[T]he Speech or Debate clause affords three distinct protections . . . [including] (c) a testimonial and non-disclosure privilege . . . ."). Yet, the government seizes upon two decisions from the Third and Ninth Circuits, *In re Fattah*, 802 F.3d 516, 528 (3d Cir. 2015) and *United States v. Renzi*, 651 F.3d 1012, 1035-36 (9th Cir. 2011), in support of its request that the Court significantly cabin the protections of the privilege and condone its seizure of protected legislative materials. Its reliance on those decisions is misplaced.

   As an initial matter, the *In re Fattah* and *Renzi* decisions stand in marked contrast to a series of decisions out of the D.C. Circuit, including *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420-21 (D.C. Cir. 1995) and *Rayburn*, 497 F.3d 654. As this issue has

been addressed by neither the Second Circuit nor the Supreme Court, the decisions of the D.C.,

Third, and Ninth Circuits are persuasive authority. On balance, the D.C. Circuit's approach is far

more persuasive. Indeed, the only court within this District to address the Circuit split

definitively held that "the D.C. Circuit has the better of the argument." *Securities and Exchange

Comm'n v. Committee on Ways and Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 242

(S.D.N.Y. 2015). In reaching this conclusion, Judge Gardephe thoroughly weighed the reasoning

and persuasive import of each decision and adopted the D.C. Circuit's approach.

First, the plain language of the Clause supports this view. It provides that Members "shall

not be questioned in any other Place" about legislative activities. U.S. Const. art. I, § 6, cl. 1. As

the Court reasoned in *Ways and Means*, a "question" is a request for information, and a subpoena

similarly constitutes an effort to compel disclosure of information. 161 F. Supp. 3d at 242.

Drawing an artificial distinction as to how information is sought elevates form over substance. In

this case, the compelled disclosure of information, i.e., *questioning*, was accomplished through

both grand jury subpoenas and search warrants.

Second, the premise of *Renzi* and *In re Fattah* is antithetical to the Supreme Court's

mandate that the Speech or Debate Clause speaks in absolute terms. For instance:

> *Renzi* posits a sliding scale . . . The language 'shall not be questioned' does not
> suggest a sliding scale of protection . . . To the contrary, the preemptory words
> 'shall not' suggest that the Clause does not brook compromise, and that the Clause
> does not offer less protection where the Executive Branch is investigating, or
> purports to be investigating, a legislator's allegedly illegal activity.

*Id.* at 243; *see also Rayburn*, 497 F.3d at 662 (the protection is "absolute, and thus admits no

balancing").

Finally, *Renzi* and *In re Fattah* are incongruous with the Founders' intent for two reasons.

First, they begin with the assumption that the "Executive Branch will always proceed in good

faith . . . the Framers did not proceed on that assumption" but instead "wisely assumed that each branch would seek to encroach on the authority and powers granted to the others. . . ." *Ways and Means*, 161 F. Supp. 3d at 243. Second, both cases improperly rely on concerns that non-disclosure will make prosecutions of Members more difficult or impossible. Even if true, "this effect was not lost on the Framers." *Id.* at 245 (citing *Brewster*, 408 U.S. at 516 ("In its narrowest scope, the Clause is a very large, albeit essential, grant of privilege. It has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the Framers.")). Neither concern justifies restricting the protection. The privilege is far too important to abide the narrow and restrictive view promoted by the government.

