**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

-against-

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

Defendants.

18 Cr. 567 (VSB)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR THE PRODUCTION OF *BRADY* AND RULE 16 MATERIAL

BAKER HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
*Attorneys for Christopher Collins*


CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
*Attorneys for Cameron Collins*


DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
*Attorneys for Stephen Zarsky*

## **TABLE OF CONTENTS**

I.       INTRODUCTION ..............................................................................................1

II.      ARGUMENT ....................................................................................................2

     A.      The Government Conducted a Joint Investigation with the SEC and Must Review Its Remaining Files for *Brady*..................................................................2

     B.      The Government Cannot Avoid Its *Brady* and Discovery Obligations by Deeming Unknown Amounts of Data "Non-Responsive" ......................................7

          i.      The Government Cannot Disclaim Possession of "Non-Responsive" Documents While Still Satisfying *Brady* and Rule 16 Obligations............8

          ii.     The Government Cannot Satisfy Its *Brady* and Rule 16 Obligations by Relying Upon an Early Investigative "Responsiveness" Review.............12

     C.      The Government Should Turn Over the Full Interview Notes from Two Witnesses .............................................................................................................13

III.     CONCLUSION................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963)................................................................... *passim*

*United States v. Brooks*,
   966 F.2d 1500 (D.C. Cir. 1992) ................................................................6

*United States v. Galanis*,
   No. 16-cr-371 (RA) (S.D.N.Y. Aug. 3, 2017) ......................................11

*United States v. Ganias*,
   824 F.3d 199 (2d Cir. 2016) (en banc)................................................9, 10

*United States v. Giglio*,
   405 U.S. 150 (1972) ....................................................................... *passim*

*United States v. Gil*,
   297 F.3d 93 (2d Cir. 2002)..........................................................................7

*United States v. Gupta*,
   848 F. Supp. 2d 491 (S.D.N.Y. 2012)........................................................4

*United States v. Jacobs*,
   650 F. Supp. 2d 160 (D. Conn. 2009) ......................................................13

*United States v. Kilroy*,
   523 F. Supp. 206 (E.D. Wisc. 1981)....................................................10, 11

*United States v. Lustyik*,
   2:12-CR-645-TC, 2014 WL 1494019 (D. Utah Apr. 16, 2014) ................9

*United States v. Mahaffy*,
   693 F.3d 113 (2d Cir. 2012).......................................................................7

*United States v. Martoma*,
   990 F. Supp. 2d 458 (S.D.N.Y. 2014).......................................................4

*United States v. Mendlowitz*,
   17 Cr. 248 (VSB), 2019 WL 1017533, (S.D.N.Y. Mar. 2, 2019) ......9, 10

*United States v. Middendorf*,
   18 Cr. 36 (JPO), 2018 WL 3956494 (S.D.N.Y. 2018) ........................2, 3

ii

*United States v. Rittweger*,
    524 F.3d 171 (2d Cir. 2008)......................................................................................13

*United States v. Rodriguez*,
    496 F.3d 221 (2d Cir. 2007).................................................................................4, 14

*United States v. Savedoff*,
    No. 16-cr-41G, 2017 WL 2305751 (W.D.N.Y. May 25, 2017) .............................11

*United States v. Stein*,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007).............................................................10, 11

*United States v. Vilar*,
    05 Cr. 621 (RJS), 2008 WL 2531195, (S.D.N.Y. June 22, 2008) .........................14

*United States v. Villa*,
    3:12cr40, 2014 WL 280400 (D. Conn. Jan. 24, 2014)..........................................13

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017)...................................................................13

**Statutes**

18 U.S.C. § 3500..........................................................................................6, 8, 13, 14

**Rules**

Fed. R. Crim. P. 41(e)(2)(B) .........................................................................................9

I.    **INTRODUCTION**

The government acknowledges, as it must, that it is obligated to provide timely discovery

of information that is favorable to the defense, including exculpatory evidence and evidence that

could be used to impeach the credibility of a government witness. Government's Opposition

("Opposition" or "Opp.") at 16 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The

Department of Justice encourages its prosecutors to approach its discovery obligations broadly.

