**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA

    v.

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

             Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)

Case No. 18-cr-567 (VSB)

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS _AMICUS CURIAE_ IN
SUPPORT OF NEITHER PARTY**

DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Deputy General Counsel*
MEGAN BARBERO
  *Associate General Counsel*
BROOKS M. HANNER
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for the U.S. House of Representatives*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF INTEREST ............................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ...................................................................................................................... 5

    I.    The Speech or Debate Clause Is Central to the Separation of Powers Among Branches of the Federal Government ............................................................................ 5

        A.  *The History and Purpose of the Clause Demonstrate Its Critical Importance to the Separation of Powers* ......................................................................................... 5

        B.  *The Clause Must Be Broadly Interpreted to Protect Legislative Materials and Preserve Legislative Independence* .......................................................................... 7

    II.    The Speech or Debate Clause Includes a Privilege of Non-Disclosure ........................... 10

        A.  Rayburn *Correctly Interpreted the Clause Broadly* ............................................... 12

    III.    The Speech or Debate Clause Applies to Substantively Legislative Materials, Regardless of Where or How They Are Stored ............................................................... 16

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Abney v. United States*,
　　431 U.S. 651 (1977).............................................................................................2

*Barr v. Matteo*,
　　360 U.S. 564 (1959)...........................................................................................10

*Benford v. Am. Broad. Cos.*,
　　102 F.R.D. 208 (D. Md. 1984)............................................................................7

*Beverly Enters., Inc. v. Trump*,
　　182 F.3d 183 (3d Cir. 1999)...............................................................................2

*Brown & Williamson Tobacco Corp. v. Williams*,
　　62 F.3d 408 (D.C. Cir. 1995)...................................4, 8, 9, 10, 11, 13, 15, 17, 18

*Chapman v. Space Qualified Sys. Corp.*,
　　647 F. Supp. 551 (N.D. Fla. 1986).....................................................................12

*Dennis v. Sparks*,
　　449 U.S. 24 (1980).............................................................................................11

*Doe v. McMillan*,
　　412 U.S. 306 (1973)..............................................................1, 7, 8, 9, 11, 14, 15

*Dombrowski v. Eastland*,
　　387 U.S. 82 (1967)..........................................................................................9, 14

*Eastland v. U.S. Servicemen's Fund*,
　　421 U.S. 491 (1975)............................................1, 7, 8, 9, 10, 13, 14, 15, 18

*Elk Grove Unified Sch. Dist. v. Newdow*,
　　542 U.S. 1 (2004)................................................................................................2

*Favors v. Cuomo*,
　　285 F.R.D. 187 (E.D.N.Y. 2012).....................................................................3, 13

*Fields v. Office of Eddie Bernice Johnson*,
　　459 F.3d 1 (D.C. Cir. 2006) ................................................................................2

*Fremont Energy Corp. v. Seattle Post Intelligencer*,
　　688 F.2d 1285 (9th Cir. 1982) ..........................................................................12

*Gov't of the Virgin Islands v. Lee*,
    775 F.2d 514 (3d Cir. 1985)...................................................................7, 18

*Gravel v. United States*,
    408 U.S. 606, 616-17 (1972) .............................1, 2, 7, 8, 9, 10, 11, 12, 14, 17, 18, 19, 20

*Helstoski v. Meanor*,
    442 U.S. 500 (1979)...............................................................................2, 8

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880)....................................................................................8

*In re Grand Jury Subpoenas*,
    571 F.3d 1200 (D.C. Cir. 2009)..........................................................2, 11

*In re IBP Confidential Bus. Documents Litig.*,
    No. M.D.L. 428 (N.D. Iowa Sept. 29, 1981) ..............................................12

*In re Search of Elec. Commc'ns in the Account of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*,
    802 F.3d 516 (3d Cir. 2015)..........................................................1, 4, 14, 15

*In re Search of the Rayburn House Bldg. Room No.*,
    432 F. Supp. 2d 100 (D.D.C. 2006) ...............................................................2

*McGrain v. Daugherty*,
    273 U.S. 135 (1927)...................................................................................18

*McSurely v. McLellan*,
    553 F.2d 1277 (D.C. Cir. 1976) ..................................................................18

*Metzger v. Am. Fid. Assurance Co.*,
    No. 05-cv-1387, 2007 WL 895141 (W.D. Okla. Mar. 22, 2007) ......................12

*Miller v. Transam. Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983) .............................................................7, 10, 11

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
    844 F.2d 856 (D.C. Cir. 1988) ...............................................................10, 11

*Nixon v. United States*,
    978 F.2d 1269 (D.C. Cir. 1992) ...................................................................19

*Pentagen Techs. Int'l Ltd. v. Comm. on Appropriations of the U.S. House of Representatives*,
    20 F. Supp. 2d 41 (D.D.C. 1998) ................................................................11

*Porteous v. Baron*,
    729 F. Supp. 2d 158 (D.D.C. 2010) ...................................................................................18

*SEC v. Comm. on Ways and Means*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015).............................................................3, 13, 12, 18

*Spector Motor Serv. v. McLaughlin*,
    323 U.S. 101 (1944)......................................................................................................... 2

*Stupak v. Hoffman-LaRoche, Inc.*,
    No. 8:05-cv-00926 (M.D. Fla. Apr. 28, 2006) ...............................................................12

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)....................................................................................................6, 10

*United States v. Andersen*,
    No. 4:02-cr-00121 (S.D. Tex. May 14, 2002) .................................................................12

*United States v. Ballin*,
    144 U.S. 1 (1892)............................................................................................................20

*United States v. Biaggi*,
    853 F.2d 89 (2d Cir. 1988).........................................................................................2, 10

*United States v. Brewster*,
    408 U.S. 501 (1972).....................................................................................................8, 9

*United States v. Cisneros*,
    169 F.3d 763 (D.C. Cir. 1999) ......................................................................................18

*United States v. Dowdy*,
    479 F.2d 213 (4th Cir. 1973) ......................................................................................7, 10

*United States v. Helstoski*,
    442 U.S. 477 (1979).......................................................................................6, 7, 8 ,9 11

*United States v. Johnson*,
    337 F.2d 180 (4th Cir. 1964) ........................................................................................20

*United States v. Johnson*,
    383 U.S. 169 (1966)................................................................................1, 6, 8, 9, 10, 20

