

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 9, 2019

**BY ECF and ELECTRONIC MAIL**

The Honorable Vernon S. Broderick
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    <u>United States v. Christopher Collins, et al.</u>, 18 Cr. 567 (VSB)

Dear Judge Broderick:

    The Government writes to respond to three factual questions that the Court raised during the May 3, 2019 conference.

    1. The defendants have moved to compel the Government to search for *Brady* / *Giglio* information in data determined not to be responsive to the Government's search warrants for accounts and devices associated with uncharged co-conspirators. During the May 3 conference, the Court requested more detail regarding the methodology that the Government applied when conducting its initial review of these devices and accounts to identify data responsive to the warrants.[1] As the Government indicated during the May 3 Conference, the Government did not apply search terms to limit the data that it reviewed as part of that process. Rather, the Government proceeded as follows:

    a. In light of the fact that the flow of information is critical evidence in insider trading cases, and because the absence of communication on a particular subject may be important evidence of guilt or innocence, the Government marked as responsive all records that were created and communications that occurred between June 18, 2017 and June 28, 2017.[2]

---

[1] Separately, the Government has reached out to counsel for the four uncharged co-conspirators whose devices or accounts were searched during the investigation in order to determine whether their clients would consent either (1) to allow the Government to re-review the non-responsive data for *Brady* and *Giglio* material, or (2) to allow the Government to produce the complete contents of their client's device(s) and account(s) to counsel for the defendants in this matter. We have requested a response to these inquiries no later than Tuesday, May 13, 2019.

[2] In only one instance, the Government removed a communication in the covered timeframe that concerned sensitive medical information of an individual not involved in the case. The Government did this to protect the person's privacy and because the removed communication was clearly irrelevant to the issues under investigation. Certain accounts or devices did not contain any records or communications created between June 18, 2017 and June 28, 2017.

May 9, 2019
Page 2

    b. We reviewed every communication from June 2016 to the end of 2017 in which any of the following individuals were communicating with one another: Christopher Collins, Cameron Collins, Stephen Zarksy, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6. Additionally, in certain instances, we reviewed message-by-message communications covering a larger timeframe, depending on the volume of communications and whether a spot check revealed potentially responsive data.

    c. With respect to materials not falling within the above-categories of information, we searched for mentions of relevant terminology such as "Innate," "ILL," "stock" and "pharma-" If these terms returned responsive communications, we reviewed those communications and all surrounding communications (irrespective of whether they contained the searched-for terms) to determine context and whether there were additional responsive communications in that period.

    2. The Court requested that the Government confirm with the SEC staff that the SEC is not in possession of notes or memorializations of interviews that were conducted jointly with this Office, whether created during the interview or after the interview took place. The SEC has now confirmed that it has no notes of joint interviews, either contemporaneous or created after the fact.

    3. The Court inquired regarding the number of interviews conducted as part of the criminal investigation and the proportion of those interviews that were attended by the SEC staff. By our count, as part of the criminal investigation, the Government (the USAO and/or the FBI) conducted 58 interviews with 35 distinct witnesses. The SEC staff participated in a subset of 14 of those interviews, which were with 14 distinct witnesses. We also understand that the SEC staff conducted several interviews for which no members of the criminal prosecution team were present.

                       Respectfully submitted,

                         GEOFFREY S. BERMAN
                       United States Attorney

By:     /s/
       Scott Hartman/Max Nicholas/Damian Williams
       Assistant United States Attorneys
       (212) 637-2357/1565/2298

cc: All defense counsel (by ECF)