# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Jonathan R. Barr
direct dial: 202.861.1534
jbarr@bakerlaw.com

August 26, 2019

**VIA ECF**

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   United States v. Christopher Collins, et al., No. 18-cr-567 (VSB) (S.D.N.Y.) – Statement of Defendants' Position Regarding Superseding Indictment (ECF No. 107)

Dear Judge Broderick:

      We write on behalf of our client, defendant Christopher Collins, as well as the other defendants in the above-referenced matter, Cameron Collins and Stephen Zarsky (collectively, the "Defendants"), and submit this letter pursuant to the Court's order during the August 7, 2019 telephonic status conference (the "August 7 Teleconference"). Two discovery motions are currently pending: Defendants' Motion for the Production of *Brady* and Rule 16 Material, ECF No. 64 (the "*Brady* and Rule 16 Discovery Motion"); and Congressman Collins' Motion to Compel Limited Production of Materials Bearing on the Speech or Debate Clause of the Constitution, ECF No. 62 (the "Speech or Debate Discovery Motion").[1] The Superseding Indictment filed on August 6, 2019 does not affect the requested relief and does not obviate the need for immediate disclosure of the requested materials and information. Defendants respectfully request that the Court grant the motions as a necessary threshold step in advance of substantive pre-trial motion practice.

      Below, we address the three questions raised by the Court during the August 7 Teleconference: (i) how, if at all, does the filing of the Superseding Indictment affect the pending discovery motions; (ii) do the Grand Jury materials produced by the Government on August 7, 2019 contain anything protected by the Speech or Debate Clause of the United States Constitution;

---

[1] Defendants' third discovery motion, ECF No. 59, requesting a bill of particulars was denied by the Court in an oral ruling on May 3, 2019.

Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Denver
Houston     Los Angeles     New York     Orlando     Philadelphia     Seattle     Washington, DC

and (iii) if the Speech or Debate Clause is implicated, are the issues such that any decision on the pending motion would be entitled to immediate appeal.[2]

### The Superseding Indictment Does Not Impact The Brady and Rule 16 Discovery Motion

As an initial matter, the Superseding Indictment has absolutely no bearing on the relief sought in the *Brady* and Rule 16 Discovery Motion, which requests that the Court order the Government to produce three discrete categories of information: (i) *Brady* material and information within the possession, custody, or control of the SEC; (ii) *Brady* and Rule 16 material contained in devices and accounts belonging to then-termed co-conspirators CC-1, CC-2, CC-3, CC-5, and CC-6 (now referred to as "Individuals"); and (iii) the full notes and FBI 302s for two individuals who have made exculpatory statements. In fact, in its letter to the Court regarding the Superseding Indictment, the Government specifically stated it "presently anticipates offering" at trial statements made by Individuals-3, -5, and -6 as well as unidentified Congressional staffers. *See* Gov't Letter to Court, ECF No. 108 at 2 (Aug. 6, 2019) ("Gov't Aug. 6 Letter").[3] Timely disclosure of any *Brady*, Rule 16, or *Giglio* material, including the full statements made by Congressional staffers, is imperative.

### The Speech or Debate Issues Remain Outstanding

The Speech or Debate Discovery Motion presently before the Court seeks only a *limited* disclosure of discrete information that generally falls into three categories: (i) the ESI obtained as a result of the execution of search warrants for the email accounts or devices of Congressional staffers;[4] (ii) statements or testimony of staff; and (iii) any testimony before, or materials shown to, the Grand Jury related to the Office of Congressional Ethics ("OCE") or Committee on Ethics investigations. *See* ECF No. 63 at 24; ECF No. 72 at 1. As explained in the Speech or Debate Discovery Motion, fulsome disclosure is necessary—well in advance of trial and prior to the filing of substantive motions—to enable Congressman Collins to fully protect his legislative rights and to allow the Court to consider the entire context when fashioning an appropriate remedy. ECF No. 63 at 1-2. This is inherently a two-step process, as evidenced by the bifurcated motion schedule set by the Court. ECF No. 63 at 24-27; Tr. 24:12-17 (Dec. 18, 2018) ("So you can actually see the

---

[2] As an administrative note, Defendants observe that the Court's calendar has September 5 and September 6, 2019, set aside for an evidentiary hearing on what were expected to be substantive motions. Should the Court require live testimony or further argument on the pending Discovery Motions, Defendants respectfully propose the morning of September 6.