### D.    Stated Succinctly, the Government Has Overstepped

In his Motion, Congressman Collins detailed the various means by which the government furthered its investigation with protected materials. Mot. at 11-17. These included: (i) warrant applications that sought materials from Congressional staff and relied on protected legislative communications in support of probable cause; (ii) securing interviews with, or grand jury testimony of, staff; (iii) employing wholly inadequate precautions when reviewing potentially protected materials; and (iv) completely bypassing the Office of the General Counsel of the House of Representatives (notwithstanding DOJ Policy to the contrary). Rather than responding to many of these issues directly, the government instead contemptuously dismisses Congressman Collins' very real concerns.[4]

In order to justify this approach, the government either misconstrues the concerns raised or ignores them entirely. First, the government repeatedly emphasizes that the materials it sought

---

[4] *See, e.g.,* Opp. at 28 (suggesting that the argument is "novel," notwithstanding significant support); at 31 (describing the Congressman's concerns as "sensational claims"); at 32 (suggesting the concerns are "breathlessly" asserted); at 33 (describing the concerns as "imagined").

from staffers were from "personal" devices and accounts. Yet, as the government cannot dispute, personal devices and accounts are often (and in this case were) used for communications related to legislative activities. To suggest that the manner in which materials are stored is dispositive as to their character is a red herring and contradicts the position of the Counsel for the House of Representatives that communications between a legislator and staff are subject to the Speech or Debate privilege even when occurring on personal devices or through personal accounts. *See, e.g.,* Letter from Thomas G. Hungar, Esq., General Counsel, U.S. House of Representatives Office of General Counsel, to Patrick D. Hansen, Esq., Acting United States Attorney, Central District of Illinois (Apr. 26, 2017) (filed in *United States v. Schock*, No. 3:16-cr-30061 (C.D. Ill.), (ECF No. 84)) (attached hereto as Exhibit A). Indeed, the government was aware when it sought warrants for these devices that the Congressman and his staff used them to communicate with each other. Mot. at 11-12 (detailing that Office communications were used as the basis for "probable cause" in obtaining warrants). Even so, the government has already acknowledged that the best and proper way to protect the privilege, even if the device is personal, is to allow review in the first instance by the legislator. Yet it has only done so in one instance in this case. Mot. at 4 n.1.[5]

Next, the government emphasizes that at interviews of "current or former staff members" each individual was "represented by counsel." Opp. at 32. To state the obvious, counsel was not

---

[5] As noted in the Motion, one staff member has provided consent for the government to produce the contents of accounts, Mot. at 24 n.9, which were seized by warrant. The government provided those materials on February 26, 2019. While review of those materials is ongoing, *numerous additional instances* of communications implicating the Speech or Debate privilege have *already* been identified. For example, although not an exhaustive list:

- Messages from Congressman Collins to staff, describing his discussions with fellow Members about tax reform legislation;
- Messages from Congressman Collins to staff, prompted by an inquiry from another Member, about health legislation;
- References to office staff working on legislation with the House Energy and Commerce Committee, of which Congressman Collins was a member; and
- Correspondence regarding the subject matter and details of discussions at Conference meetings.

present in any grand jury testimony. In any event, the Speech or Debate privilege belongs to the Congressman and it is his to invoke or, alternately, waive. *Gravel*, 408 U.S. at 621-22 (the "privilege applicable to the aide is viewed, as it must be, as the privilege of the Senator"). Counsel for other individuals, who represent the interests of their clients, cannot serve as an adequate safeguard for Congressman Collins' privilege. The privilege does not belong to the witness, and counsel is not in a position to make any determinations of privilege. Although the government claims that witnesses were warned not to disclose privileged materials, this so-called precaution of putting the burden on witnesses unfamiliar with the contours of the privilege and without a vested interest in protecting the privilege, much less the legal ability to assert or waive it, is hardly adequate. Moreover, this "precaution" has already been shown to be ineffective as the government produced in discovery materials obtained from a former member of Congressman Collins' staff that counsel for the Congressman identified to the government as potentially protected by his and his Office's attorney-client privilege. The government thereafter agreed to destroy copies of certain documents. Mot. at 5 n.2. It is evident that the Congressman should have sole power to police his privilege as the Constitution and case law mandate.