Justice Manual § 9-5.002. Nevertheless, in this case, the government has repeatedly asserted that

it has produced all such information in its possession, custody, or control, only later to make

additional disclosures in response to specific requests from defense counsel. Remarkably, the

government now disclaims its obligation to even review certain categories of documents for

potential *Brady*, *Giglio*, or Rule 16 disclosures.

The Defendants have made three limited requests of the government that it has rejected

outright. First, the Defendants request that the government review for *Brady* a discrete set of

materials withheld by the Securities and Exchange Commission ("SEC") from its discovery in its

enforcement action, including interview notes withheld at the request of the government. Second,

the Defendants request that the government review for *Brady*, *Giglio*, and Rule 16 material, or

alternatively produce, electronically stored information ("ESI") from the devices of the alleged

co-conspirators that are in the possession of the government. Third, the Defendants request that

the government produce the full FBI FD-302s ("FD-302s") for two witnesses identified by the

government as having made statements that are potentially exculpatory. In response, the

government has disclaimed its close partnership with the SEC in jointly investigating this case,

created an arbitrary distinction for ESI in its possession based upon a legal fiction, and produced

incomplete and insufficient descriptions of limited statements from the FD-302s. None of these

arguments can withstand serious scrutiny. The Court should grant the relief sought in the

Defendants' Motion for the Production of *Brady* and Rule 16 Material (the "Motion" or "Mot.").

## II.    <u>ARGUMENT</u>

> A.    *The Government Conducted a Joint Investigation with the SEC and Must Review Its Remaining Files for* Brady

The government agrees with Defendants that "[a] prosecutor's duty to review files for

*Brady* material extends to reviewing information in the possession, custody, or control of another

agency" when engaged in a joint investigation. Opp. at 17. The parties, however, diverge on

whether the shared activities in this case rise to the level of a joint investigation. Importantly, the

presence or absence of a particular activity is not dispositive in the determination of whether the

government and the SEC conducted a joint or parallel investigation. Rather, various actions,

taken together, create a joint investigation. *United States v. Middendorf*, 18 Cr. 36 (JPO), 2018

WL 3956494, at *4 (S.D.N.Y. 2018) (finding "[a] number of factors are relevant in determining

whether the prosecution conducted a 'joint investigation'").

In the face of the undeniably joint nature of their investigation, the government ignores

critical facts in an effort to minimize the SEC's involvement. In its Opposition, the government

only addresses three of the relevant factors: (1) that the government and the SEC conducted joint

interviews,[1] (2) that both the government and the SEC announced charges on the same day, and

(3) that the government and the SEC thanked each other's leadership during a joint press

conference. However, as detailed in the Motion, the government and the SEC supported each

other at every critical step of their joint investigation — a fact the government has not denied and

cannot deny. In particular, the SEC and the government exchanged work product throughout the

---

[1] While the government concedes it conducted joint interviews with the SEC, it does not quantify how many interviews it conducted in total.

investigation, and the FBI relied on information from the SEC in *establishing probable cause for search warrants* furthering the investigation. Mot. at. 6. Furthermore, the government insisted on the participation of the SEC — over the objection of defense counsel for both Congressman Collins and Cameron Collins — at a pre-charge meeting during which the government and the SEC conducted a coordinated assessment of the perceived merits of their respective cases. Mot. at 6-8. The government's decision to ignore these key aspects of the government's and SEC's partnership obscures the true depth of coordination between the two agencies, and its silence on these matters speaks volumes as to their importance.

Ignoring the totality of these joint activities leads the government to a misplaced reliance on *Middendorf*, 2018 WL 3956494. The SEC's exchange of work product, and the government's reliance on information provided by the SEC to obtain search warrants, readily distinguishes the investigation here with that in *Middendorf*. While the SEC did not "share[] the fruits of its investigation with the Government" in *Middendorf*, the SEC not only shared such materials with the criminal investigative team in this case, but also provided necessary information for the government's seizure of evidence to be used in the criminal case.

Despite these extensive joint activities, the government now portrays its investigation as parallel to, rather than jointly conducted with, the SEC. The government contends that any coordination was merely born of convenience and financial prudence rather than an effort to pursue jointly an insider-trading case. Opp. at 20. However, the government cannot operate as a single monolith when expedient and economical and then disclaim such coordination to circumvent its obligations. Because the government and the SEC conducted a joint investigation, the Defendants seek relief from the Court to compel the government to review its investigative

partner's limited universe of remaining unproduced documents for *Brady* material, including notes of witness interviews currently withheld by the SEC *at the direction* of the government.