*United States v. Layton*,
    No. 80-cr-416 (N.D. Cal. Dec. 13, 1982) .......................................................................12

*United States v. McDade*,
    28 F.3d 283 (3d Cir. 1994).................................................................................2

*United States v. Moussaoui*,
    No. 01-cr-00455 (E.D. Va. Mar. 2, 2006) ......................................................12

*United States v. Myers*,
    635 F.2d 932 (2d Cir. 1980)..........................................................................6, 8

*United States v. Peoples Temple of the Disciples of Christ*,
    515 F. Supp. 246 (D.C. Cir. 1981).................................................................11

*United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*,
    497 F.3d 654 (D.C. Cir. 2007) ....................................2, 3, 4, 8, 9, 10, 11, 12, 13, 15, 16, 17

*United States v. Renzi*,
    651 F.3d 1012 (9th Cir. 2011) ...........................................1, 4, 12, 13, 14, 15

*United States v. Renzi*,
    686 F. Supp. 2d 956 (D. Ariz. 2010) ...............................................................2

*United States v. Renzi*,
    769 F.3d 731 (9th Cir. 2014) ...........................................................................1

*United States v. Schock*,
    Nos. 17-3277 & 17-3393 (7th Cir. filed Nov. 1, 2017 & Nov. 21, 2017) .........................1

*United States v. Swindall*,
    971 F.2d 1531 (11th Cir. 1992) .......................................................................2

*United States v. Verrusio*,
    762 F.3d 1 (D.C. Cir. 2014) .............................................................................1

*United Transp. Union v. Springfield Terminal Ry. Co.*,
    132 F.R.D. 4 (D. Me. 1990).............................................................................12

*Tavoulareas v. Piro*,
    93 F.R.D. 11 (D.D.C. 1981)......................................................................20, 21

*Trunk v. City of San Diego*,
    No. 06-cv-1597 (S.D. Cal. Sept. 13, 2007)....................................................21

**Constitution & Statutes**

U.S. Const. art I, § 5, cl. 2.................................................................................20

U.S. Const. art. I, § 6, cl. 1............................................................................1, 14

5 U.S.C. § 551(1)(A).......................................................................................19

5 U.S.C. § 552(a) ............................................................................................19

44 U.S.C. § 2202 .............................................................................................19

44 U.S.C. § 2901(14) .......................................................................................19

44 U.S.C. § 3101 *et seq.,*................................................................................19

**Other**

Harold Hulme, *The Winning of Freedom of Speech by the House of Commons*,
    61 Am. Hist. Rev. 825, 836 (1956).........................................................9

H. Con. Res. 307 (110th Cong.) (2008) ...........................................................19

H.R. Rep. No. 95-1487 (1978)..........................................................................19

H.R. Rep. No. 100-1054 (1998).........................................................................19

The Federalist No. 48 (James Madison) .............................................................5

The Federalist No. 51 (James Madison) .............................................................5

Rules of the U.S. House of Representatives (116th Cong.)
    Rule VII.6(b).......................................................................................19

## STATEMENT OF INTEREST

The United States House of Representatives ("House")[1] respectfully submits this brief as *amicus curiae* to address the scope and application of the Speech or Debate Clause of the Constitution.  U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place.").  The Speech or Debate Clause is "an important protection of the independence and integrity of the legislature" that "reinforce[es] the separation of powers so deliberately established by the Founders."  *United States v. Johnson*, 383 U.S. 169, 178 (1966).  The House has a substantial institutional interest in the judiciary's interpretation of the Speech or Debate Clause.

The Clause is "read broadly to effectuate its purposes," *id.* at 180, and "is an absolute bar to interference" with respect to any activity "within the legitimate legislative sphere," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)).  The Clause provides Members with, among other things, absolute protection against seizure and compelled production of their legislative materials; it is a pillar of congressional independence and one of the cornerstones of its relationship with the other branches of the federal government.  *See, e.g.*, *id.* at 501-04, 509-11; *Gravel v. United States*, 408 U.S. 606, 616-17, 624-25 (1972).  For that reason, the House regularly presents its expert view as *amicus curiae* in cases, including criminal prosecutions, implicating the Speech or Debate Clause.[2]

---

[1]  The Bipartisan Legal Advisory Group, which consists of the Speaker, the Majority Leader, the Majority Whip, the Republican Leader, and the Republican Whip, unanimously authorized the filing of this brief on behalf of the House.  This group "speaks for, and articulates the institutional position of, the House in all litigation matters."  Rule II.8(b), Rules of the U.S. House of Representatives (116th Cong.).

[2] *See, e.g.*, *United States v. Schock*, Nos. 17-3277 & 17-3393 (7th Cir. filed Nov. 1, 2017 & Nov. 21, 2017); *In re Fattah*, 802 F.3d 516 (3d Cir. 2015); *United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014); *United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014); *United States v. Renzi*, 651

The House expresses no opinion on the criminal charges against Representative Christopher Collins or any other defendant in this case.  The House does not suggest that Representative Collins, or any Member or employee of Congress, is above the law or immune from prosecution in an appropriate case.  Nor does the House express any opinion on the specific claims of privilege at issue in the underlying motions.  The House submits this brief only to urge that any resolution of issues arising under the Speech or Debate Clause should reflect and adhere to the well-established principles set forth below.

We note that application of the Speech or Debate Clause raises constitutional issues. This Court should address them only if it must; if there are other ways to resolve the evidentiary claims made by Representative Collins, they should be used.  *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (expressing "the 'deeply rooted' commitment 'not to pass on questions of constitutionality' unless adjudication of the constitutional issue is necessary" (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944))).[3]

---

F.3d 1012 (9th Cir. 2011); *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009); *In re Search of the Rayburn House Bldg. Room No.*, 432 F. Supp. 2d 100 (D.D.C. 2006), *rev'd sub nom. United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007); *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) (en banc); *Beverly Enters., Inc. v. Trump*, 182 F.3d 183 (3d Cir. 1999); *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994); *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992); *United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988); *United States v. Renzi*, 686 F. Supp. 2d 956 (D. Ariz. 2010).