[3] On June 14, 2019, the Government advised that it "is in possession of non-responsive iCloud data for CC-5 [but] CC-5 has declined, through counsel, to consent to further review of this data by either the Government or the defendants." ECF No. 104 at 2. Defendants' position, *see* ECF No. 106 at 2, is that it is surprising that CC-5, who is a Government cooperator who has entered into a non-prosecution agreement with the Government, is the only alleged co-conspirator to have refused consent. The Government appears to be in the dubious position of arguing that it is unable to comply with its discovery obligations because: (1) it does not legally possess material it physically possesses; and (2) its cooperating witness refuses to allow it to produce that same material to Defendants. This issue is fully briefed.

[4] One staff member has provided consent for the Government to produce the contents of accounts which were seized by warrant. The Government provided those materials on February 26, 2019. The Government has otherwise represented that it provided in discovery all communications from current or former staffers that were produced in response to compulsory process or identified as responsive to a search warrant.

Honorable Vernon S. Broderick
August 26, 2019
Page 3

statements and the parties can give their relative position about if there are any statements whether or not they fit within the rubric of speech or debate and the like. That, I think, makes sense, so we can deal with the discovery issue first.").

The first two categories of Speech or Debate discovery sought by Congressman Collins are completely unaffected by the recently-returned Superseding Indictment. As set forth in the Speech or Debate Discovery Motion, Congressman Collins is entitled to review the contents of the ESI seized from his staffers in order to identify the materials covered by the Speech or Debate Clause and determine whether to seek suppression of the search warrant returns. Similarly, the Government should be ordered to produce all statements or testimony obtained from Congressional staff so that Congressman Collins can determine the extent to which those statements were obtained improperly. This is necessary to allow Congressman Collins to file substantive motions and seek further relief sufficiently in advance of trial. This need is only magnified by the Government's representation that it desires to shield the true scope of the impermissibly gathered evidence until a motion *in limine*. That is effectively a request that the Congressman be prevented from seeking relief from the Court during substantive motion practice.

Further, only the third category of materials sought in the Speech or Debate Discovery Motion concerns Grand Jury materials. This limited request for production of testimony and documents presented to the Grand Jury concerning the OCE or Committee on Ethics investigations should be granted notwithstanding the Government's transparent attempt to shield these materials from scrutiny. Prior to August 6, 2019, the Government insisted that inspection of Grand Jury minutes and materials was not permissible and should not be allowed. Indeed, the Government posited that traditional notions of grand jury secrecy stand as the beginning and end of the analysis.[5] Yet, as it relates to the Superseding Indictment, the Government disclosed the Grand Jury minutes and materials *sua sponte* and without restriction. The contradiction in the Government's approach here is stark. The Government's recent actions demonstrate that it has abandoned any argument about grand jury secrecy concerns standing in the way of producing the material requested. Moreover, in its letter accompanying the Superseding Indictment, the Government clearly stated that it "anticipates offering" at trial "evidence regarding the OCE investigation" and plans to file a motion *in limine* concerning such evidence at an unspecified date in advance of trial. Gov't Aug. 6 Letter at 2. There is no reason why these materials should not be produced as soon as possible so that the issues can be fully litigated, and potentially appealed.

Having reviewed the Grand Jury materials related to the Superseding Indictment that were produced by the Government on August 7, 2019, Congressman Collins does not contend that they

---

[5] This position did not prevent the Government from informing the SEC which defendants it was going to indict and with what charges, in apparent violation of Fed. R. Crim. P. 6(e) and providing even more evidence of the joint investigation by the Government and the SEC. Tr. 55:1-8 (May 3, 2019) ("When we went into that meeting, no decisions had been made about wh[om] to charge and with what. When we came out of that meeting, the decisions had been made. No one from the SEC was present. No one from the SEC was on the phone. At the end of that, *we communicated to the SEC the decision that had been made*, but we didn't ask for their input. We didn't ask for their approval. Then we drafted an indictment. . . .") (emphasis added). *See In re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir. 1980); *In re Sealed Case*, No. 99-3091, 192 F.3d 995, 1003 (D.C. Cir. 1999); *United States v. Rosen*, 471 F. Supp. 2d 651, 656 (E.D. Va. 2007) (stating that Rule 6(e) is implicated if the matters disclosed concern details of a grand jury's future proceedings).