The government also makes no attempt to respond to the fact that it completely bypassed and excluded House Counsel, notwithstanding DOJ policy. Indeed, it cannot justify this decision. As the House of Representatives Office of the General Counsel has explained, this is baffling and inexcusable:

> [S]pecial constitutional concerns arise in the legislative arena, where the separation of powers precludes non-consensual review of legislative communications by Executive Brach officials in the absence of appropriate constitutional safeguards, including an opportunity to ensure that materials protected by the Speech or Debate Clause may be redacted before such review occurs. *See* [*Rayburn*]. As the D.C. Circuit has recognized, there is "no reason why the Congressman's privilege under the Speech or Debate Clause cannot be asserted at the outset of a search in a manner that also protects the interests of the Executive in law enforcement." *Id.* at 662.

Unfortunately, however, it appears that the procedures followed by your office in this regard did not ensure compliance with those constitutional safeguards. *See id.*

&ast;  &ast;  &ast;

[M]y office routinely coordinates efforts by House Members and offices to respond to other lawful requests for information from law-enforcement agencies, and we have an excellent record of cooperative interactions with law enforcement in this regard.

By the same token, however, I trust that your office and the Department of Justice have no interest in obtaining information by improper and potentially criminal and unconstitutional means, as appears to have occurred in this instance. I would appreciate your confirmation that my assumption is correct, and accordingly that steps will be taken to ensure that events like those described above will not occur in the future.

Exhibit A at 2-3.

Here, Congressman Collins shares the precise concern identified by House Counsel: "the need for law-enforcement agents to follow proper procedures that respect the protections of the Clause when conducting investigations with the potential for disclosure of privileged legislative communications." *Id.* at 2 n.2. In his Motion, Congressman Collins expressed concern with the government's decision to bypass protocol, Mot. at 14-15, and it is telling that the government has offered no reply whatsoever. Through this silence, the government has conceded that it departed significantly from accepted practice but, in the same breath, derides Congressman Collins' arguments as mere shadow boxing.

Finally, the government still misconstrues the purpose and effect of the Clause. First, the government asserts that it "does not intend to offer at trial any privileged material. The prosecutors assigned to this case have not seen that data, and . . . it will not be further disclosed." Opp. at 36. Setting aside the fact that this suggests that privileged material was, in fact, obtained, it fails to recognize that the government's continued possession of the material is a continuous and ongoing violation. *See, e.g., Rayburn*, 497 F.3d at 666. Second, the government asserts that it

"does not believe that [the interviews] contain any protected material." Opp. at 36. The government's "belie[f]" one way or the other is irrelevant. It is not for the Executive Branch to dictate the contours of the privilege, determine what is, or is not, privileged, or otherwise substitute its judgment for that of the Member who holds the privilege. *See, e.g.*, *Ways and Means*, 161 F. Supp. 3d at 243 ("Indeed, the Framers widely assumed that each branch would seek to encroach on the authority and powers granted to the others, and intentionally adopted a separation of powers model — of which the Speech or Debate Clause is a critical component — to counteract such efforts.").

## III.    CONCLUSION

Throughout its Opposition, the government advocates for an exceedingly narrow and toothless Legislative privilege. However, the judgment of the Executive cannot be substituted for that of the Legislature when it comes to the Speech or Debate privilege guaranteed by the Constitution. The government should be required to turn over the limited information sought by Congressman Collins relating to his Legislative staff and the OCE investigation.

Respectfully submitted,

New York, New York
March 22, 2019

BAKER HOSTETLER LLP
By: /s/ *Jonathan B. New*
Jonathan B. New
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
T: 212.589.4200
F: 212.589.4201
jnew@bakerlaw.com

Jonathan R. Barr
Kendall E. Wangsgard
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036