Even if the Court finds the nature of the joint investigation was limited to fact gathering, the Court should still conclude that the government has an obligation to review the SEC's remaining files for *Brady*. Although the Second Circuit has not yet addressed the issue of whether joint fact-gathering, standing alone, constitutes a joint investigation, courts in this District have found joint fact-gathering sufficient for a finding of a joint investigation. "For *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, *even if* they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence *obtained during the fact-gathering* that might not otherwise be available to the defendant." *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012) (emphasis added); *see also United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014).

The government also disclaims any obligation to review the SEC's memorialization of the joint interviews because the SEC did not take its own notes. Opp. at 20 n.2. However, the government's duty is not abrogated merely because an investigative partner does not take its own contemporaneous notes. The government has a duty to review the SEC file for *any* memorialization: post-interview memoranda, personal summaries of the interviews, internal communications regarding said interviews, and any other similar record of *Brady* or *Giglio* known to the SEC. *Gupta*, 848 F. Supp. 2d at 495 (noting the possibility the SEC attorney highlighted different information than found in the FBI agent's record); *see also United States v. Rodriguez*, 496 F.3d 221, 225–26 (2d Cir. 2007) (requiring prosecutors to turn over *Brady* regardless of whether it was memorialized in notes).

4

In its Opposition, the government argued at length that it had no obligation to review the files of its joint investigative partner, and then contended that Defendants' motion was "moot" because the SEC had advised the government that "the SEC has not withheld any materials from discovery in the civil action pursuant to the Civil Discovery Carve-Out . . . that all documents that the SEC had obtained through subpoenas to third parties have been produced . . . [and] that [the remaining] materials are derivative of information already provided to the defendants in discovery." Opp. at 22. Counsel for Congressman Collins thereafter contacted the SEC to attempt to verify the government's representation. Just this week on Tuesday, March 19, counsel for the SEC notified defense counsel that, in fact, the government's representation was incorrect. The SEC explained, in part:

> At the time the government filed its response, we had not withheld any notes of interviews with witnesses. But in re-reviewing our files after receiving your email last week, we identified a small handful of notes that we had not previously flagged as containing notes of witness interviews. We sent those notes to the government earlier today, and they have asked us to withhold them consistent with the stay order.

> We are supplementing our production this week with a small number of documents that were inadvertently not included in our original production.

Email Correspondence from Melissa Armstrong, Securities and Exchange Commission, to Defense Counsel (Mar. 21, 2019) (attached hereto as Exhibit A). To be clear, this information was disclosed only this week, and the referenced supplemental production is scheduled to be delivered today. *See id*.

As it turns out, the SEC alerted the government to this development on Monday, March 18 — one day prior to informing defense counsel. Government's Letter to the Court, Mar. 22, 2019, ECF No. 70 at 1. Despite having knowledge for at least three days of its incorrect statement to the Court and Defendants, the government waited until late Thursday evening to set the record straight, marginally in advance of the Defendants' deadline to file this Reply

Memorandum. In its letter, the government confirmed that contrary to its earlier representation, the SEC is withholding interview notes at its specific direction. The government also informed the Court that it "intends to promptly review the Notes for any potential *Brady* material and will comply with its discovery obligations in the criminal case under Rule 16 and 18 U.S.C. § 3500." *Id.* at 1-2.

This latest episode only further underscores the real and ongoing concern with the manner in which the government has purported to discharge its *Brady* obligations. Had the Defendants not inquired of the SEC (which in turn coordinated with the government before responding), the existence of this material — as well as the government's inaccurate representation — would have remained hidden based on the government's refusal to review its joint investigative partner's material. This sudden turn of events underscores the pressing need for the Court to order the relief requested by Defendants.

The SEC has also discovered additional documents it had previously agreed to produce to the parties. While the Defendants are scheduled to receive a supplemental production today, only the government can perform the limited, but necessary *Brady*, *Giglio*, and Rule 16 review of the materials in the SEC's possession that have not been previously produced to the Defendants and that will continue to be held back by the SEC. *See, e.g.*, *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (holding a prosecutor has a duty to search files in government offices "closely aligned with the prosecution," particularly when files can be searched without difficulty). The government cannot farm out its discovery obligations to a civil agency ill-equipped to perform them, as evidenced by these eleventh-hour developments.