[3] We also note that a ruling on the Speech and Debate Clause that is adverse to a Member could be immediately appealable and may needlessly delay this case.  Given the absolute nature of the Speech or Debate Clause and its critical importance to our system of government, courts have held repeatedly that adverse Speech or Debate rulings are immediately appealable.  *See, e.g.*, *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) ("[I]f a Member is to avoid *exposure* to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his … challenge … must be reviewable before … exposure [to the questioning] occurs." (quoting *Abney v. United States*, 431 U.S. 651, 662 (1977))); *Gravel*, 408 U.S. at 608 & n.1 (noting that Senator Gravel appealed an adverse ruling on Speech or Debate issues without first refusing to comply with a subpoena and being held in contempt).

## BACKGROUND

Representative Christopher Collins was indicted on charges of securities fraud, conspiracy to commit securities fraud, wire fraud, conspiracy to commit wire fraud, and false statements. The U.S. Department of Justice alleges that Representative Collins provided material, non-public information relevant to the stock price of Innate Immunotherapeutics Ltd. ("Innate") to his son, Cameron Collins, and his son's father-in-law, Stephen Zarsky, who both traded Innate stock based on the inside information from Representative Collins.

Representative Collins moved to compel the Justice Department to produce materials that may be covered by the Speech or Debate Clause. *See* Notice of Christopher Collins' Mot. to Compel (Feb. 8, 2019) (ECF No. 62); Mem. in Supp. of Christopher Collins' Mot. to Compel ("Rep. Collins Mot.") (Feb. 8, 2019) (ECF No. 63). In his motion, Representative Collins contends, among other things, that the Justice Department improperly impinged on his Speech or Debate privileges when investigators seized the contents of certain personal email accounts, cell phones, an iCloud account, a Facebook account, and historical information for at least two cell phones. Relying on case law from the D.C. Circuit and federal district courts in New York, including this Court, Representative Collins asserts that the Clause includes a privilege of non-disclosure, which would preclude the Executive Branch from compelling disclosure of legislative materials protected by the Clause. *See* Rep. Collins Mot. at 8-11 (citing, *inter alia*, *United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007), *SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 209 (S.D.N.Y. 2015); *Favors v. Cuomo*, 285 F.R.D. 187, 208 (E.D.N.Y. 2012)).

The Justice Department opposes Representative Collins's motion. *See* Gov't's Mem. of Law in Opp'n to Defs.' Pretrial Mots. ("DOJ Resp.") (Mar. 8, 2019) (ECF No. 69). The Justice

Department proposes a much narrower view of the Speech or Debate Clause than Representative

Collins's motion on two issues relevant to our brief here.

*First*, the Justice Department argues that the Clause does not provide a privilege of non-

disclosure.  Under the Justice Department's interpretation, the Clause places no effective

limitation on the Executive Branch's ability to compel disclosure of legislative materials.  The

Justice Department relies on rulings by the Ninth and Third Circuits (which we believe

misinterpret the law).  *See* DOJ Resp. at 29-45 (citing *United States v. Renzi*, 651 F.3d 1012,

1035-36 (9th Cir. 2011); *In re Fattah*, 802 F.3d 516, 528-29 (3d Cir. 2015)).

*Second*, the Justice Department argues that its searches were not improper intrusions into

Speech or Debate protections because they were not conducted in locations where legislative

materials would inevitably be found.  DOJ Resp. at 35 (asserting that "any arguably legislative

material that may have been incidentally collected in this case was not obtained from locations

'where legislative materials were inevitably to be found,' and therefore could not have

meaningfully interfered with the legislative function." (citations omitted) (quoting *Rayburn*, 497

F.3d at 661) (citing *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 (D.C.

Cir. 1995)).

The Justice Department "obtained search warrants for *personal* devices and online

accounts belonging to a number of individuals close to Congressman Collins," including his

"current chief of staff and a former chief of staff."  DOJ Resp. at 31.  The Justice Department

also interviewed several of Representative Collins's current and former staff members.  *Id.* at 31-

32.  In its opposition to Representative Collins's motion, the Justice Department reported that it

was "mindful and respectful of the privilege that attaches to legislative communications under

the Speech or Debate Clause" and took appropriate precautions, including using Justice

4

Department staffers who were not on the prosecution team to screen potentially protected materials, and warning interviewees not to divulge legislative materials in interviews.  *Id.* at 32.

## ARGUMENT

Contrary to what the Justice Department argues here, the Speech or Debate Clause is properly interpreted to provide a privilege of non-disclosure.  Under this privilege, Members of Congress and their staffers are protected from any requirement to disclose legislative materials to any third party, including any requirement to disclose such materials to federal investigators. Furthermore, despite the Justice Department's claim otherwise, the Speech or Debate Clause privileges apply to all substantively legislative materials – regardless of where the materials are located or stored.

## I.      The Speech or Debate Clause Is Central to the Separation of Powers Among Branches of the Federal Government

The Speech or Debate Clause is a central piece of the Framers' plan to create a federal government based on separation of powers between three coequal branches of government. Under this principle, "none of [the three branches of the federal government] ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers."  The Federalist No. 48 (James Madison).

The Framers were acutely aware that simply dividing the government into three separate branches would not suffice to guarantee American liberty.  Accordingly, to make the separation of powers principle work, they included in the Constitution concrete mechanisms that would "provide some practical security for each [branch], against the invasion of the others."  *Id.*; *see also* The Federalist No. 51 (James Madison) ("[T]he great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist the

encroachments of the others.").  The Speech or Debate Clause is one such concrete, practical mechanism.

### A. *The History and Purpose of the Clause Demonstrate Its Critical Importance to the Separation of Powers*

The Speech or Debate Clause is rooted in the historic struggle between Parliament and the Crown in sixteenth- and seventeenth-century England: "Behind [the Clause] lies a history of conflict between the Commons and the Tudor and Stuart monarchs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators." *Johnson*, 383 U.S. at 178; *see also Tenney v. Brandhove*, 341 U.S. 367, 372-75 (1951).  As a result of the English experience, freedom of action in the legislature "was deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the Constitution," which is reflected in the Speech or Debate Clause.  *Tenney*, 341 U.S. at 372.