contain anything protected by the Speech or Debate Clause.[6] Nevertheless, existing Speech or Debate violations remain. As noted in the Congressman's opening memorandum, ECF No. 63, there are two distinct violations: the Government took investigative steps that infringed upon the Legislature's constitutional protections; and the Government charged this case by interjecting matters which the Constitution places squarely and solely within the jurisdiction of Congress. The Superseding Indictment does nothing to remediate the first violation. *See* Br. of the U.S. House of Representatives as *Amicus Curiae* in Support of Neither Party, ECF No. 80 at 5 ("House *Amicus* Br.") ("Contrary to what the Justice Department argues here, the Speech or Debate Clause is properly interpreted to provide a privilege of non-disclosure."). *See also SEC v. Comm. on Ways and Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 209 (S.D.N.Y. 2015); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 417 (D.C. Cir. 1995) ("We do not perceive a difference in the vigor with which the privilege protects against compelling a congressman's testimony as opposed to the protection it provides against suit."); House *Amicus* Br. at 12 n.8 (collecting cases and noting that district courts in at least seven other circuits agree).

What is more, some of the actual warrant applications, supported by the sworn declaration of FBI Special Agent Nicolas Anderson and submitted by the Government, rely on communications among Congressional staff *as a basis for probable cause*. *See* ECF No. 63 at 11-12. Notably, the only live witness testifying before the Grand Jury that returned the Superseding Indictment was *also* SA Anderson. Likewise, the prosecution team continues to be staffed by members of the U.S. Attorney's Office who oversaw the violations in the first place and clearly furthered the investigation with material gained from interviews with Congressional staffers. *See* ECF No. 63 at 11-17. Without doubt, the investigation and prosecution has been, and continues to be, furthered by significant intrusions on the Speech or Debate privilege. This is impermissible. *United States v. Rayburn House Office Building*, 497 F.3d 654, 662 (D.C. Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008) (review of privileged documents by *any* executive agent represents the type of intrusion on the legislative branch that the non-disclosure prong of the Speech or Debate privilege prohibits).

Where the entire proceeding is so fundamentally blighted by these constitutional violations, and compounded by the Government's continued reliance on protected materials, issuance of the Superseding Indictment does nothing to 'un-ring' the proverbial bell. The Government's abrupt about-face, this late in the process, is both telling and troubling. As detailed in the Speech or Debate Discovery Motion, counsel for Congressman Collins repeatedly urged the Government to use caution and avoid infringing upon the constitutional protection. Instead, the Government proceeded brashly and the resulting activities—and violations—are apparent on their face and

---

[6] They do, however, contain other objectionable materials. An indictment or information must be "a plain, concise, and definite statement of the *essential* facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1) (emphasis added). Surplusage is frowned upon. Fed. R. Crim. P. 7(d) and Cmte. Note (1944) ("This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information."). Yet, the Government continues to insist on parading the fact that one defendant is a Congressman, *see, e.g.*, Superseding Indictment ¶3, despite that fact's wholesale irrelevance to the issues in this case. That the Government continues to treat *this* defendant differently in *this* case is reason for pause. Why, if the alleged conduct is "personal criminal conduct," ECF No. 69 at 31, does the Government insist on drawing attention to Congressman Collins' status as a Member? *See also* Tr. 14:22-23 (Oct. 11, 2018) (lamenting that Congressman Collins had been "on television declaring his innocence").

Honorable Vernon S. Broderick
August 26, 2019
Page 5

detailed at length in Congressman Collins' moving papers. To be clear, the Government's Superseding Indictment maneuver is telling and troubling because it is a tacit admission that a violation occurred and it is a thin, eleventh-hour attempt to sidestep the consequences of that violation by suggesting that they did nothing wrong. For these reasons, the Government's justification for the Superseding Indictment rings hollow: that is, the modifications are merely "an effort to avoid unnecessary pretrial litigation," while it continues to "vigorously dispute Congressman Collins's claim that the Original Indictment was tainted," Gov't Aug. 6 Letter at 2.

Further, the Government's tardy and unconvincing pivot falters for another reason. In May, the Government was clear that it "is relying on [evidence concerning the OCE]. We are relying on it. We put it in the indictment because we are relying on it. At trial, we will rely on it." Tr. at 56:9-14 (May 10, 2019). The Government recently reinforced this point: "the Government presently anticipates offering, among other things, *testimony of congressional staffers* . . . [and] *evidence regarding the OCE investigation* . . . ." Gov't Aug. 6 Letter at 2 (emphasis added).