14

T: 202.861.1500
F: 202.861.1783
jbarr@bakerlaw.com
kwangsgard@bakerlaw.com

# EXHIBIT A

THOMAS G. HUNGAR
GENERAL COUNSEL

TODD B. TATELMAN
DEPUTY GENERAL COUNSEL



ELOISE PASACHOFF
ASSISTANT GENERAL COUNSEL

# U.S. HOUSE OF REPRESENTATIVES
## OFFICE OF GENERAL COUNSEL
219 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

KIMBERLY HAMM
ASSISTANT GENERAL COUNSEL

KRISTIN A. SHAPIRO
ASSISTANT GENERAL COUNSEL

SARAH E. CLOUSE
ATTORNEY

April 26, 2017

**FILED**

APR 27 2017

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

**VIA FEDERAL EXPRESS**

United States District Court for the
    Central District of Illinois
Clerk's Office
201 South Vine Street
Urbana, IL 61802

Re: *United States v. Schock*, Case No. 3:16-cr-30061 CSB-TSH (C.D. Ill.)

Dear Clerk of Court:

    Please see the attached correspondence from my office to the Department of Justice with regard to the above-referenced matter. I would appreciate it if this could be placed on the docket. Thank you for your assistance.

Sincerely yours,

Thomas G. Hungar
General Counsel

cc:    Hon. Colin S. Bruce, U.S. District Judge, Central District of Illinois
        (*via Federal Express*)
    Timothy Bass, Assistant United States Attorney (*via Federal Express*)
    George J. Terwilliger, III (*via Federal Express*)

THOMAS G. HUNGAR
GENERAL COUNSEL

TODD B. TATELMAN
ASSOCIATE GENERAL COUNSEL

ELENI M. ROUMEL
ASSISTANT GENERAL COUNSEL

KIMBERLY HAMM
ASSISTANT GENERAL COUNSEL

KRISTIN A. SHAPIRO
ASSISTANT GENERAL COUNSEL

SARAH E. CLOUSE
ATTORNEY

# U.S. HOUSE OF REPRESENTATIVES
## OFFICE OF GENERAL COUNSEL
219 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

April 26, 2017

**Via Email and U.S. Mail**

Patrick D. Hansen, Acting United States Attorney
Office of the United States Attorney, Central District of Illinois
318 S. Sixth Street
Springfield, IL 62701

Re: *United States v. Schock*, Case No. 3:16-cr-30061 CSB-TSH (C.D. Ill.)

Dear Mr. Hansen:

I am writing to express my serious concern about improper investigative tactics that were apparently employed by federal agents working under the direction of your office in the above-referenced case, tactics that your office has erroneously characterized as lawful in recently filed pleadings. In particular, it appears that in May 2015, your office's agent(s) directed an administrative employee of the Peoria district office of the Illinois 18th congressional district, who was assisting your investigation as a confidential informant, to obtain office records from the congressional office and deliver them to the agent(s). At that time, by virtue of the resignation of former Rep. Aaron Schock, the congressional office was under the supervision and control of the Clerk of the U.S. House of Representatives, an elected officer of the House. No authorization to remove the records was sought or obtained from the Clerk at that time. Nonetheless, the administrative employee apparently complied with the agent(s)' request by, *inter alia*, accessing the official House email system, downloading thousands of emails, and delivering those and other documents to the agent(s) without authorization.[1]

The longstanding position of the House, adopted pursuant to the House's rulemaking power under express constitutional authority (U.S. Const. art. I, § 5, cl. 2), is that the official records of the office of a Member of Congress constitute the property of the Member. *See, e.g.,* H.

---

[1] Federal agents apparently also directed the employee to search for other documents, and at various times the employee removed additional documents from the congressional office and delivered them to the agents, also without authorization from or notice to the Clerk. With respect to at least some of those documents, your office's pleadings in this case indicate that in those instances the employee was acting on his own initiative. In any event, however, your office failed to provide notice regarding any of these events to the Clerk of the House or to my office until more than 18 months after the fact.