Moreover, the government cannot disregard the SEC's attorney-work-product documents as potential sources of *Brady* or *Giglio* information. It must review those documents in the same

manner it is required to review its own attorney work product. Just because *Brady* or *Giglio* material is contained within attorney work product does not absolve the government of its obligation to make all required disclosures. Finally, to the extent the SEC files contain information that is neither work product nor duplicative statistical trading data, the government must review it for *Brady* material.

In sum, due to the joint nature of the government's and the SEC's investigation, the government should be required to review all of the SEC files that have not been produced. It is mystifying that the government continues to attempt to shirk its obligation to fulfill its Rule 16 obligations in pursuit of an overly close-to-the-vest discovery strategy aimed at denying the Defendants access to potentially helpful information until a time when they cannot use it in substantive motion practice or to formulate their defense ahead of trial. This aggressive posture denies the Defendants a fair opportunity to prepare their defense.

      B.    *The Government Cannot Avoid Its* Brady *and Discovery Obligations by Deeming Unknown Amounts of Data "Non-Responsive"*

The government continues to take an incremental approach to its discovery obligations. The government has repeatedly declared that it has met its discovery obligations, thereby allegedly mooting Defendants' requests. Yet, time and again, when pressed, the government has provided additional discovery including material within the ambit of *Brady*. Incredulously, the disclosure provided after the government represented it was "unaware of any *Brady*" included statements made by an alleged co-conspirator in which he said that he had *not* been tipped by defendant Stephen Zarsky. *See United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) (reaffirming the principles set forth in *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002), where government's failure to disclose discovery containing both exculpatory and impeaching material constituted *Brady* violation).

Now, the government disclaims possession of broad swaths of information, namely any electronic document deemed "non-responsive" in its review of materials obtained from accounts or devices belonging to the alleged co-conspirators. Although the government focuses its argument on materials obtained through the execution of search warrants, the government is in possession of *at least* one device that it obtained consensually from an alleged co-conspirator, who is likely a cooperating witness. The government only briefly acknowledges the Defendants' request regarding such consensually obtained materials. Opp. at 25. It is not clear whether the government has complied with its obligation to thoroughly search all devices and accounts consensually obtained from cooperating witnesses and/or alleged co-conspirators for *Brady*, *Giglio*, or Rule 16 material.

The government should confirm to the Court and the Defendants that it has completed a thorough search of all of the files contained on all electronic devices and accounts in its possession, including ESI seized through search warrants that it has unilaterally labeled as "non-responsive," and that it has produced all such *Brady*, *Giglio*, and Rule 16 materials to the Defendants. In the alternative, the government should produce the ESI to the Defendants in a timely manner that allows them the opportunity to review the materials before trial and reasonably investigate any potential leads.[2]

> i.     The Government Cannot Disclaim Possession of "Non-Responsive" Documents While Still Satisfying Brady *and Rule 16 Obligations*

In its Opposition, the government argues that it does not have "the authority to re-examine, or produce, ESI that it . . . [has] already determined not to be responsive to [a] warrant." Opp. at 23. However, the government's definition of legal possession is not supported

---

[2] The government's cursory reference to 18 U.S.C. § 3500, leads the Defendants to believe it will not provide this information until Defendants are foreclosed by time from meaningfully reviewing and using the ESI at issue.

by Rule 41 or the case law interpreting the Rule's scope, which expressly authorizes the seizure and retention of the entirety of an electronic device or account. "Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B).