The Framers intended that the Clause would "preserve the constitutional structure of separate, coequal, and independent branches of government."  *United States v. Helstoski*, 442 U.S. 477, 491 (1979); *see also Johnson*, 383 U.S. at 178 ("In the American governmental structure the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders.").  The Second Circuit has likewise explained that "[l]ike the Speech or Debate Clause, the doctrine of separation of powers serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen." *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980).

"The purpose of the [Speech or Debate] Clause is to [e]nsure that the legislative function

6

the Constitution allocates to Congress may be performed *independently* …. [T]he 'central role'
of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before
a possibly hostile judiciary.'"  *Eastland*, 421 U.S. at 502 (emphasis added) (quoting *Gravel*, 408
U.S. at 617); *see also Helstoski*, 442 U.S. at 491 ("This Court has reiterated the central
importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the
legislative sphere.").

### B.     The Clause Must Be Broadly Interpreted to Protect Legislative Materials and Preserve Legislative Independence

The Speech or Debate Clause applies absolutely to activities of Members and
congressional staff "within the 'legislative sphere.'" *McMillan*, 412 U.S. at 312-13 (quoting
*Gravel*, 408 U.S. at 624-25).  This includes include all activities that are

> an integral part of the deliberative and communicative processes by which
> Members participate in committee and House proceedings with respect to the
> consideration and passage or rejection of proposed legislation or with respect to
> other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *accord Eastland*, 421 U.S. at 504.[4]  Because "the guarantees of
the Clause are vitally important to our system of government," the Supreme Court has
emphasized that they must be treated "by the courts with the sensitivity that such important

---

[4]  *See also, e.g.*, *Gov't of the Virgin Islands v. Lee*, 775 F.2d 514, 520-21 (3d Cir. 1985) (fact-
finding by individual legislator protected); *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 530 (9th
Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the
'things generally done in a session of the House,' concerning matters within the 'legitimate
legislative sphere.'" (citations omitted)); *United States v. Dowdy*, 479 F.2d 213, 223-24 (4th Cir.
1973), *cert. denied*, 414 U.S. 823 (1973) (Member's informal gathering of information from
federal agencies in furtherance of legislative functions protected); *Benford v. Am. Broad. Cos.*,
102 F.R.D. 208, 210 (D. Md. 1984) ("[I]nformation possessed by [unpaid, volunteer committee
investigators] and transmitted to, or received by, them in the execution of legislative functions,
including legitimate information-gathering, is Constitutionally privileged from discovery in this
lawsuit[.]"); *United Transp. Union v. Springfield Terminal Ry. Co.*, Nos. 87-03442 P & 88-0117
P, 1989 WL 38131, at *1-2 (D. Me. Mar. 13, 1989) (monitoring of labor developments by
individual Member and staff protected).

values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  The Supreme Court has repeatedly, and "[w]ithout exception, … read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland*, 421 U.S. at 501; *see also McMillan*, 412 U.S. at 311; *Gravel*, 408 U.S. at 617-18; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *Myers*, 635 F.2d at 937.

The Speech or Debate Clause provides Members of Congress, and derivatively their aides, with three separate constitutional protections: (i) immunity from suit for actions predicated on legislative activities, *McMillan*, 412 U.S. at 312; (ii) a prohibition on the Members' legislative activities being used as evidence against them, *Helstoski*, 442 U.S. at 490; and (iii) a privilege against being questioned about, or being compelled to disclose information about, their legislative activities, *Gravel*, 408 U.S. at 615-16; *Rayburn*, 497 F.3d at 655-56, 660-62; *Brown & Williamson*, 62 F.3d 408.  The Supreme Court draws no distinctions between these three protections.  Rather, it has stated that, when the Speech or Debate privilege applies, it is "absolute," without any qualifications based on the type of "questioning":

> The question to be resolved is whether the actions of the petitioners fall within the "sphere of legitimate legislative activity."  If they do, the petitioners "shall not be questioned in any other Place" about those activities since the prohibitions of the Speech or Debate Clause are *absolute*.

*Eastland*, 421 U.S. at 501 (emphasis added) (footnote and citations omitted).  The protection is "absolute" not "'simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators.'"  *Eastland*, 421 U.S. at 502 (quoting *United States v. Brewster*, 408 U.S. 501, 507 (1972)).

The Clause's protection over "legislative activities" includes a bar against any "inquiry into … the motivation for [legislative] acts."  *Helstoski*, 442 U.S. at 489 (quoting *Brewster*, 408

U.S. at 525); *see also Johnson*, 383 U.S. at 180, 184-85 (such inquiry "necessarily contravenes the … Clause").  The Clause is not abrogated by allegations that a legislative official acted unlawfully or with an unworthy purpose.  *McMillan*, 412 U.S. at 312-13.  Even the cases holding there is a privilege of non-disclosure do not suggest that there is a privilege from criminal prosecution for non-legislative acts.  But Speech or Debate Clause protection does not evaporate when a Member is accused of criminal conduct.  The Clause applies both in "civil cases [and] criminal prosecutions."  *Brown & Williamson*, 62 F.3d at 416 (citing *Eastland*, 421 U.S. at 502-03; *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967)).  The Supreme Court has stressed that the Clause applies to activities "within the 'legislative sphere' even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes."  *McMillan*, 412 U.S. at 312-13 (citation omitted) (quoting *Gravel*, 408 U.S. at 624-25).

The Supreme Court has acknowledged the potential costs associated with this broad and unique constitutional protection and the potential difficulty it may present to certain criminal prosecutions.[5]  *Helstoski*, 442 U.S. at 488 ("[W]ithout doubt the exclusion of [past legislative acts] will make prosecutions more difficult."); *see also Eastland*, 421 U.S. at 510 ("[T]he broad protection granted by the Clause creates a potential for abuse.").  Nevertheless, the Court has repeatedly emphasized that the Speech or Debate Clause must be broadly construed and applied because that was "'the conscious choice of the Framers' buttressed and justified by history."  *Eastland*, 421 U.S. at 510 (quoting *Brewster*, 408 U.S. at 516).  The Framers included the Clause in the Constitution in response to suppression and intimidation – by criminal prosecution – of

---

[5] The Clause has deep roots in the criminal context.  *See, e.g.*, Harold Hulme, *The Winning of Freedom of Speech by the House of Commons*, 61 Am. Hist. Rev. 825, 836 (1956).

members of parliament by English monarchs in the 1500's and 1600's.  *See Johnson*, 383 U.S. at 178; *Tenney*, 341 U.S. at 372.[6]

Finally, "it is generally true that the Speech or Debate Clause forbids not only inquiry into acts that are manifestly legislative but also inquiry into acts that are purportedly legislative, 'even to determine if they are legislative in fact.'"  *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) (quoting *Dowdy*, 479 F.2d at 226).  In *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988), the D.C. Circuit held that the Clause barred a litigant's inquiry into the circumstances by which a sworn statement was published in a Congressional report; once the "legislative process" test is met, that is "the end of the matter."  *See* 844 F.2d at 861; *see also Brown & Williamson*, 62 F.3d at 418-19 (quashing document subpoena to subcommittee Members: "Once the legislative-act test is met, … the privilege is absolute." (quoting *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983))).