The Government continues to advance the untenable position that it can obtain material in violation of the Speech or Debate Clause; maintain, use, review, and rely on that material without restriction; and in the future support its case-in-chief with that same information. This is fundamentally inconsistent as a matter of law and common sense with a privilege that the Supreme Court has found to be "absolute." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975). Resolution of the Speech or Debate issues at this juncture therefore remains critically important.

<u>*Resolution of the Discovery Motions Will Allow for Timely Filing of Substantive Motions, Avoid Unnecessary Delay, and Accommodate Congressman Collins' Inherent Right to Appellate Review*</u>

Any decision bearing on the Speech or Debate Clause is entitled to immediate appeal. *See* House *Amicus* Br. at 2 n.3 ("Given the absolute nature of the Speech or Debate Clause and its critical importance to our system of government, courts have held repeatedly that adverse Speech or Debate rulings are immediately appealable.") (citing *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979); *Gravel v. United States*, 408 U.S. 606, 608 & n.1 (1972)).

Here, the Government has not changed how it intends to prove its case. The latest maneuver is simply an attempt to shield its violations of the Speech or Debate Clause from any serious scrutiny. This disturbing strategy strikes at the heart of the constitutional protections afforded by the Speech or Debate Clause. Indeed, what the Government fails to recognize is that a core purpose of the protection is the avoidance of exposure to improper questioning. Waiting until after trial—particularly where the Government has made no secret about its desire to use protected material—would subject Congressman Collins to precisely the exposure that the Clause forbids. *See Helstoski*, 442 U.S. at 508 ("[I]f a Member is to avoid exposure to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his . . . challenge . . . must be reviewable before . . . exposure [to the questioning] occurs." (quoting *Abney v. United States*, 431 U.S. 651, 662 (1977)).

The Government's reliance on *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) is unavailing. While the Government cherry-picks narrow dicta regarding the collateral order

doctrine, the Second Circuit has been significantly more clear: "The opportunity for intimidation by the prosecutors of the Executive Branch would be reduced by the knowledge that prosecutions encountering valid legal defenses will be promptly terminated by appellate courts *before* any trial has occurred." *United States v. Myers*, 635 F.2d 932, 936 (2d Cir. 1980) (emphasis added). *See also United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 266 (1982) ("[I]n *Helstoski* . . . we held that a United States Congressman could have taken an interlocutory appeal in a criminal case to assert the immunity conferred upon him by the Speech or Debate Clause . . . [t]he right protected by the Clause would have been lost if the appeal had been postponed."); *United States v. Culbertson*, 598 F.3d 40, 46 (2d Cir. 2010) ("The third category of criminal cases in which immediate appeal has been allowed are those cases in which the Speech or Debate Clause right is raised and resolved before trial. Orders resolving the right 'not to be questioned' regarding legislative activities . . . 'are truly final and collateral, and the asserted rights in all three cases would be irretrievably lost if review were postponed until trial is completed.'" (quoting *Flanagan v. United States*, 465 U.S. 259, 266 (1984)); *United States v. Kolter*, 71 F.3d 425, 430 (D.C. Cir. 1995) ("[T]he district court's resolution of a congressman's claim that his impending trial would violate his rights under the speech or debate clause is subject to immediate appeal lest that constitutional right be lost merely by requiring him to stand trial, regardless of the outcome."). Sleight of hand by the Government cannot somehow preclude appellate scrutiny of its approach to and tactics employed in this prosecution.

Delaying presentation of these issues until a motion *in limine* is inefficient and improper where the right to an interlocutory appeal is firm. Determination of the discovery motions, followed by appropriate substantive motions, should not be delayed. This is all the more appropriate if there is "no 'there' there at all," Tr. at 14:3 (Dec. 11, 2018), and the Government has nothing to fear from transparency.

### **Conclusion**

The Government continues to desperately oppose relief that, at bottom, merely requests disclosure and visibility. The Government should be required to turn over the limited information sought in the pending discovery motions as a necessary prerequisite to substantive, pre-trial motion practice. Without the requested disclosure, Defendants are left in the dark and unable to adequately seek remediation, crippling their right to mount a vigorous defense. The Superseding Indictment does not obviate the issues raised in the pending, meritorious discovery motions.

Sincerely,

Jonathan R. Barr

cc: All Counsel of Record (via ECF)