Patrick D. Hansen
April 26, 2017
Page 2

Con. Res. 307 (110th Cong.) (2008) ("[B]y custom [Member personal office congressional records] are considered the personal property of the Member who receives and creates them, and it is therefore the Member who is responsible to decide on their ultimate disposition . . . ."); H. Rep. No. 100-1054, at 14 (1988) ("Members' papers have been regarded as their personal property. . . ."); H. Rep. No. 99-994, at 5 (1986) (same). Absent authorization from the employing Member, employees of a Member's office have no lawful authority to remove official records from that office or to disclose them to third parties, including law enforcement. When a Member leaves office and until his or her successor is elected, the Clerk of the House "shall supervise the staff and manage the office . . . until a successor is elected." Rule II.2(i)(1), Rules of the U.S. House of Representatives (114th Cong.).

Accordingly, a request by federal law-enforcement agents for an employee of a congressional office to provide office records without authorization from the Member (and/or the Clerk, when appropriate) amounts to a solicitation of that employee to steal official records that do not belong to him or her. Such conduct likely constitutes a federal crime, both on the part of the employee who steals the records and, quite possibly, on the part of the federal agents who induce the commission of that underlying crime. *See, e.g.*, 18 U.S.C. §§ 2, 641; *see also* 18 U.S.C. § 1030. In addition, while I express no view on any Fourth Amendment questions presented in this particular case, it is self-evident that conduct like that described above may give rise to Fourth Amendment concerns. *See, e.g., Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614–15 (1989); *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971).

In addition to the apparent theft of official records discussed above, it appears that your office also arranged for the same congressional employee to surreptitiously record conversations with then-Rep. Schock and other congressional personnel. While such recording may be a legitimate law-enforcement technique in some circumstances, special constitutional concerns arise in the legislative arena, where the separation of powers precludes non-consensual review of legislative communications by Executive Branch officials in the absence of appropriate constitutional safeguards, including an opportunity to ensure that material protected by the Speech or Debate Clause may be redacted before such review occurs. *See United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 662-63 (D.C. Cir. 2007). As the D.C. Circuit has recognized, there is "no reason why the Congressman's privilege under the Speech or Debate Clause cannot be asserted at the outset of a search in a manner that also protects the interests of the Executive in law enforcement." *Id.* at 662. Unfortunately, however, it appears that the procedures followed by your office in this regard did not ensure compliance with those constitutional safeguards. *See id.*[2]

Needless to say, the House has a strong interest in assisting and advancing the proper and legitimate activities of law enforcement. In this particular case, as you know, the House has gone to extraordinary lengths to assist your office in its investigative efforts, at substantial cost

---

[2] I express no view on the question whether material privileged under the Speech or Debate Clause was in fact disclosed in these recordings. My concern is directed solely to the need for law-enforcement agents to follow proper procedures that respect the protections of the Clause when conducting investigations with the potential for disclosure of privileged legislative communications.

Patrick D. Hansen
April 26, 2017
Page 3

and effort on the part of my office, other House personnel, and outside contractors. Among other things, we have managed searches for and production of more than three million documents, and have arranged at least 24 interviews with some 15 present or former House employees. Moreover, we are continuing to respond to ongoing requests from your office for still more documents and witness interviews (including with newly identified individuals) as your investigation continues. And more generally, my office routinely coordinates efforts by House Members and offices to respond to other lawful requests for information from law-enforcement agencies, and we have an excellent record of cooperative interactions with law enforcement in this regard.

By the same token, however, I trust that your office and the Department of Justice have no interest in obtaining information by improper and potentially criminal and unconstitutional means, as appears to have occurred in this instance. I would appreciate your confirmation that my assumption is correct, and accordingly that steps will be taken to ensure that events like those described above will not occur in the future. I await your earliest reply.

Sincerely yours,

Thomas G. Hungar
General Counsel

cc:    Hon. Colin S. Bruce, U.S. District Judge, Central District of Illinois (via ECF)
       Hon. Rod J. Rosenstein, Deputy Attorney General
       Kenneth A. Blanco, Acting Assistant Attorney General, Criminal Division