This Court recently considered a similar question of whether the government continues to possess "non-responsive" ESI obtained pursuant to a search warrant. Relying on the analysis of *United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) (en banc), this Court held that Rule 41 permits the government to "retain[] the seized electronic evidence not to continue searching material deemed nonresponsive but to accomplish certain investigation and litigation goals, including those discussed in *Ganias II*." *United States v. Mendlowitz*, 17 Cr. 248 (VSB), 2019 WL 1017533, at *13 (S.D.N.Y. Mar. 2, 2019) (holding the government's seizure and search of electronic devices as well as the continued retention of certain electronic devices, including non-responsive material identified based on a manual review and keyword searches, for purposes of investigative and litigation goals discussed in *Ganias*, were all proper). Thus, as this Court acknowledged and accepted in *Mendlowitz*, the Second Circuit's *en banc* decision in *Ganias* recognized that full retention of ESI obtained through a search warrant may "be necessary [among other things] to afford criminal defendants access to that medium or its forensic copy . . . to locate exculpatory evidence that the government missed." *Ganias*, 824 F.3d at 215; *see also United States v. Lustyik*, 2:12-CR-645-TC, 2014 WL 1494019, at *14 (D. Utah Apr. 16, 2014) (finding the government's production of ESI obtained from seized email accounts and electronic devices that were not responsive to the search warrants did not evidence improper execution of the search warrants because "[t]he Government properly took an expansive view of what to produce in discovery, and provide all material obtained during execution of the warrants").

In support of its position that it is not required to review or produce "non-responsive" documents, the government primarily relies on transcripts of recent court proceedings or bench rulings that are not available to the public and do not constitute precedential authority.[3] Moreover, the government misses the point of *Ganias*: the retention of ESI is not only for the benefit of the government's proper authentication at trial, but also to satisfy the government's constitutional obligations to the Defendants including identification of *Brady*, *Giglio*, and Rule 16 material, as concisely articulated in *Mendlowitz*. 2019 WL 1017533, at *13. The government's subsequent renunciation of "possession" of data it views as non-responsive neither comports with its discovery obligations nor ends the analysis of its *Brady* obligations. And to be clear, the government does not dispute that it physically possesses the data at issue.

Even if one grants the government's premise that it does not legally "possess" non-responsive documents, it still has the data in its custody or control, which is broadly defined. *See United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (quoting Moore's Federal Practice § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006)) (defining control "to include 'the legal right to obtain the documents requested upon demand'"). In reliance on *United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wisc. 1981), the court in *Stein* found "control" encompasses documents that the government can either obtain voluntarily from third parties or legally through a search warrant or subpoena. *Stein*, 488 F. Supp. 2d at 362.

The government already sought and received the legal right to obtain the documents via search warrants or consent, placing the data squarely within its control. Mot. at 24. The government chides the Defendants for citing the *Kilroy* decision, disparaging it as an old case decided in another district. While *Kilroy* was indeed decided in 1981 in the District of

---

[3] The Defendants cannot respond to arguments based on transcripts that they cannot access on Pacer or Westlaw and that have not been provided to the Court.

Wisconsin, Judge Kaplan relied on it in his 2007 *Stein* decision. As Judge Kaplan explained, supported by the reasoning in *Kilroy*, the proper consideration is not merely "possession," as argued by the government, but rather "possession, custody or control." *Stein*, 488 F. Supp. 2d at 363. *Stein* stresses that the government must consider possession, custody, and control as potentially representing different subsets of documents. Indeed, the Defendants' position is not a "radical break from Rule 16" as the government contends, but rather is the law followed in this District. Opp. at 25. The government attempts to distract the Court with a straw man argument that the Defendants seek everything that the government has or could obtain from cooperating witnesses. This misconstrues the request and what *Kilroy* and *Stein* require. The Defendants merely seek all *Brady*, *Giglio*, and Rule 16 material contained in the devices of the alleged co-conspirators that are in the possession, custody, or control of the government.

As recently as two years ago, in *United States v. Galanis*, the government recognized that it possessed all ESI that it seized pursuant to search warrants, regardless of its responsiveness designation, and that such materials could permissibly be produced to defendants in satisfaction of the government's *Brady* and Rule 16 obligations. No. 16-cr-371 (RA) (S.D.N.Y. Aug. 3, 2017) (Dkt. No. 213 at *11-12). Partially at issue in *Galanis* was the absence of a protective order at the time of the government's production. As a protective order is currently in place, this concern is of no moment here. *See, e.g.*, *United States v. Savedoff*, No. 16-cr-41G, 2017 WL 2305751 (W.D.N.Y. May 25, 2017). As such, the Court may require the government to turn over the remaining material subject to the existing protective order, if the government maintains that it cannot review "non-responsive" ESI for *Brady*, *Giglio*, and Rule 16 materials.

ii.   *The Government Cannot Satisfy Its* Brady *and Rule 16 Obligations by Relying Upon an Early Investigative "Responsiveness" Review*

Although the government disclaims any obligation to review "non-responsive" ESI for potential *Brady* or *Giglio* material, it still seeks to reassure the Court that no such *Brady* materials are actually being withheld. Opp. at 22. The government contends that "to the extent [it] came across *Brady* or *Giglio* material when it reviewed the search warrant returns, such material would have been included in the subset of the ESI that the Government seized as responsive and would have been produced to the defendants at the appropriate time." Opp. at 22-23. This representation, however, provides cold comfort.