## II.    The Speech or Debate Clause Includes a Privilege of Non-Disclosure

The Supreme Court has made clear that, when the Speech or Debate Clause applies, its protections are "absolute."  *Eastland*, 421 U.S. at 501, 503, 507, 509-10 & n.16; *Gravel*, 408 U.S. at 623 n.14; *Barr v. Matteo*, 360 U.S. 564, 569 (1959).  That absolute privilege includes a non-disclosure aspect, which protects those to whom it applies from being compelled to testify as to privileged matters ***and*** from being compelled to produce privileged documents.  *Gravel*, 408

---

[6] *Rayburn* did not hold or suggest that the Clause precludes the Executive Branch from reviewing legislative records where that evidence is obtained legally and not in violation of the Clause.  For example, if a Member declines to assert his or her privileges under the Clause and voluntarily agrees to provide the Executive Branch with legislative materials, the Executive Branch could legally review and use those materials.

U.S. at 615-16; *Helstoski*, 442 U.S. at 484-86; *Rayburn*, 497 F.3d at 660.[7]

Like the other privileges absolutely protected by the Clause, the non-disclosure privilege is important to ensuring that the Legislative Branch, as a coequal branch of government, has broad latitude to legislate independently.  If the rule were otherwise, and Members could be required to disclose Speech or Debate materials, that would substantially undermine the important separation-of-powers purposes of the Clause.  The privilege of non-disclosure is consistent with the Supreme Court's Speech or Debate Clause precedent, which has held that the Clause protects absolutely all activities of Members and staff that are "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 311-13 (quoting *Gravel*, 408 U.S. at 624-25), and must be "read … broadly to effectuate its purposes," *Eastland*, 421 U.S. at 501.

The D.C. Circuit – which has developed a significant body of Speech or Debate Clause case law – has held correctly that "the privilege conferred by the Clause" includes a "non-disclosure privilege for written materials" and that "there is no distinction between oral and written materials within the legislative sphere…."  *Rayburn*, 497 F.3d at 660, 662; *see also Brown & Williamson*, 62 F.3d at 421 ("A party is no more entitled to compel congressional testimony – *or production of documents* – than it is to sue congressmen.") (emphasis added); *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1201-03 (D.C. Cir. 2009) (quashing, on Speech or Debate grounds, grand jury subpoenas duces tecum directed to attorneys who represented

---

[7] *See also Dennis v. Sparks*, 449 U.S. 24, 30 (1980) (testimony); *Miller*, 709 F.2d at 528-29 (testimony); *Pentagen Techs. Int'l Ltd. v. Comm. on Appropriations of the U.S. House of Representatives*, 20 F. Supp. 2d 41, 43-44 (D.D.C. 1998), *aff'd per curiam*, 194 F.3d 174 (D.C. Cir. 1999) (documents); *Brown & Williamson*, 62 F.3d at 420 (documents); *MINPECO S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-61 (D.C. Cir. 1988) (documents); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 248-49 (D.C. Cir. 1981) (documents).

Congressman in connection with House Ethics Committee investigation of Congressman).[8]  As

discussed below, *Rayburn* was correctly decided, and the Court should adopt its reasoning here.

> ### A.     Rayburn *Correctly Interpreted the Clause Broadly*

In *Rayburn*, the D.C. Circuit observed that the Supreme Court "has made clear … in the

context of a grand jury investigation, that '[t]he Speech or Debate Clause was designed to assure

a co-equal branch of the government wide freedom of speech, debate, and deliberation without

intimidation or threats from the Executive Branch.'"  *Rayburn*, 497 F.3d at 659 (quoting *Gravel*,

---

[8] District courts in at least seven other circuits (First, Second, Fourth, Fifth, Eighth, Tenth, and Eleventh) agree.  *See, e.g.*, *United Transp. Union v. Springfield Terminal Ry. Co.*, 132 F.R.D. 4, 5-7 (D. Me. 1990) (denying, on Speech or Debate grounds, motion to compel Senator to produce legislative records responsive to subpoena duces tecum); *SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d at 238-46; Order, *United States v. Moussaoui*, No. 01-cr-00455 (E.D. Va. Mar. 2, 2006) (ECF No. 1642) (quashing, on Speech or Debate grounds, criminal trial subpoena duces tecum issued to Congressman by defendant); Order, *United States v. Andersen*, No. 4:02-cr-00121 (S.D. Tex. May 14, 2002) (ECF No. 103) (quashing, on Speech or Debate grounds, criminal trial subpoena duces tecum issued to House Committee by defendant); Order, *In re IBP Confidential Bus. Documents Litig.*, No. M.D.L. 428 (N.D. Iowa Sept. 29, 1981) (quashing, on Speech or Debate grounds, duces tecum aspect of deposition subpoenas issued to three House committee staffers); *Fremont Energy Corp. v. Seattle Post Intelligencer*, 688 F.2d 1285, 1286 (9th Cir. 1982) (noting that district court quashed, on Speech or Debate grounds, subpoena duces tecum to former Congressman "insofar as the subpoena related to [the former Member's] legislative activities"); Mem. Order, *United States v. Layton*, No. 80-cr-416 (N.D. Cal. Dec. 13, 1982) (ECF No. 999) (quashing, on Speech or Debate grounds, subpoena duces tecum issued to House committee by defendant in criminal case); *Metzger v. Am. Fid. Assurance Co.*, No. 05-cv-1387, 2007 WL 895141, at *2 (W.D. Okla. Mar. 22, 2007) (quashing, on state Speech or Debate grounds, subpoena duces tecum directed to state legislator; noting that language of Speech or Debate Clause in Oklahoma Constitution is identical to language of Speech or Debate Clause in U.S. Constitution, and that "[t]he Oklahoma Supreme Court . . . found that 'Oklahoma's Speech or Debate Clause . . . provides at least as much protection as the immunity granted by the comparable provisions of the Federal Constitution.'"); *Chapman v. Space Qualified Sys. Corp.*, 647 F. Supp. 551, 552 (N.D. Fla. 1986) (granting, on Speech or Debate grounds, motion filed by Chair of House committee and GAO investigator to quash deposition subpoena for GAO investigative records directed to GAO investigator); Order, *Stupak v. Hoffman-LaRoche, Inc.*, No. 8:05-cv-00926 (M.D. Fla. Apr. 28, 2006) (ECF No. 30) (denying, on Speech or Debate grounds, motion to compel production of legislative records from Congressman).  The outliers are *United States v. Renzi*, 651 F.3d 1012, 1032-39 & n.21 (9th Cir. 2011) (suggesting in dicta that legislative records are not protected in certain circumstances) and *In re Fattah*, 802 F.3d 516, 528-29 (3d Cir. 2015).