The government does not identify when such a review occurred in the timeline of the investigation and charging decisions, who performed the review, and whether those reviewers were actually instructed to look for *Brady*, *Giglio*, or Rule 16 material. Presumably, the government reviewed this ESI near the outset of its investigation and prior to the grand jury's return of the Indictment. The government therefore reviewed seized material in the very early stages of the case without knowing the specific charges that the Defendants are now facing, the potential defenses to be raised by the Defendants, and all of the witnesses, testimony, and evidence that the government may use at trial. Nevertheless, the government contends that such a premature and uninformed review of the ESI is sufficient to discharge its *Brady* obligations because the government — through a creative legal fiction — no longer legally possesses the "non-responsive" documents and cannot review them again.

The government's view of its *Brady* obligations is too facile. As a case progresses from investigation, through indictment and even trial, the exculpatory nature of certain information and evidence may only become clear over time. Likewise, material may not be *Giglio* absent the development of additional facts or information. Therefore, a determination by a reviewer, based

12

on a single review for "responsiveness" in the early stages of an investigation, risks substantial exclusion of material that is favorable to the defense. Further, *United States v. Wey*, 256 F. Supp. 3d 355, 405 (S.D.N.Y. 2017), is not to the contrary. There, Judge Nathan was concerned with the government continuing to review materials to fine-tune its investigation or develop *new charging theories*. The objectionable practice was the government using its continued possession of materials as a proactive weapon in its arsenal, as opposed to using the material to satisfy its *Brady*, *Giglio*, and Rule 16 obligations in furtherance of a defendant's constitutional right to a fair trial. *Id* at 405–06.

C.      *The Government Should Turn Over the Full Interview Notes from Two Witnesses*

The government characterizes the Defendants' request for the full production of interview notes for two individuals, whom the government identifies as "Witness-1" and "Witness-2," as an attempt by Defendants to force early production of Jencks Act material. However, as now Supreme Court Justice Sotomayor clearly stated, "[c]omplying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady* — a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500." *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008); *see also United States v. Jacobs*, 650 F. Supp. 2d 160, 168 (D. Conn. 2009) (following *Rittweger* to "remind the government that its *Brady* obligations trump the Jencks Act, that such obligations include the obligation to produce impeachment materials consistent with *Giglio*, and that such material must be produced in time for its effective use at trial") (internal quotation omitted); *United States v. Villa*, 3:12cr40 (JBA), 2014 WL 280400, at *3 n.3 (D. Conn. Jan. 24, 2014) (citing *Rittweger*, 524 F.3d at 181 n.4) ("If the statement of a witness who the Government intends to call at trial constitutes *Brady* evidence, its disclosure may be required well before the

witness testifies at trial in order to allow the defense to make 'effective use' of any exculpatory material.").

Indeed, "the Second Circuit [has] noted that '*Brady* and its progeny require the Government to disclose material information that is favorable to the accused, either because it is exculpatory, or because it is impeaching,' regardless of whether the information was also within the scope of Jencks Act." *United States v. Vilar*, 05 Cr. 621 (RJS), 2008 WL 2531195, at *1 (S.D.N.Y. June 22, 2008) (quoting *United States v. Rodriguez*, 496 F.3d 221, 224-25 (2d Cir. 2007)). Without the broad context of the statements made by "Witness-1" and "Witness-2", the Defendants are left in the dark as to key details of the witnesses' knowledge. *Rodriguez*, 496 F.3d at 226. Accordingly, the government should provide the full FD-302s or interview notes for these two individuals as *Brady* disclosures even if it also considers them Jencks Act material.