408 U.S. at 616).  The court concluded that "the privilege conferred by the Clause includes a

non-disclosure privilege," *id.* at 660, by which it meant that the Clause's discovery privilege

protects against the compelled disclosure of legislative documents.  The court based its decision

on the "purpose of the Speech or Debate Clause," which is "'to [e]nsure that the legislative

function the Constitution allocates to Congress may be performed independently,' without regard

to the distractions of private civil litigation or the perils of criminal prosecution."  *Id.* (quoting

*Brown & Williamson*, 62 F.3d at 415, in turn quoting *Eastland*, 421 U.S. at 502).  As the court

noted, "'[d]iscovery procedures can prove just as intrusive' as naming Members … as parties to

a suit."  *Id.* (quoting *Brown & Williamson*, 62 F.3d at 418).  The court continued by explaining:

> "[d]ocumentary evidence can … be as revealing as oral communications….
> [I]ndications as to what Congress is looking at provide clues as to what Congress
> is doing, or might be about to do – and this is true whether or not the documents
> are sought for the purpose of inquiring into (or frustrating) legislative conduct or
> to advance some other goals."

*Id.* (quoting *Brown & Williamson*, 62 F.3d at 420).

This Court has previously adopted *Rayburn*'s reasoning in recognizing the Clause's non-

disclosure privilege.  *See SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 240-45

(S.D.N.Y. 2015) (comparing the arguments in *Rayburn* to those in *Renzi* and *Fattah* and

ultimately "conclud[ing] that the Speech or Debate Clause provides a non-disclosure privilege

for documents that fall within the 'sphere of legitimate legislative activity'"); *see also Favors v.

Cuomo*, 285 F.R.D. 187, 208 (E.D.N.Y. 2012) ("[C]ourts have interpreted the Speech or Debate

Clause to provide members of Congress with absolute immunity from suit as well as from

compelled discovery or testimony.") (citing *Rayburn*, 497 F.3d at 662).

By contrast, the two decisions cited by the Justice Department, which suggest that the

Clause does not include a privilege of non-disclosure, interpret the Clause too narrowly.  *See*

*Renzi*, 651 F.3d at 1032; *In re Fattah*, 802 F.3d at 525-26.  Among other problems with those

cases, in *Renzi*, the court merely suggested in dicta that legislative records are not protected in

certain circumstances.  *Renzi*, 651 F.3d at 1032-39 (concluding that a *Kastigar*-like hearing was

not available in the Speech or Debate context, but going on to note its disagreement with

*Rayburn*'s conclusion about the non-disclosure privilege).  And in *Fattah*, the court – without

citing *Rayburn* – affirmed the district court's "reiterat[ion] [of] this Circuit's standard that the

Speech or Debate Clause secures a privilege of non-use, rather than of non-disclosure."  *Fattah*,

802 F.3d at 522.  Beyond that, there are at least three overarching reasons that *Rayburn* correctly

interpreted and applied the Speech or Debate Clause.

     ***First***, there is no language in the Clause itself that distinguishes between the methods by

which a party trying to force disclosure seeks to "question" a Member.  The Clause instead

unequivocally mandates that Members "shall not be questioned in any other Place."  U.S. Const.

art. I, § 6, cl. 1.[9]

     ***Second***, the Supreme Court has consistently applied the Clause broadly to avoid carving

out any particular type of legislative material from its protections.  By reading a distinction

between use and disclosure of legislative materials into the Clause, *Renzi* and *Fattah* are in

significant tension with the Supreme Court's repeated mandate that the Clause must be "read …

broadly to effectuate its purposes."  *E.g.*, *Eastland*, 421 U.S. at 501; *see also McMillan*, 412 U.S.

at 311; *Gravel*, 408 U.S. at 624.  The Supreme Court's Speech or Debate jurisprudence has

---

[9] The Supreme Court has relied on the Clause's broad, unequivocal language in explaining why
its protections are "absolute" in other contexts.  *See, e.g.*, *Eastland*, 421 U.S. at 503 ("The
applicability of the Clause to private civil actions is supported by the absoluteness of the terms
'shall not be questioned,' and the sweep of the term 'in any other Place.'  In reading the Clause
broadly we have said that legislators acting within the sphere of legitimate legislative activity
'should be protected not only from the consequences of litigation's results but also from the
burden of defending themselves.'") (quoting *Dombrowski*, 387 U.S. at 85).

stressed that the Clause protects absolutely *all* activities of Members of Congress "within the 'legislative sphere.'"  *McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25).  The narrow reading suggested in *Renzi* and *Fattah* would undermine the Clause's purpose of ensuring that "the legislative function the Constitution allocates to Congress may be performed independently."  *See Eastland*, 421 U.S. at 502.