In addition, for the reasons discussed in the *Memorandum of Law in Support of Christopher Collins' Motion to Compel Limited Production Of Materials Bearing on the Speech or Debate Clause of the Constitution*, the full notes of these interviews of two Congressional staffers should be produced in advance of the substantive motions deadline to allow Congressman Collins and the Court to fully address critical Speech or Debate privilege issues in an efficient manner. The government will suffer no prejudice whatsoever by producing the requested information to the parties.

## III.   <u>CONCLUSION</u>

The government's Opposition presents a narrow view of its discovery obligations. However, the Constitution and relevant case law necessitate a thorough undertaking from the government. The government should be required to conduct a fulsome review of all documents

14

in its possession, custody, or control and make productions consistent with its obligations. As such, the Court should grant Defendants' motion in full, and order the government to:

(1) review for *Brady* a discrete set of materials withheld by the SEC from its discovery in its enforcement action, including interview notes withheld at the request of the government;

(2) review for *Brady*, *Giglio*, and Rule 16 material, or alternatively produce, ESI from the devices of the alleged co-conspirators that are in the possession of the government; and

(3) produce the full FD-302s for two witnesses identified by the government as having made statements that are potentially exculpatory.

Respectfully submitted,

New York, New York
March 22, 2019

BAKER HOSTETLER LLP
By: /s/ *Jonathan B. New*
Jonathan B. New
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
T: 212.589.4200
F: 212.589.4201
jnew@bakerlaw.com

Jonathan R. Barr
Kendall E. Wangsgard
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
T: 202.861.1500
F: 202.861.1783
jbarr@bakerlaw.com
kwangsgard@bakerlaw.com

*Attorneys for Christopher Collins*

Rebecca M. Ricigliano
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 895-4268
Email: rricigliano@crowell.com

15

Thomas A. Hanusik
Patrick S. Brown (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2530
Email: thanusik@crowell.com

*Attorneys for Cameron Collins*

Mauro M. Wolfe
Amanda L. Bassen
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1017
Email: mmwolfe@duanemorris.com

*Attorneys for Stephen Zarsky*

# EXHIBIT A

## Wangsgard, Kendall E.

| | |
|---|---|
| **From:** | Armstrong, Melissa <armstrongme@SEC.GOV> |
| **Sent:** | Thursday, March 21, 2019 4:19 PM |
| **To:** | Barr, Jonathan R.; Crumpton, Cheryl; New, Jonathan B. |
| **Cc:** | Wangsgard, Kendall E.; Hanusik, Thomas; Ricigliano, Rebecca; Brown, Patrick; Wolfe, Mauro M.; Bassen, Amanda |
| **Subject:** | RE: SEC v. Collins, et al. |

Counsel,

A CD containing the SEC's supplemental production is on its way via UPS to counsel for each defendant.  Each of your firms should receive it tomorrow.  The password for the CD is below:

Sec_HO-13318$

Please let me know if you have any questions or problems.

Best regards,
Melissa

Melissa Armstrong | 202.551.4724

**From:** Armstrong, Melissa
**Sent:** Tuesday, March 19, 2019 4:54 PM
**To:** 'Barr, Jonathan R.' <jbarr@bakerlaw.com>; Crumpton, Cheryl <CrumptonC@SEC.GOV>; New, Jonathan B. <jnew@bakerlaw.com>
**Cc:** Wangsgard, Kendall E. <kwangsgard@bakerlaw.com>; Hanusik, Thomas <THanusik@crowell.com>; Ricigliano, Rebecca <RRicigliano@crowell.com>; Brown, Patrick <PBrown@crowell.com>; Wolfe, Mauro M. <MMWolfe@duanemorris.com>; Bassen, Amanda <ABassen@duanemorris.com>
**Subject:** RE: SEC v. Collins, et al.

Counsel,

Apologies again for the delay, but we wanted to make sure our responses were fully accurate.  To answer your questions:

1) At the time the government filed its response, we had not withheld any notes of interviews with witnesses.  But in re-reviewing our files after receiving your email last week, we identified a small handful of notes that we had not previously flagged as containing notes of witness interviews.  We sent those notes to the government earlier today, and they have asked us to withhold them consistent with the stay order.

2) We are supplementing our production this week with a small number of documents that were inadvertently not included in our original production.  We believe that, after this production, we will have produced all documents received from third parties other than the government or the FBI.