> **Third**, because "[d]ocumentary evidence can certainly be as revealing as oral communications," *Brown & Williamson*, 62 F.3d at 420, compelled disclosure of documents presents the same constitutional problems as compelled testimony.  Here, the Justice Department acknowledges that the Clause protects Members absolutely from being compelled to *testify* about legislative activities, *see* DOJ Resp. at 28 ("The Speech or Debate Clause thus confers on Members of Congress absolute immunity from being compelled to testify…"), while at the same time posits that the Speech or Debate Clause "places no limitation on the Executive's ability to compel disclosure of records that may include [legislative] materials," DOJ Resp. at 29-30 (citing *Renzi*, 651 F.3d at 1035-36; *Fattah*, 802 F.3d at 528-29).

> These positions are incompatible.  If Representative Collins cannot be "compelled to testify" about his legislative activities – as all agree – it cannot follow that his legislative records can be forcibly disclosed without offending the same constitutional principles that prevent compelled testimony.  There is no basis in law or logic for why a Member should be constitutionally protected from having to answer questions orally about his or her legislative activities, but constitutionally defenseless when subpoenaed to produce – or when the Justice Department seeks to seize by way of a search warrant – documents that memorialize, reflect, or analyze those very same legislative activities.  *See Rayburn*, 497 F.3d at 655, 662 (explaining that the Clause includes a privilege of non-disclosure because "there is no distinction between

15

oral and written materials within the legislative sphere").

Indeed, compelled disclosure of legislative materials "clearly tends to disrupt the legislative process" and the very possibility of compelled disclosure "may therefore chill the exchange of views with respect to legislative activity." *Rayburn*, 497 F.3d at 661. "This chill runs counter to the Clause's purpose of protecting against disruption of the legislative process." *Id*. The legislative process would be severely hamstrung without the use of email and other electronic means of communication. It is a document-intensive process, with oceans of written legislative work product – for example, emails, memoranda, and correspondence concerning legislative and oversight matters – generated and collected every day. Legislative work is inherently group-oriented and necessarily involves many people who often cannot readily or conveniently be assembled together, making email an essential means of communication for Members and staff. And emails, in many instances, are functionally indistinguishable from oral communications.

In sum, an interpretation of the Speech or Debate Clause that attempts to draw a distinction between compelled testimony and compelled disclosure of documents is not sustainable nor is it supported by the text of the Constitution or the case law. Compelled disclosure of documents presents the same constitutional concerns as compelled testimony because documents can be just as revealing as testimony and compelled disclosure of documents can be just as intrusive to the legislative process as compelled testimony.

III.   **The Speech or Debate Clause Applies to Substantively Legislative Materials, Regardless of Where or How They Are Stored**

The Justice Department believes there is no Speech or Debate Clause issue with its searches and interviews "because any arguably legislative material that may have been incidentally collected in this case was not obtained from locations 'where legislative materials

16

were inevitably to be found,'… and therefore could not have meaningfully interfered with the legislative function…."  DOJ Resp. at 35 (quoting *Rayburn*, 497 F.3d at 661 and citing *Brown & Williamson*, 62 F.3d at 421).  According to the Justice Department, "the search procedures employed here – which involved the Government's obtaining staffers' private data, in some cases from third parties, without depriving them of the use of that data – posed no … risk [like the court remedied in *Rayburn*]."  *Id.* at 35-36.  Further, the Justice Department argues that, because its interviews with staffers included instructions "not to discuss legislative activities, the risk of chilling those functions was non-existent."  *Id.* at 36 (citing *Rayburn*, 497 F.3d at 661).

These arguments misapprehend the Speech or Debate Clause.  Under Supreme Court precedent, email communications and other electronic records that reflect Representative Collins's legislative activities – records that are encompassed by the absolute protection of the Speech or Debate Clause against compelled disclosure to the Executive Branch – are absolutely protected by the Clause whether they are stored in a personal email account, in a personal cloud account, or with a third party.  *See, e.g.*, *Gravel*, 408 U.S. at 617.

The Speech or Debate Clause privilege, unlike most common law privileges such as the attorney-client privilege, is not communications-based.  It is, rather, activity-based.  The Clause applies absolutely to "legislative" activity and materials, no matter where legislative materials are stored or in what type of communication or document.  *See, e.g.*, *id*.  While there are many cases in which courts have read the Clause's activity-based protections expansively, the House is aware of no cases in which legislative communications stored in a personal (email, mail, or cloud) account have been carved out from the Clause's broad protections.

For Speech or Debate privilege purposes, the only question is whether emails and other electronic communications of a Member or congressional staffer reflect legislative activities or

motivations for legislative activities.  If the answer is yes, then those communications are absolutely protected, regardless of where they are stored or the nature of the underlying allegations.  *See Porteous v. Baron*, 729 F. Supp. 2d 158, 166 (D.D.C. 2010) ("[T]he proper focus of this Court's inquiry under the Speech or Debate Clause is not … on what the defendants did in particular and whether it was unlawful.  The focus is on the nature of the defendants' conduct more generally.  So long as th[at] type of conduct … falls legitimately within the scope of legislative activity, it matters not whether the specific conduct is unlawful.").

The courts have broadly construed the concept of "legislative activity" to include much more than words spoken in debate.  The "cases have plainly not taken a literalistic approach in applying the privilege. … Committee reports, resolutions, and the act of voting are equally covered." *Gravel*, 408 U.S. at 617.  Similarly, committee investigations and hearings have been held to be activities within the legislative sphere, *Eastland*, 421 U.S. 491, as has the collecting of information in furtherance of legislative responsibilities because "'[a] legislative body cannot legislative wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).[10]

The Speech or Debate Clause privilege accrues to Members individually, not to the Member's "office" or to the House as a whole.  *United States v. Cisneros*, 169 F.3d 763, 770

---

[10] Protected information-gathering can be informal as well as formal.  *See, e.g.*, *Brown & Williamson*, 62 F.3d at 411-12, 423 (documents voluntarily delivered to committee by a private citizen are protected by the Clause); *Gov't of the Virgin Islands v. Lee*, 775 F.2d 514, 520-21 (3d Cir. 1985) (fact-finding by individual legislator protected); *McSurely v. McLellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the [Speech or Debate] privilege so that congressmen are able to discharge their constitutional duties properly."); *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d at 242 ("[L]egislative information gathering, whether formal or informal, is protected under the Speech or Debate Clause").