3) The government's characterization of the balance of the SEC's file is accurate.  I can't say that it contains *only* attorney work product and statistical and trading data because we also have not produced, for example, scheduling or other administrative communications with third parties, but in general the categories the government has identified contain the only substantive documents we have not produced.

Best regards,
Melissa

Melissa Armstrong | 202.551.4724

**From:** Barr, Jonathan R. <jbarr@bakerlaw.com>
**Sent:** Monday, March 18, 2019 9:13 PM
**To:** Crumpton, Cheryl <CrumptonC@SEC.GOV>; New, Jonathan B. <jnew@bakerlaw.com>; Armstrong, Melissa <armstrongme@SEC.GOV>
**Cc:** Wangsgard, Kendall E. <kwangsgard@bakerlaw.com>; Hanusik, Thomas <THanusik@crowell.com>; Ricigliano, Rebecca <RRicigliano@crowell.com>; Brown, Patrick <PBrown@crowell.com>; Wolfe, Mauro M. <MMWolfe@duanemorris.com>; Bassen, Amanda <ABassen@duanemorris.com>
**Subject:** RE: SEC v. Collins, et al.

Thanks Cheryl.  Our reply brief is due this week, so that is appreciated.  Any chance you will be back to us tomorrow?

Best regards,

Jon

**From:** Crumpton, Cheryl <CrumptonC@SEC.GOV>
**Sent:** Friday, March 15, 2019 6:42 PM
**To:** New, Jonathan B. <jnew@bakerlaw.com>; Armstrong, Melissa <armstrongme@SEC.GOV>
**Cc:** Barr, Jonathan R. <jbarr@bakerlaw.com>; Wangsgard, Kendall E. <kwangsgard@bakerlaw.com>; Hanusik, Thomas <THanusik@crowell.com>; Ricigliano, Rebecca <RRicigliano@crowell.com>; Brown, Patrick <PBrown@crowell.com>; Wolfe, Mauro M. <MMWolfe@duanemorris.com>; Bassen, Amanda <ABassen@duanemorris.com>
**Subject:** RE: SEC v. Collins, et al.

Jonathan,

I apologize for the delayed response.  We are in the process of double-checking our files, but should be able to answer each of your questions early next week.

Best,
Cheryl

**From:** New, Jonathan B. <jnew@bakerlaw.com>
**Sent:** Thursday, March 14, 2019 2:33 PM
**To:** Crumpton, Cheryl <CrumptonC@SEC.GOV>; Armstrong, Melissa <armstrongme@SEC.GOV>
**Cc:** Barr, Jonathan R. <jbarr@bakerlaw.com>; Wangsgard, Kendall E. <kwangsgard@bakerlaw.com>; Hanusik, Thomas <THanusik@crowell.com>; Ricigliano, Rebecca <RRicigliano@crowell.com>; Brown, Patrick <PBrown@crowell.com>; Wolfe, Mauro M. <MMWolfe@duanemorris.com>; Bassen, Amanda <ABassen@duanemorris.com>
**Subject:** SEC v. Collins, et al.

Dear Cheryl,

In the government's response to defendants discovery motions in the criminal case, it has represented to the Court that, "The SEC has not withheld any materials from discovery in the civil action pursuant to the Civil Discovery Carve-Out . . . [and] that all documents that the SEC obtained through subpoenas to third parties have been produced to the defendants." The government further represented that, "The balance of the SEC file . . . consists primarily of attorney

2

work product and statistical and trading data collected in large databases as part of the SEC's market monitoring efforts."

In light of these representations, could you please confirm the following:

(1) The SEC is not withholding (on the basis of the Carve-Out, attorney work product or otherwise) any notes or memoranda of witness interviews, or any written statements made or adopted in the course of an interview, conducted by the SEC in connection with the SEC's investigation;

(2) The SEC has produced all documents obtained from third-parties by any means; and

(3) Whether the "balance of the SEC file" that has not been produced to the defendants contains anything other than attorney work product and "statistical and trading data collected in large databases."

Best regards,
    Jonathan


**Jonathan New**
Partner

**BakerHostetler**

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4650

jnew@bakerlaw.com
bakerlaw.com



---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.