(D.C. Cir. 1999) (explaining that the Clause "confer[s] a personal privilege on individual legislators").  The Supreme Court in *Gravel* construed the Clause broadly to hold that its protections apply "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."  *Gravel*, 408 U.S. at 618; *see also id.* at 616 (in applying the Speech or Debate Clause, "a Member and his aide are to be 'treated as one'") (internal citations omitted).  Although congressional staffers sometimes invoke this privilege, the staffer's "claim of privilege" is wholly derivative of the Member's privilege, and "can be repudiated and thus waived by the [Member]."  *Gravel*, 408 U.S. at 622 & n.13.

In addition, the longstanding position of the House is that the official records of a Member of Congress constitute the personal property of the Member and belong solely to him or her.  *See* Rule VII.6(b), Rules of the U.S. House of Representatives (116th Cong.); *accord, e.g.*, H. Con. Res. 307 (110th Cong.) (2008) ("[B]y custom [Member congressional records] are considered the personal property of the Member who receives and creates them…."); H.R. Rep. No. 100-1054, at 14 (1998) ("Members' papers have been regarded as their personal property…").[11]  This position is enshrined in the Rules of the House, which are promulgated

---

[11] This stands in stark contrast to Executive Branch records, which belong to the federal government.  For example, the Presidential Records Act gives the United States "complete ownership, possession, and control of *Presidential* records."  44 U.S.C. § 2202 (emphasis added).  This Act "terminate[d] the tradition of private ownership of presidential papers and the reliance on volunteerism to determine the fate of their disposition."  H.R. Rep. No. 95-1487, at 2 (1978). Similarly, the Federal Records Act, 44 U.S.C. § 3101 *et seq.*, "ma[kes] clear that … ownership of agency records [is] in the United States," *Nixon v. United States*, 978 F.2d 1269, 1283 (D.C. Cir. 1992).  The Federal Records Act does not apply to Congress.  *See* 44 U.S.C. § 2901(14) (defining "Federal Agency" to "mean[] any executive agency or any establishment in the legislative or judicial branch of the Government (except the Supreme Court, the Senate, the House of Representatives, and the Architect of the Capitol and any activities under the direction of the Architect of the Capitol)").  Likewise, congressional records are not subject to the Freedom of Information Act, which applies to "[e]ach agency," 5 U.S.C. § 552(a), a term defined by statute to exclude "the Congress," 5 U.S.C. § 551(1)(A).

pursuant to express constitutional authority, U.S. Const. art. I, § 5, cl. 2, and have the force of law, *United States v. Ballin*, 144 U.S. 1, 5 (1892).  Congress's power to make its own rules sits at the very core of our constitutional separation of powers, and its rules are "absolute and beyond the challenge of any other body."  *Ballin*, 144 U.S. at 5.

Here, the Clause clearly applies to any legislative records stored in the personal email or cloud accounts of congressional staff for two reasons.  (The House takes no position on whether the records collected from Representative Collins's staffers' accounts are legislative in nature.) First, those accounts are mere repositories for legislative records, to the extent any such records exist in the accounts.  The Speech or Debate privilege belongs to Representative Collins, not to a third party who simply stores the materials.  *See Gravel*, 408 U.S. at 616-18.  Second, the Clause cannot be sidestepped by obtaining information about Representative Collins's legislative activities from a third party without his consent and explicit decision not to assert his Speech or Debate privilege.  Any legislative materials stored by a third party – whether Representative Collins's staff, an Internet service provider, or a private email service – are still protected by Representative Collins's Speech or Debate privilege unless and until he determines not to assert the privilege.  *See, e.g.*, *United States v. Johnson*, 337 F.2d 180, 198 (4th Cir. 1964), *aff'd*, 383 U.S. 169 (1966) (holding the Clause was violated by questions about motive addressed to others than former U.S. Representative Thomas Johnson himself).

Further, as explained above, Representative Collins's legislative documents are his personal property, whether they are stored in a personal email or cloud account, or in a third party's email or cloud account.  Well-established precedent forecloses DOJ from end-running the Speech or Debate Clause by obtaining a Member's legislative communications from a third party.  *See, e.g.*, *Gravel*, 408 U.S. at 628-29 (holding the Clause "forb[ids] questioning *any*

witness" about the Senator's legislative activities or "the motives and purposes behind the Senator's conduct") (emphasis added); *Tavoulareas v. Piro*, 93 F.R.D. 11, 23-24 (D.D.C. 1981) ("[T]he speech or debate clause prohibits the use of judicial process to inquire of a third party about the legislative acts of a legislator or his aides."); Order Granting Non-Party Charles LiMandri's Mot. to Quash & for Protective Order at 10, *Trunk v. City of San Diego*, No. 06-cv-1597 (S.D. Cal. Sept. 13, 2007) ("[T]his Court GRANTS Mr. LiMandri's motion to quash and for protective order and specifically precludes … Plaintiffs from asking Mr. LiMandri about Congressman[] Hunter's legislative motivations or activities.").

While there is substantial case law interpreting the Clause broadly, including Supreme Court precedent, there are no cases of which the House is aware (and the Justice Department points to none) providing a carveout for communications stored in a personal email or cloud account.  The relevant distinction for Speech or Debate Clause purposes is whether a communication or document is legislative or non-legislative in nature.  Whether a communication or document is "official" or "personal," or where it is stored, is immaterial to its status under the Speech or Debate Clause:  If it is legislative in nature, no matter whether it is "personal," "official," or stored by a third party, it is absolutely protected by the Clause.

## CONCLUSION

If the Court reaches the Speech or Debate Clause issues raised by Representative Collins in his motion and responded to by the Justice Department, the House respectfully requests that the Court base its decision on the articulation of Speech or Debate Clause principles in this brief, which are drawn from the Supreme Court's extensive jurisprudence broadly applying the constitutionally essential protections of the Speech or Debate Clause.

Respectfully submitted,


/s/ Douglas N. Letter
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Deputy General Counsel*
MEGAN BARBERO
  *Associate General Counsel*
BROOKS M. HANNER
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for the U.S. House of Representatives*

**CERTIFICATE OF SERVICE**

I certify that on April 4, 2019, I electronically filed a copy of the *amicus curiae* brief of the United States House of Representatives using the CM/ECF System for the United States District Court for the Southern District of New York, which will send notification of that filing to all counsel of record in this litigation.

/s/ Douglas N. Letter_____
Douglas N. Letter