UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

CHRISTOPHER COLLINS, et al.,

        Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/6/19

S1 18 Cr. 567 (VSB)

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

  Currently pending before me are Defendants' pretrial motions.  Each Defendant moves for an order directing the United States Attorney's Office for the Southern District of New York (the "Government" or "USAO") to (1) conduct a *Brady* review of and/or produce certain files of the United States Securities and Exchange Commission (the "SEC"), and materials seized or obtained from certain individuals, (2) produce Rule 16 material seized or obtained from certain individuals, and (3) produce the interview notes and the FBI interview reports ("FBI 302s") of two former staffer members of Defendant Christopher Collins.  Defendant Christopher Collins also moves for an order compelling the Government to produce materials bearing on the Speech or Debate Clause of the United States Constitution.

  Because the Superseding Indictment was not the product of a joint investigation between the Government and the SEC, and the Government does not have the legal right to search the non-responsive materials in, or produce the entire contents of, the devices and/or accounts at issue, Defendants' motions related to the SEC materials and Brady/Rule 16 materials is denied. With regard to the two FBI 302s and related notes, the Government fulfilled its *Brady* obligation

by disclosing the substance of the exculpatory statements of the two former staff members.  With regard to Defendant Christopher Collins's motion related to the Speech or Debate Clause, because Defendant Collins has failed to demonstrate (1) that he is legally entitled to the discovery he seeks, (2) that the Speech or Debate Clause was violated by the Government in obtaining either the indictment or superseding indictment, or (3) that the Government—with the exception of materials related to the Office of Congressional Ethics ("OCE") investigation related to Defendant Collins—intends to use documents or elicit testimony that implicate the Speech or Debate Clause, Defendant Christopher Collins's motion related to the Speech or Debate Clause is denied.  With regard to the OCE investigation, I find that the mere fact that Defendant Christopher Collins was (1) the subject of an investigation by the OCE related to Innate Immunotherapeutics Limited ("Innate") and (2) interviewed in connection with that OCE investigation, are not protected by the Speech or Debate Clause.

## I.   **Background**[1]

Defendant Christopher Collins is a Congressman representing the 27th District of New York.  (Sup. Ind. ¶ 3.)  He was also a member of the Board of Directors of Innate, a biotechnology company headquartered in Sydney, Australia, and held approximately 16.8% of its stock.  (*Id.* ¶ 1, 3).  "Innate's primary business was the research and development of a drug called MIS416, which was intended to treat Secondary Progressive Multiple Sclerosis ("SPMS")."  (*Id.* ¶ 2.)   As part of Innate's work on developing MIS416, it undertook a drug trial designed to determine its "clinical efficacy in treating SPMS" (the "Drug Trial").  (*Id.*)  "Because there were few or no alternative treatments for SPMS, MIS416 had the potential to be

---

[1] The facts described in this section are taken from the allegations in Indictment 18 Cr. 567 returned on August 7, 2018 and unsealed the following day ("Indictment" or "Ind."; Doc. 2), and the Superseding Indictment S1 18 Cr. 567 filed on August 6, 2019 ("Superseding Indictment" or "Sup. Ind."; Doc. 107).

enormously profitable if the Drug Trial was successful." (*Id.*)

As a member of Innate's Board of Directors, Defendant Christopher Collins "regularly had access to material, nonpublic information, including about MIS416 and the Drug Trial." (*Id.* ¶ 3). On June 22, 2017, the initial results from Phase 2B of the Drug Trial were made available to Innate's Chief Executive Officer ("CEO"), and the results established that "MIS416 lacked therapeutic value in the treatment of SPMS." (*Id.* ¶¶ 12, 15.) However, the results were not publicly released, and Innate issued a press release stating that (1) it had requested that the Australian Securities Exchange ("ASX") halt trading in Innate stock because Innate had received the Phase 2B results, and (2) that Innate expected that the halt would be lifted by June 27, 2017. (*Id.* ¶ 16.) Such a request was not unusual since the ASX "routinely halts trading at a company's request in situations in which the company has become aware of material information, either positive or negative, but is not yet ready to announce that information to the public." (*Id.* ¶ 17.) Although trading was halted in Australia, it was not halted in the United States over-the-counter ("OTC") market. (*Id.*)

On June 22, 2017 at approximately 6:55 PM, Innate's CEO sent an email concerning the Drug Trial results in which he stated, in part, "I have bad news to report . . . the top line analysis of the 'intent to treat' patient population (ie every subject who was successfully enrolled in the study) would pretty clearly indicate[s] 'clinical failure.'" (*Id.* ¶ 20 (alteration in original).) The CEO went on, stating "Top-line 12-month data . . . show no clinically meaningful or statistically significant differences in [outcomes] between MIS416 and placebo . . . No doubt we will want to consider this extremely bad news . . . ." (*Id.* (alteration in original).) Defendant Christopher Collins received the CEO's email while attending the Congressional Picnic at the White House, and responded at approximately 7:10 p.m., stating, in part, "Wow.  Makes no sense.  How are

3

these results even possible???" (*Id.* ¶ 21.)  Between 7:10 and 7:11:23 p.m., Defendant

Christopher Collins called his son, Defendant Cameron Collins, twice; the second of these calls

lasted approximately 5 seconds.  (*Id.* ¶ 22.)  Defendant Cameron Collins then called Defendant

Christopher Collins three times between approximately 7:14:16 and 7:15:27 p.m., and each call

lasted approximately 5 seconds.  (*Id.*)  Between 7:15:50 and 7:16:19 p.m., Defendant Christopher

Collins called Defendant Cameron Collins twice; the first call lasted approximately 7 seconds

and the second lasted approximately 6 minutes and 8 seconds.  (*Id.*)  Of these seven telephone

calls, only the last call was answered.  (*Id.* ¶ 23.)  During that six minute call, Defendant

Christopher Collins told Defendant Cameron Collins, in substance, "that MIS416 had failed the

Drug Trial."  (*Id.*)  Defendant Christopher Collins disclosed this information "knowing it was in

breach of his duties to Innate and anticipating that [Defendant Cameron Collins] would use it to

trade and tip others."  (*Id.*)  Defendant Cameron Collins on June 22, 2017, proceeded to disclose

the results of the Drug Trial to the following individuals:  his fiancée; her father, Defendant

Stephen Zarsky; Zarsky's wife; and a friend of Defendant Cameron Collins.  (*Id.* ¶ 28.)

Defendant Christopher Collins did not trade himself, because "he was virtually precluded

from trading his own shares," which were held in Australia "and thus subject to the Australian

trading halt."[2]  (*Id.* ¶ 24.)  However, the shares of Innate owned by Defendant Cameron Collins,

Defendant Cameron Collins's fiancée, Defendant Stephen Zarsky, Zarky's wife, and Defendant

Cameron Collins's friend could be traded in the domestic OTC market.  (*See id.* ¶¶ 24, 28–34.)

Indeed, Defendant Cameron Collins, Defendant Cameron Collins's fiancée, Defendant Stephen

Zarsky, Zarky's wife, and Defendant Cameron Collins's friend sold most or all of their Innate

---

[2] The Indictment also alleged that Defendant Christopher Collins did not trade himself, because he "was already under investigation by the Office of Congressional Ethics ('OCE') in connection with his holdings in, and promotion of, Innate"—having been interviewed by OCE personnel on or about June 5, 2017.  (Ind. ¶ 24.)  The Superseding Indictment does not contain any references to the OCE investigation.

shares between June 22 and June 26, 2017. (*See id.* ¶¶ 25–34.) These sales "preceded the public release of the negative Drug Trial results, and were timed to avoid losses that they would have suffered once that news became public." (*Id.* ¶ 10.)

"On the night of Monday, June 26, 2017, after the U.S. markets had closed, Innate issued a press release publicly stating, in substance and in part, that MIS416 had failed its Drug Trial (the 'Public Announcement')." (*Id.* ¶ 18.) Innate's stock price crashed. (*Id.* ¶ 19.) Specifically, on June 26, 2017, Innate's stock had closed at approximately $0.455 per share on the United States OTC market and on June 27, 2017, after the Public Announcement, the stock closed at approximately $0.0351 per share, a drop of over 92% in value. (*Id.*)

## II.    **Procedural History**

The Indictment was returned on August 7, 2018, and unsealed the following day. On August 8, 2018, the SEC filed insider trading charges against Defendant Christopher Collins, Defendant Cameron Collins, and Defendant Stephen Zarsky. (*See generally* 18-cv-7128, Doc. 1.) On that same day, the SEC filed insider trading charges against Defendant Cameron Collins's fiancée, (*see generally* 18-cv-7129, Doc. 1), and simultaneously filed documents indicating that the SEC had reached a settlement with Defendant Cameron Collin's fiancée, (*see* 18-cv-7129, Docs. 4, 4-1, 4-2).

On August 6, 2019, the Government filed Superseding Indictment S1 18 Cr. 567.[3] (Doc. 107.) The Superseding Indictment charges (1) Christopher Collins, Cameron Collins, and Stephen Zarsky with conspiracy to commit securities fraud in Count One; (2) Christopher Collins, and Cameron Collins with securities fraud in Count Two; (3) Christopher Collins,

---

[3] The Superseding Indictment, among other things, removed references to the OCE "investigation concerning Congressman Collins's holdings in, and promotion of, Innate" and the discussion regarding the allegedly misleading statement issued by Congressman Collins's press office on June 28, 2017. (Doc. 108 at 1.)

Cameron Collins, and Stephen Zarsky with securities fraud in Count Three; (4) Christopher Collins, and Cameron Collins with securities fraud in Count Four; (5) Christopher Collins, Cameron Collins, and Stephen Zarsky with securities fraud in Count Five; (6) Steven Zarsky with securities fraud in Counts Six and Seven; (7) Cameron Collins with Securities Fraud in Count Eight; (8) Christopher Collins, Cameron Collins, and Stephen Zarsky with conspiracy to commit wire fraud in Count Nine, and (9) Christopher Collins, Cameron Collins, and Stephen Zarsky with wire fraud in Count Ten.  The Superseding Indictment also charges Christopher Collins, Cameron Collins, and Stephen Zarsky with one count each of making false statements in Counts Eleven, Twelve, and Thirteen, respectively.

On February 8, 2019, Defendant Christopher Collins filed his motion to compel production of materials related to the Speech or Debate Clause of the United States Constitution, (Doc. 62), and a memorandum in support of that motion, (Doc. 63).  That same day, all defendants filed a motion to compel production of *Brady* and Rule 16 material, (Doc. 64), a memorandum, (Doc. 65), and declaration with exhibits, (Doc. 66), in support of that motion. Both memoranda and the declaration were filed on the public docket in redacted form, and several exhibits were filed under seal.[4]  (*See* Docs. 63, 65–66.)

The Government filed an omnibus memorandum in opposition to these motions on March 8, 2019, (Doc. 69), and Defendants filed their reply memoranda on March 22, 2019, (Docs. 71–73).

In a motion filed on April 2, 2019, the United States House of Representatives ("House")

---

[4] Because this Opinion & Order refers to these redacted documents and materials filed under seal, it will be filed under seal and not on the public docket.  I am sending a copy of the Opinion & Order to the parties, and concurrently entering an order directing the parties to submit a joint letter indicating any redactions they propose and the rationale for those redactions.  I will then review the proposed redactions, determine if they are appropriate, and file the redacted version of the Opinion & Order on the public docket.

sought leave to file an amicus curiae brief. (Docs. 75–76.) By endorsement the following day, I granted the request of the House and directed that it file its memorandum of law on the docket, (Doc. 77), and that memorandum was filed on April 4, 2019, (Doc. 80).

On May 3, and May 10, 2019, I held oral argument on the Defendants' motions. (Docs. 98, 100.) Prior to the oral argument held on May 3, I issued an order directing the parties to be prepared to answer certain questions listed in the order. (Doc. 84.) The order also directed that certain documents related to the motions be produced to me. (*Id.*) By order filed on June 10, 2019, I directed the Government to provide me with answers to certain questions and copies of certain documents, including materials covered by Rule 6(e) of the Federal Rules of Criminal Procedure such as, among other things, the grand jury transcript of the grand jury presentation that led to the return of the Indictment. (Doc. 103.)

On August 7, 2019, I held a telephone conference to discuss the implications of the Superseding Indictment for the pending motions.[5] (*See generally* Doc. 113.) As agreed during the telephone conference, Defendants submitted their response to certain questions I posed during the telephone conference related to, among other things, what impact, if any, the Superseding Indictment had on the pending motions in a letter dated August 26, 2019. (Doc. 112.) The Government filed a response to that letter on September 3, 2019, (Doc. 115), and by Order filed on September 4, 2019, I granted Defendants permission to file a reply to the Government's letter and directed the parties to appear for a conference on September 12, 2019 at 10:30 a.m., (Doc. 116). Defendants filed their letter in reply on September 6, 2019. (Doc. 117.)

---

[5] Each Defendant waived their right to participate in the August 7, 2019 telephone conference. (Docs. 109–111.)

### III.   **Discussion**

#### A.   ***Motion for an Order Directing Production of Brady and Rule 16 Materials***

Defendants seek an order compelling the Government to produce material pursuant to

*Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16 ("Rule 16").

Specifically, Defendants seeks an order directing the Government to:

- Review and disclose "all Brady material and information material to the defense that is within the possession, custody, or control of the [SEC] that the government directed the SEC not to produce to Defendants or which the SEC has withheld from disclosure for any other reason" ("SEC Materials");
- Review and disclose "all *Brady* and Rule 16 material contained in the devices, email accounts, iCloud accounts, and/or social media accounts belonging to" Individual-1, Individual-2, Individual-3, Individual-5, and Individual-6, obtained through search warrants or consent ("Brady/Rule 16 Materials") "in the government's physical possession, actual custody, and complete control, or, in the alternative," produce complete copies of the materials contained in such devices or accounts;
- Produce the notes and Federal Bureau of Investigation ("FBI") FD-302 reports ("302" or "302s") of interviews of two former staffers of Defendant Christopher Collins who allegedly made exculpatory statements during their interviews.

(Brady/Rule 16 Mem. 1[6]; *see also* 8/26/19 Ltr. 1.[7])  With regard to the SEC Materials,

Defendants assert that such documents are in the Government's possession, custody, and control

because the SEC and the Government conducted a joint investigation.  Therefore, according to

Defendants, the Government must review the SEC Materials and disclose any *Brady* material.

(Brady/Rule 16 Mem. 3–4; 8/26/19 Ltr 1.)  In response, the Government asserts that it did not

conduct a joint investigation with the SEC, and, in any event, it has already reviewed the SEC

---

[6] "Brady/Rule 16 Mem." refers to the Memorandum of Law in Support of Defendants' Motion For The Production of *Brady* And Rule 16 Material.  (Doc. 65.)

[7] "8/26/19 Ltr." refers to the letter filed on August 26, 2019 by all Defendants outlining their views of the implications of the Superseding Indictment for Defendants' discovery motions.  (Doc. 112.)

documents at issue for *Brady* information.  (*See* Govt. Opp. 19–20[8]; 5/3/19 Tr. at 36[9].)

Defendants also argue that since the Government imaged the devices and/or copied the entire electronic and/or social media accounts of certain individuals alleged to be uncharged co-conspirators and downstream tippees[10], all the electronically stored material ("ESI") contained in those devices and accounts are in the Government's possession, custody, and control and must be searched for Brady/Rule 16 Materials or complete images of the devices and/or copies of the accounts must be turned over to Defendants.  (Brady/Rule 16 Mem. 4–5; Defs.' Aug. 26 Ltr. 1.) The Government argues that it reviewed the ESI contained on the devices and in the accounts for Brady/Rule 16 Material and produced such material when the devices and accounts were reviewed for responsive documents, and the Government does not believe it has the authority to either produce all of the electronic material or review electronic material on the devices and in accounts it has determined to be non-responsive.  (*See* Govt. Opp. 22–25.)

With regard to the statements of the two former staffers, Defendants seek an order directing the production of the interview notes and the FBI interview reports ("FBI 302s") so that they can understand "nature, scope, and full context of the exculpatory statements."  (Brady/Rule 16 Mem. 5–6.)  In response, the Government asserts that (1) Defendants are not entitled to the interview notes and the FBI 302s, and (2) it has met its obligations by providing descriptions of the substance of the exculpatory statements.  (*See* Govt. Opp. 24–25.)

---

[8] "Govt. Opp." refers to the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions. (Doc. 69.)

[9] "5/3/19 Tr." refers to the transcript of the oral argument held on May 3, 2019.  (Doc. 98.)

[10] The original Indictment identifies these uncharged co-conspirators as CC-1, CC-2, CC-3, CC-5, and CC-6.  (Ind. ¶ 4–7.)  The Superseding Indictment identifies the same individuals as Individual-1, Individual-2, Individual-3, Individual-5, and Individual-6, but recharacterizes their involvement.  (*See* Sup. Ind. ¶ 4–7.)  Individual-1 and Individual-2 are alleged to be uncharged members of the conspiracy, while the remaining Individuals are now alleged to be downstream tippees, but not members of the charged conspiracy.  (*See id.* ¶¶4–7, 28–41; *see also* 8/6/19 Ltr. 1–2).  "8/6/19 Ltr." refers to the letter from the Government regarding the Superseding Indictment, filed on August 6, 2019.  (Doc. 108.)

I find that because the Superseding Indictment was not the product of a joint investigation between the Government and the SEC, and the Government does not have the legal right to search the non-responsive materials in, or produce the entire contents of, the Individuals' devices and/or accounts, Defendants' motion related to the SEC Materials and Brady/Rule 16 Materials is denied. With regard to the FBI 302s and related notes, the Government fulfilled its *Brady* obligation by disclosing the substance of the exculpatory statements; therefore, Defendants' motion seeking the production of the FBI 302s and related notes is denied.

### 1. Applicable Law

#### a. Disclosure of Brady Material

"The prosecution's affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with [the Supreme Court's] decision in *Brady v. Maryland*," 373 U.S. 83 (1963). *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437. "The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (quoting *Brady*, 373 U.S. at 87). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *Id.* "*Brady* does not, however, require the prosecution to disclose *all* exculpatory and impeachment material; it need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'" *Id.* at 135 (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)). "[A] defendant is deprived of a fair trial only where there is a reasonable

probability that the government's suppression affected the outcome of the case . . . , or where the suppressed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). "*Brady* material must be disclosed in time for its effective use at trial." *Id.*

The Government's "*Brady* obligations extend only to materials within prosecutors' possession, custody or control or, in appropriate cases, that of the Department of Justice, perhaps another part of the Executive Branch, or a comparable state authority involved in the federal prosecution." *United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 (S.D.N.Y. 2018) (footnote omitted). A prosecutor's duty to review documents in the possession, custody, or control of another agency arises where the Government conducts a "joint investigation" with another agency. *See United States v. Rigas*, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008) (holding that there was "no joint investigation with the SEC" and therefore the Government did not need to produce documents in the custody of the SEC), *aff'd*, *United States v. Rigas*, 583 F. 3d 108 (2d Cir. 2009); *SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (holding that FBI and SEC did not conduct a joint investigation where they participated in joint interviews but only the FBI took notes). Although the Second Circuit has not specifically addressed what criteria or factors a district court should evaluate when making a determination concerning whether an investigation is a joint investigation for purposes of triggering an extension of the Government's *Brady* search obligation, courts in this district have addressed the issue. In this regard, Judge Paul Oetken's decision in *United States v. Middendorf*, 18-CR-36 (JPO), 2018 WL 3956494, (S.D.N.Y. Aug. 17, 2018), is instructive. Judge Oetken found that "[a] number of factors are relevant in determining whether the prosecution conducted a 'joint investigation,' including whether the

11

other agency:  (1) participated in the prosecution's witness interviews, (2) was involved in

presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents

with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5)

accompanied the prosecution to court proceedings." *Id.* at *4.

b.  <u>Searches Pursuant to the Fourth Amendment</u>

According to the Fourth Amendment, "no warrants shall issue, but upon probable cause,

supported by oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." U.S. Const. amend. IV.  Fourth Amendment rights are personal.

*Rakas v. Illinois*, 439 U.S. 128, 133 (1978).  In order to assert the protections of the Fourth

Amendment a person "must show that he had a 'legitimate expectation of privacy' in the place

searched." *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (quoting *Rakas v.*

*Illinois*, 439 U.S. 128, 143 (1978)); *see also United States v. Villegas*, 899 F.2d 1324, 1333 (2d

Cir. 1990) ("A defendant has no right to have evidence suppressed on Fourth Amendment

grounds unless the breached privacy expectation was his own rather than that of a third party.").

"This inquiry involves two distinct questions:  first, whether the individual had a subjective

expectation of privacy; and second, whether that expectation of privacy is one that society

accepts as reasonable." *Hamilton*, 538 F.3d at 167 (citing *Katz v. United States*, 389 U.S. 347,

361 (1967) (Harlan, J., concurring)).

**2.  Application**

a.  <u>SEC Materials</u>

As support for their claim that the Government and the SEC conducted a joint

investigation Defendants point to the following: (1) the reference by Special Agent Nicholas

Anderson to his reliance on, among things, his "review of notes of conversations with

12

representatives of the [SEC]" as a basis for his affidavit seeking historical cellphone location information and therefore "the fruits of the SEC investigation were relied on to obtain search warrants in the criminal investigation"; (2) the fact that information gathered from search warrants executed in the criminal investigation was shared with the SEC; (3) the participation of SEC attorneys in witness interviews with prosecutors from the Government; (4) the alleged reliance on the interviews to bring the civil and criminal cases against Defendants; (5) the alleged reliance by the Government "on a considerable number of documents from the SEC through an access request approved by the SEC"; and (6) the circumstances of a July 18, 2018 a meeting with defense counsel for Defendants Christopher Collins and Cameron Collins—despite a request for separate meetings without the participation of the SEC—attended by prosecutors, including leadership of the USAO SDNY, and both Co-Directors of the SEC's Enforcement Division." (Brady/Rule 16 Mem. 6–8.)

As an initial matter, Defendants concede that "many materials were produced by the SEC" as part of the "SEC's agreement to produce a significant portion of its investigative file to Defendants" pursuant to a consent order issued staying the SEC's civil case ("Consent Order"). (*Id.* at 9.) Specifically, "the SEC agreed to produce its investigative file minus certain materials the government directed it to withhold until the production of Jencks Act/§3500 material in this case." (*Id.* at 19.) Based upon the descriptions provided by the parties, it appears that only a limited number of unproduced documents remain in the sole possession, custody, and control of the SEC. Defendants now seek production of these carved out documents, described as: "Transcripts of testimony and notes of or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government designates to the SEC as an individual who may

13

be called as a witness in the Criminal Action." (*Id.* at 9.)  Defendants claim that "[t]he government's position creates a hazardous situation where it has directed the SEC not to produce material to Defendants, but then asserts that it is not obligated to review the material withheld at its direction." (*Id.* at 10.)  This argument is misplaced.  The Government "obtained [these documents] . . . reviewed them for Brady, and [is going] to withhold them and produce them on the schedule that the Court sets for 3500 material." (5/3/19 Tr. 36.)  In other words, the Government has complied with its *Brady* obligations as it relates to these carved out materials, and, in any event, those carved out materials will be produced to Defendants to the extent they are witness statements required to be so produced pursuant to 18 U.S.C. § 3500.[11]  Defendants are not entitled to any additional remedy related to these materials.

With regard to Defendants' assertion that the SEC and the Government conducted a joint investigation, a review of the circumstances of the investigation demonstrates that the investigation was not joint.  With regard to witness interviews, the SEC and the Government both participated in only 16 of 60 interviews of 37 distinct witnesses; witnesses were told that "the two agencies were conducting parallel but separate investigations"; the USAO arranged all but three of the interviews; virtually all of the interviews were conducted at the offices of the USAO; the USAO did not participate in interviews held at the offices of the SEC; during interviews in which both the USAO and SEC participated that were conducted pursuant to a proffer agreement, "the witness executed separate proffer agreements with the USAO and the

---

[11] In addition, with regard to other materials purportedly in the "SEC's possession, custody, or control relating to the investigation that the SEC has not produced, whether because of the government's affirmative request to hold it back or because the SEC withheld the information for some other reason," there is no evidence that, other than potential § 3500 material, documents related to the underlying facts at issue in the case exist, as opposed to the work product containing the opinions and analysis of the SEC.  Such work product would not ordinarily be subject to disclosure, and Defendants have not demonstrated that they would be entitled to the production of such work product.

SEC"; the SEC did not take notes during interviews in which both agencies participated; and the SEC did not—with the exception of one interview whose report was produced to Defendants in civil discovery—create reports of the witness interviews. (5/3/19 Tr. 38–39; 6/14/19 Ltr. 1–2)[12]. In addition, the SEC did not review and comment on drafts of the interview reports, does not have any notes from the interviews, does not have copies of the interview reports, (5/3/19 Tr. 39, 42, 43, 53; 5/10/19 Tr. 83–84[13]; 5/9/19 Ltr. 2)[14], and the SEC has not participated in interviews that have been conducted since the Indictment was filed, (5/3/19 Tr. 59). These facts demonstrate that the SEC's involvement in the interviews could not be considered to have been that of a partner so as to support a finding that the USAO and SEC conducted a joint investigation.

Similarly, personnel, information and documents were not shared in any material way between the USAO and SEC, and each agency made charging decisions independently of each other. For example, (1) no one from the SEC was designated a special assistant United States Attorney to work on the criminal investigation; (2) no one from the SEC was part of the USAO's investigative team; (3) although the agencies "consulted" with regard to their "respective strategies over the course of [the] parallel investigations," neither agency gave the other any directions concerning "what to do or what avenues of investigation to pursue,"; (4) no one from the SEC attended sessions of the grand jury; (5) transcripts of the grand jury presentations were not shared with the SEC; (6) although the SEC shared some documents it obtained using subpoenas, the USAO did not share any documents it obtained using grand jury subpoenas with

---

[12] "6/14/19 Ltr." refers to the letter filed by the Government on June 14, 2019. (Doc. 104.)

[13] "5/10/19 Tr." refers to the transcript of the oral argument held on May 10, 2019. (Doc. 100.)

[14] "5/9/19 Ltr." refers to the letter filed by the Government on May 9, 2019. (Doc. 97.)

the SEC;[15] (7) the SEC was not involved in the USAO's discussion concerning who should be charged criminally and the USAO did not share drafts of the Indictment; (8) the USAO did not see or consult about the SEC's action memo; (9) the USAO was not involved in the SEC's decision-making process concerning who should be charged civilly by the SEC; and (10) the USAO did not share the prosecution memorandum used to make the criminal charging decision. (5/3/19 Tr. 53–55.)

These facts distinguish this case from the circumstances addressed by Judge Jed Rakoff in *United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012), and Judge Paul Gardephe in *United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014), upon which Defendants rely. In *Gupta*, the Government and the SEC jointly interviewed "no fewer than 44 witnesses," and an SEC attorney, "within a day or two after each interview, prepared memoranda that summarized what he felt were the relevant parts of the interviews." *Gupta*, 848 F. Supp. 2d at 494. Here, the SEC and the Government both participated in only 16 of 60 interviews, and the SEC did not take notes during interviews and does not have any notes from the interviews. In *Martoma*, the issue was "whether the USAO's *Brady* and *Giglio* obligations extend[ed] to communications between the SEC and [counsel for two witnesses expected to testify at trial who allegedly supplied non-public information to Martoma] that are in the sole possession of the SEC." As an initial matter, there has been no suggestion or evidence presented to me that the SEC independently communicated with counsel for witnesses in this case as in *Martoma*. Indeed, the USAO arranged all but three of the 60 witness interviews. In addition, Judge Gardephe found that the USAO and SEC conducted a joint investigation because (1) "the SEC and the USAO jointly

---

[15] Materials and documents deemed responsive to search warrants and/or obtained through use of court orders issued pursuant to Title 18, United States Code, Section 2703 were shared with the SEC and produced to defense counsel in this case as part of discovery. (5/3/19 Tr. 56.)

conducted twenty interviews of twelve witnesses" during the investigation of Martoma; (2) the

SEC shared documents with the USAO, including all documents it received from SAC Capital,

Martoma's employer; (3) "[t]he SEC and the USAO also coordinated their efforts in conducting

depositions," and (4) the SEC provided the USAO with updates in the middle of and after the

deposition of the founder and principal of SAC Capital. *Martoma*, 990 F. Supp. 2d at 461. Here,

the level of participation in interviews by the SEC, and coordination and sharing of information

between the SEC and the Government does not rise to the level documented in *Martoma* and do

not support a finding that there was a joint investigation.

The facts here do not support a finding that the Government and the SEC were

conducting either a joint investigation or the type of joint fact-gathering sufficient to trigger the

Government's *Brady* obligation. Even if the Government and the SEC were engaged in joint

fact-finding in this case—and they were not—unlike in *Gupta* and *Martoma*, there is no evidence

suggesting that the SEC is in sole possession of notes of witness interviews or communications

with counsel for witnesses.

### b. Materials of Individuals

With regard to the Defendants' request for an order directing the Government to search

the ESI of the Individuals for Brady/Rule 16 Material, the Government asserts that such a search

was conducted at the time the Government searched the ESI for responsive documents. (*See*

Govt. Opp. 22–25; 5/3/19 Tr. 61–64.) In light of this representation the issue to be determined is

whether or not the Government must either go back and review the non-responsive ESI for

Brady/Rule 16 Material or turn over the entire contents of the electronic devices and/or accounts

of the Individuals.

The ESI encompassed within Defendants' request is limited. The complete contents of

the electronic devices for Individual-1 and Individual-2 have already been produced to

Defendants. (6/14/19 Ltr. 2.)  With regard to the ESI from the devices of Individual-3,

Individual-5, and Individual-6, the Government represented that it "is not in possession of

materials belonging to [Individual-3] or [Individual-6] beyond those that have already been

provided in discovery."[16]  (*Id.*)  Although the Government is in possession of non-responsive

iCloud data for Individual-5, "Individual-5 has declined, through counsel, to consent to further

review of this data by either the Government or the defendants."  (*Id.*)  Therefore, the issue is

whether or not the Government can be compelled to either conduct another search of Individual-

5's non-responsive iCloud data for Brady/Rule 16 Material or to turn over the entirety of

Individual-5's iCloud data over Individual-5's objection.

      As an initial matter, as noted above, the Government already conducted a search for

Brady/Rule 16 Material when it searched Individual-5's iCloud data for responsive documents.

(*See* Govt. Opp. at 22-25; 5/3/19 Tr. at 61-64.)  Based on this search, the Government asserts that

it "has complied with its *Brady* obligations, and there is no basis for the defendants to demand

that the Government essentially check the same materials again."  (Govt. Opp. at 23.)  I agree.

Defendants have not articulated a sufficient reason to believe that the Government's efforts were

deficient such that it has failed to meet its *Brady* obligations.  Therefore, I find that the

Government has met its *Brady* obligations with regard to Individual-5's iCloud data.

      Even if the Government's search of Individual-5's iCloud data was an insufficient search

for *Brady* material, Defendants' assertion that since the Government copied and/or imaged the

entirety of the contents of the electronic devices of the Individuals, including the iCloud data of

---

[16] Despite being in possession of the ESI for Individual-1, Individual-2, Individual-3, and Individual-6, Defendants
do not claim that this ESI contained any Brady/Rule 16 Material.  Presumably, if such material existed, they would
have included that fact to support their motion.

Individual-5, the Government is entitled to conduct another search of the non-responsive material for Brady/Rule 16 Material, is legally flawed.  (*See* Brady/Rule 16 Mem. at 22.)

The parties do not dispute that Individual-5 has a privacy interest in his iCloud data, and that the Government obtained that data apparently through the use of a search warrant.[17] Therefore, the Government's possession of and ability to review Individual-5's iCloud data is necessarily circumscribed by the Fourth Amendment.  Here, although it appears that Individual-5 did not move to quash the search warrant for Individual-5's iCloud data, "[Individual-5] has declined, through counsel, to consent to further review of this data by either the Government or the defendants." (6/14/19 Ltr. 2.)  The Government—having conducted a search of Individual-5's iCloud data consistent with the Fourth Amendment and a search warrant—does not have the legal authority to go back and search materials that are non-responsive, i.e., outside the scope of the search warrant.  Defendants argue that "while the search warrants *permit* the government to undertake a search for the purpose of furthering its investigation, *Brady* and Due Process *require* the government to review everything in its possession, custody, or control." (Brady/Rule 16 Mem. 22.)  Here, Defendants appear to be arguing that the Government's *Brady* obligation is superior to and takes precedence over an individual's Fourth Amendment rights.  The basic premise of Defendants argument is flawed; a search warrant was required for the Government to legally seize and search Individual-5's iCloud data.  In addition, Defendants do not cite any case law to support their proposition that the Government's *Brady* obligation gives it the legal right to search Individual-5's iCloud data over Individual-5's objection, nor do Defendants explain how

---

[17] In reviewing the submissions of the parties, I could not definitively determine that the Government used a search warrant to gain access to Individual-5's iCloud data.  However, even if the Government gained access to Individual-5's iCloud data through use of Individual-5's execution of a consent to search, it is unlikely, and there is no evidence in the record to suggest, that such a consent gives the Government the ability to search the iCloud data in perpetuity without Individual-5's consent.

such a search would not be inconsistent with Individual-5's Fourth Amendment rights.

**B.**   ***Motion for Production of the Interview Notes and FBI Interview
Reports***

Defendants claim that the Government has not met its *Brady* obligation with regard to

exculpatory statements made by two former staff members of Defendant Christopher Collins,

and request an order directing the production of the interview notes and the FBI 302s.

According to Defendants, the production of the notes and FBI 302s is necessary to enable them

to understand "the nature, scope, and full context of the exculpatory statements." (Brady/Rule

16 Mem. 5–6.) Because the Government has met its *Brady* obligation with regard to the

exculpatory statements in question, Defendants are not entitled to the production of the notes or

FBI 302s at this stage of the case.

As an initial matter, Defendants do not claim that the Government failed to disclose the

exculpatory statements. Indeed, Defendants concede that the Government "provided abbreviated

descriptions 'in substance and in part' of limited, unquestionably exculpatory statements by these

two witnesses." (*Id*. at 5.) Defendants do not cite case law that supports their argument that the

Government is required to produce primary materials containing exculpatory statements in order

to meet its *Brady* obligation. This is not surprising because such disclosure is not legally

required; rather, in order to meet its *Brady* obligation the Government need only disclose "the

essential facts which would enable [the defendants] to call the witness[es] and thus take

advantage of any exculpatory testimony that [they] might furnish." *United States v. Stewart*, 513

F.2d 957, 960 (2d Cir. 1975). Defendants do not claim that the Government failed to disclose

the essential facts or that the disclosure does not enable them to "take advantage of any

exculpatory testimony that [witnesses] might furnish." *Id*. Therefore, Defendants' motion for an

order directing the production of the notes and FBI 302s could be denied because of this failure

alone.  In any event, I have independently reviewed the summaries of the exculpatory statements

provided by the Government, and the notes and FBI 302s of the witnesses' interviews, and find

that summaries provide disclosure sufficient to meet the Government's *Brady* obligation.

Therefore, the Government has met its *Brady* obligation by providing summaries of the two

witnesses exculpatory statements.  The fact that the Government may have produced notes

and/or FBI 302s to meet its *Brady* obligation with regard to the exculpatory statements made by

other witnesses is of no legal significance.  In addition, contrary to Defendants suggestion,

(Brady/Rule 16 Mem. 11, 29–30), the Government is under no legal obligation to explain why it

chose to summarize the statements at issue rather than produce the notes and FBI 302s, nor is it

obligated to show it would be prejudiced by the production of the notes and FBI 302s related to

the two witnesses.

### C.   *Motion to Compel Production of Materials Bearing on the Speech or Debate Clause[18]*

#### 1.  Applicable Law

The Speech or Debate Clause of the United States Constitution provides that "for any

Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any

other Place." U.S. Const., art. I, § 6, cl. 1.  "The Speech or Debate Clause was designed to

assure a co-equal branch of the government wide freedom of speech, debate, and deliberation

without intimidation or threats from the Executive Branch.  It thus protects Members against

prosecutions that directly impinge upon or threaten the legislative process." *United States v.*

*Gravel*, 408 U.S. 606, 616 (1972).  However, according to the Supreme Court, "the Speech or

Debate Clause must be read broadly to effectuate its purpose of protecting the independence of

---

[18] References in this section to Defendant Collins are meant to identify Defendant Christopher Collins.

the Legislative Branch, but no more than the statutes we apply, was its purpose to make

Members of Congress super-citizens, immune from criminal responsibility." *United States v.*

*Brewster*, 408 U.S. 501, 516 (1972).

a. <u>Activities Protected by the Speech or Debate Clause</u>

The Speech or Debate Clause provides testimonial immunity as well as immunity from

criminal or civil liability for "legislative acts or the motivation for actual performance of

legislative acts." *Id.* at 509.  The protection from prosecution or civil liability is derived from the

freedom from questioning, the rationale being that "[r]evealing information as to a legislative act

. . . to a jury would subject a Member to being 'questioned' in a place other than the House or

Senate. . . ." *United States v. Helstoski*, 442 U.S. 477, 490 (1979).  The Clause protects matters

that are an "integral part of the deliberative and communicative processes by which Members

participate in committee and House proceedings with respect to the consideration and passage or

rejection of proposed legislation or with respect to other matters which the Constitution places

within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.  "A legislative act has

consistently been defined as an act generally done in Congress in relation to the business before

it.  In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or

done in the House or the Senate in the performance of official duties and into the motivation for

those acts." *Brewster*, 408 U.S. at 511.  Legislative acts include "delivering an opinion, uttering

a speech, or haranguing in debate; proposing legislation; voting on legislation; making,

publishing, presenting, and using legislative reports; authorizing investigations and issuing

subpoenas; and holding hearings and introducing material at committee hearings." *In re*

*McLean*, No. 2:18-cv-201 (WKS), 2019 WL 2353453, at *4 (D.Vt. 2019) (internal quotations

marks omitted).  The protections of the Speech or Debate Clause extend to Congressional

22

information-gathering activities, since "the power to investigate is inherent in the power to make laws[,] because '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) (second alteration in original) (internal quotation marks omitted).

The Speech or Debate Clause also prohibits the Government from charging legislative action as an offense or offering evidence of a member's legislative action against him. *Myers*, 635 F.2d at 937 (Under the Speech or Debate Clause, "[c]onduct that falls within the broad category of legislative action may not be charged as an offense . . . , nor may evidence of a Member's legislative action be offered in evidence against him."). The protection also extends to things done by staff members of a Senator or Representative "which would have been legislative acts, and therefore privileged, if performed by [a Senator or Representative.]" *Gravel*, 408 U.S. at 616.

b.  Activities not Protected by the Speech or Debate Clause

The Supreme Court in *Brewster* discussed various acts that are not protected by the Speech or Debate Clause, stating that

> [m]embers of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. . . . But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

*Brewster*, 408 U.S. at 512; *see also Gravel*, 408 U.S. at 625 ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts

legislative in nature.  Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity.").  Speech or Debate Clause protection "does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions." *Brewster*, 408 U.S. at 528. Nor does the Clause "prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528.

Moreover, an indictment "is not subject to dismissal on the ground that there was 'inadequate or incompetent' evidence before the grand jury." *United States v. Myers*, 635 F.2d 932, 941 (2d Cir. 1980); *see also United States v. Williams*, 644 F2d. 950, 952 (1981); *United States v. Murphy*, 642 F.2d 699, 700 (2d Cir. 1980).  In other words, the fact that a grand jury may have heard some evidence protected by the Speech or Debate Clause does not alone warrant dismissal of an indictment. *Myers*, 635 F. 2d at 941; *see also United States v. Jefferson*, 546 F.3d 300, 312 (4th Cir. 2008) ("a facially valid indictment is not subject to dismissal simply because the grand jury may have considered improper evidence, or because it was presented with information or evidence that may contravene a constitutional privilege.").  Indeed, where a grand jury is presented with "significant and sufficient evidence unprotected by the Speech or Debate Clause" a judge need not review grand jury minutes that led to an indictment for protected material. *See Murphy*, 642 F.2d at 700.

### c.   Protection From Disclosure

Neither the Supreme Court nor the Second Circuit has addressed whether or not the Speech or Debate Clause protects a legislator from having to disclose materials covered by the Clause.  Moreover, there is a split in the Circuits concerning whether or not the Speech or Debate

Clause affords protection from the disclosure of protected materials.  The Third and Ninth Circuits hold that the Speech or Debate Clause does not limit the Executive Branch's ability to compel disclosure of records that may include such materials.  *See In re Fattah*, 802 F.3d 516, 529 (3d Cir. 2015) (holding that although "the Speech or Debate Clause prohibits hostile questioning regarding legislative acts in the form of testimony to a jury, it does not prohibit disclosure of Speech or Debate Clause privileged documents to the Government.  Instead, as we have held before, it merely prohibits the evidentiary submission and use of those documents."); *United States v. Renzi*, 651 F.3d 1012, 1035-39 (9th Cir. 2011) (holding that the Speech or Debate Clause does not include the privilege from disclosure when disclosure is sought in the context of an investigation into otherwise unprotected activity).  The D.C. Circuit, on the other hand, has held that the Clause precludes the compelled disclosure of privileged documents.  *See United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 655 (D.C. Cir.2007) ("the testimonial privilege under the [Speech or Debate] Clause extends to non-disclosure of written legislative materials."); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 (D.C. Cir. 1995) ("A party is no more entitled to compel congressional testimony—or production of documents—than it is to sue congressmen.")  The D.C. Circuit in *Rayburn* noted that "a key purpose of the [Speech or Debate Clause] privilege is to prevent intrusions in the legislative process and that the legislative process is disrupted by the disclosure of legislative material, regardless of the use to which the disclosed materials are put . . . . The bar on compelled disclosure is absolute . . . ." *Rayburn*, 497 F.3d at 660 (citations omitted).

## 2. Application

Defendant Collins asserts that although he believes that the Speech or Debate Clause has been violated, his motion only seeks discovery "to assess the complete scope and severity of the government's abuses and the extent to which those infringements have tainted the evidence or indictment in this case." (Collins Speech/Debate Mem. 1.)[19] He further asserts that he needs the discovery to permit him "to fully protect his Legislative rights and to allow [me] to consider the entire context when fashioning an appropriate remedy, whether it be suppression of evidence, dismissal of some or all of the counts in the indictment, or otherwise." (*Id.* at 1–2.) To these ends, Defendant Collins brings this motion pursuant to the Speech or Debate Clause, seeking an "order directing the government to identify and produce three discrete categories of discovery directly bearing on the privilege established by the Speech or Debate Clause: (a) the complete contents of all email accounts, iCloud accounts, social media accounts, document collections, and electronic devices obtained by the government from current and former Congressional staffers; (b) all statements made to the government by any current and former Congressional staffer; and (c) all testimony and materials provided to the grand jury that reference or concern any investigation by the U.S. House of Representatives Office of Congressional Ethics ("OCE") or Committee on Ethics related to Congressman Collins." (*Id.* at 2.) In response, the Government argues that Defendant Collins's request for an order directing the production of materials he claims may include materials covered by the Speech or Debate Clause is not supported by the facts he identifies or the case law he cites. (Govt. Opp. 28.) The Government is correct.

---

[19] "Collins Speech/Debate Mem." refers to the Memorandum of Law in Support of Christopher Collins' Motion to Compel Limited Production of Materials Bearing on the Speech or Debate Clause of the Constitution, filed on February 8, 2018. (Doc. 63.)

Defendant Collins has failed to (1) demonstrate that he is legally entitled to the discovery he seeks, (2) that the Speech or Debate Clause was violated by the Government in obtaining the Indictment or Superseding Indictment, or (3) that the Government—with the exception of materials related to the OCE investigation—intends to use documents or elicit testimony that implicate the Speech or Debate Clause. With regard to the OCE investigation, I find that the mere facts that Defendant Collins was the subject of an investigation by the OCE related to Innate and that he was interviewed in connection with that investigation are not themselves protected by the Speech or Debate Clause.

### a.   Defendant Collins is not Entitled to Discovery

Defendant Collins primarily relies on the line of cases from the D.C. Circuit and a decision by Judge Gardephe to argue that the Speech or Debate Clause includes a non-disclosure privilege, and that the production of the requested discovery "is a necessary prerequisite for the Congressman to be put into a position in which he can effectively file substantive motions to suppress and to seek and obtain further relief sufficiently in advance of trial as required by this Court." (Collins Speech/Debate Mem. 22.) As an initial matter and as Judge Gardephe acknowledged, neither the Supreme Court nor the Second Circuit have found that the Speech or Debate Clause includes a non-disclosure privilege, *SEC v. Comm. on Ways & Means of U.S. House of Reps.*, 161 F. Supp. 3d 199, 238 (S.D.N.Y. 2015), and; therefore, the cases cited by Defendant Collins are not binding on me. (*See* Collins Speech/Debate Mem. 9–10.) In any event, the cases cited from the D.C. Circuit are inapposite because they either involved search warrants, subpoenas, and/or requests for documentary evidence (1) from the office of an elected official and/or a staff member or (2) from Congress, and/or (3) concerned the application of the non-disclosure privilege to 'legislative acts or the motivation for actual performance of

27

legislative acts.'" *Brewster*, 408 U.S. at 509.  (*Id.* at 8–11.)

Here, as discussed further below, "the allegations in this case have nothing whatsoever to do with the [Defendant Collins's] legislative acts." (*See* Govt. Opp. at 31.)  In connection with its investigation of Defendant Collins's alleged criminal conduct in his personal capacity, the Government obtained search warrants for the personal electronic devices and online accounts of, among others, certain current and former staff members of Defendant Collins.  Unlike the cases cited by Defendant Collins, the searches at issue did not involve the Congressional offices and/or official accounts of current and/or former staffers, (5/10/19 Tr. 4), and the materials sought related to Defendant Collins's alleged criminal conduct and not legislative acts or the motivation for such acts.[20]

Moreover, the facts in *Rayburn* were unique, and are not analogous to the facts presented in this case.  In *Rayburn*, the search conducted was of the congressional office of Congressman William J. Jefferson, "a location where legislative materials were inevitably to be found," *Rayburn*, 497 F.3d at 661, and involved the search of the Congressman's documents for "non-legislative evidence," *id.* at 656.  The D.C. Circuit, after finding that the protections afforded under the Speech or Debate Clause include a non-disclosure privilege, also found that the review procedures "outlined in the warrant affidavit would not have avoided the violation of the Speech or Debate Clause because they denied the Congressman any opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive

---

[20] Although one staffer "consented to the release of his privileged and nonresponsive data to Congressman Collins's attorneys for the limited purpose of reviewing the data for Speech or Debate Clause materials, the other has refused." (Govt. Opp. 36 n.9.)

In addition to the reasons stated above, my previous ruling that the Government does not have the right to search non-responsive materials gathered pursuant to the search warrants issued for the electronic devices and/or accounts of the Individuals, (*supra* Part III.A.2.b.), also applies to non-responsive materials gathered from the devices and accounts of current and former staffers of Defendant Collins.

agents." *Id.* at 662.  Here, in stark contrast, the searches did not involve congressional offices or

official accounts but were of the personal electronic devices and accounts of certain current

and/or former staff members of Defendant Collins.  Defendant Collins is essentially requesting

that I extend the non-disclosure privilege to the facts and circumstances presented here.  I decline

to do so.  In addition, I find that even if the protections provided by the Speech or Debate Clause

includes a non-disclosure privilege—an issue that neither the Supreme Court nor the Second

Circuit has addressed—the procedures undertaken by the Government to identify and segregate

any protected materials without involving the prosecution team were sufficient under the facts

and circumstances presented here.[21]

Extending the application of a non-disclosure privilege under the circumstances presented

here is not necessary to effectuate the purpose of the Speech or Debate Clause "of protecting the

independence of the Legislative Branch," *Brewster*, 408 U.S. at 516, and would unnecessarily

impede upon the executive branch's responsibility to investigate criminal activity, *see United*

*States v. Calandra*, 414 U.S. 338, 343 (1974) (noting that traditionally grand juries are accorded

"wide latitude to inquire into violations of criminal law."), thereby effectively making "Members

of Congress super-citizens, immune from criminal responsibility," *Brewster,* 408 U.S. at 516;

*see also id.* at 528 ("The Speech or Debate Clause does not prohibit inquiry into illegal conduct

simply because it has some nexus to legislative functions. . . . The only reasonable reading of the

Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities

---

[21] Even though the accounts and devices in question "were the personal property of their users (not the Congressman or the House of Representatives), when searching materials belonging to current or former congressional staffers, the Government took care to assign members of the U.S. Attorney's Office other than the prosecutors working on the investigation to conduct an initial review and filter out materials that could arguably concern legislative activity." (Govt. Opp. 32.)  Therefore, any materials that were arguably legislative materials potentially protected by the Speech or Debate Clause were not reviewed by or made available to the prosecution team.  (*See* 5/10 Tr. 77–78.)

that are casually or incidentally related to legislative affairs but not a part of the legislative process itself."); *Gravel*, 408 U.S. at 626 ("While the Speech or Debate Clause recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts."). Moreover, the remedy sought by Defendant Collins would permit him to rummage through the data from the personal electronic devices and accounts of his current and former staff members. As a matter of common sense, most of this data is undoubtedly personal in nature and entirely unrelated to the official work performed by the current and former staff members on behalf of Defendant Collins.[22] (*See* Govt. Opp. 27, 31.) Defendant Collins has not provided any evidence to rebut this notion. Indeed, Defendant Collins fails to identify—with the exception of material related to the OCE investigation and a document containing talking points with one heading stating "Questions About Legislation that Might Affect Innate," (5/10/10 Tr. 22–23, 35), discussed below—any materials produced by the Government in discovery that could be considered protected material under the Speech or Debate Clause. Moreover, as noted, the cases cited by Collins are inapposite since none of them resulted in a court permitting either (1) the review in advance by an elected official of electronic data gathered from the personal electronic devices and accounts of current and/or former legislative

---

[22] Despite the asserted importance of the Speech or Debate Clause by Defendant Collins in his briefing and during oral argument and its importance generally to the House of Representatives, as evidenced by its submission of an amicus brief related to the Speech or Debate Clause, "there is no formal guidance with regard to the use of personal email for the conduct of official business . . . [a]nd there are no mechanisms in place to even enforce it if there were guidance." (5/10/19 Tr. 4.) Decisions related to the use of personal email to conduct official business are left to "the particular member or to the particular committee." (*Id.* at 4–5.) Defendant Collins provides no guidance to his staff and has no requirements for his staff related to the use of personal emails to conduct official business. (*Id.* at 5.) Defendant Collins argues that these facts do not "particularly matter[] for purposes of the legal analysis [related to his motion]." (*Id.*) In light of my rulings related to the Speech or Debate Clause contained in this Opinion & Order I do not address this assertion. However, I note that there are reasons to have guidance with regard to the use of personal email accounts to conduct official business separate and apart from the impact such guidance may or may not have on Speech or Debate Clause assertions by a member of Congress, including securing sensitive information and personal information of constituents.

staffers pursuant to a search warrant or (2) the production of all electronic data gathered from the personal electronic devices and accounts of current and/or former legislative staffers pursuant to Rule 16 of the Federal Rules of Criminal Procedure or any other authority.[23]  Such a result would not only be legally improper, as noted above, but would also be impractical and unworkable.  If the remedy Defendant Collins seeks were the appropriate relief in each case where the Government issued a subpoena or obtained a search warrant for a current or former staffer's personal electronic device or accounts, the materials obtained or seized would be subject to review by the member of Congress regardless of the nature of the underlying investigation. Indeed, since there are no restrictions placed on Defendant Collins's use of his personal email account to conduct official business, (*see* 5/10/19 Tr. 4–5), under the theory espoused by Defendant Collins any time the Government obtained a search warrant or issued a subpoena directed to an individual with whom Defendant Collins may have communicated, he would be entitled to review those communications in advance of the Government.  The law in this Circuit does not support such a result, nor, based upon my reading, does the law in the D.C. Circuit, and, in any event, the cases in the D.C. Circuit addressing the non-disclosure privilege—as discussed above—involve unique factual circumstances not present here.

Defendant Collins is also not entitled to interview memoranda, notes of interviews, or grand jury minutes of his current and/or former staffers related to the Indictment.  First, he has not made a showing that the memoranda, notes, or grand jury minutes are likely to contain

---

[23] I note that it appears that the application of case law cited by Defendant Collins for the proposition that the Speech or Debate Clause includes a non-disclosure privilege would at most result in the return of any seized privileged materials. *See Rayburn*, 497 F.3d at 664, 666 ("The Speech or Debate Clause protects against the compelled disclosure of privileged documents to agents of the Executive, but not the disclosure of non-privileged materials. . . . Accordingly, we hold that the Congressman is entitled to the return of all legislative materials (originals and copies) that are protected by the Speech or Debate Clause seized from Rayburn House Office Building Room 2113 on May 20–21, 2006.").

protected material.  As an initial matter, the elements of the charges contained in the Superseding

Indictment do not require proof that Defendant Collins is a member of Congress[24] or require the

admission of documents or testimony covered by the Speech or Debate Clause.  (*See* 5/10/19 Tr.

28–32.)  Therefore, the charges in the Superseding Indictment would not require the Government

to have asked about material protected by the Speech or Debate Clause.  In addition, Defendant

Collins, despite having access to certain of his current and former staffers, (5/10/19 Tr. 44), has

not submitted affidavits from any staffers that they were asked about protected materials during

interviews or during grand jury testimony.  Second, "the Government took the prophylactic

measure of explicitly advising interviewees not to disclose information regarding the legislative

activities of the Congressman or his office."  Third, counsel for Defendant Collins advised

attorneys for at least two staffers in writing that as a Congressman he was asserting "all

Constitutional, evidentiary and testimonial privileges that emanate from the Speech or Debate

Clause of the U.S. Constitution," and requested that the staffers "take great care to assert to the

fullest extent provided for by law the Speech or Debate Clause privilege and to take no action

that could be a construed waiver of that privilege."  (7/22/18 Ltr. 1; 7/24/18 Ltr. 1.)[25]  Fourth,

with regard to materials that qualify as Jencks Act/§ 3500 material, Defendant Collins has not

provided a sufficient reason to circumvent the timing of disclosure called for by statute.  Fifth, I

have reviewed the notes and interview memoranda at issue and find that they do not contain

material protected by the Speech or Debate Clause.  Sixth, Defendant Collins concedes that the

---

[24] Defendant Collins concedes that use of the fact he was and is a member of Congress "is not precluded by the privilege by itself."  (5/10/19 Tr. 40.)

[25] "7/22/18 Ltr." refers to a letter from Jonathan R. Barr, Esq. to Timothy W. Hoover, Esq.  "7/24/18 Ltr." refers to a letter from Jonathan R. Barr, Esq. to James W. Grable, Jr., Esq.  These letters were transmitted as exhibits to a letter from counsel for Defendant Collins, dated May 3, 2019.  Counsel for Defendant Collins is directed to either file the May 3 letter and exhibits on the docket or submit a request to file redacted versions of the letter and exhibits consistent with my individual rules.

grand jury minutes and exhibits related to the Superseding Indictment do not contain anything protected by the Speech or Debate Clause. (8/26/19 Ltr. 3–4 ("Having reviewed the Grand Jury materials related to the Superseding Indictment that were produced by the Government on August 7, 2019, Congressman Collins does not contend that they contain anything protected by the Speech or Debate Clause.").)

> b. The Superseding Indictment Does not Violate the Speech or Debate Clause

The law is clear in this Circuit that an indictment "is not subject to dismissal on the ground that there was 'inadequate or incompetent' evidence before the grand jury." *Myers*, 635 F.2d at 941. Here, Defendant Collins concedes that the grand jury minutes and exhibits related to the Superseding Indictment do not contain anything protected by the Speech or Debate Clause. (8/26/19 Ltr. 3–4.) Therefore, Defendant Collins has no legal basis to challenge the Superseding Indictment or the grand jury process that led to its filing on the basis that the Speech or Debate Clause has been violated.

Defendant Collins claims that "the Government's Superseding Indictment maneuver is telling and troubling because it is a tacit admission that a violation occurred and it is a thin, eleventh-hour attempt to sidestep the consequences of that violation by suggesting that they did nothing wrong." (*Id.* at 5.) There is nothing "troubling" or nefarious about Government's decision to seek a Superseding Indictment. The desire to avoid pretrial litigation was a legitimate reason to seek to obtain the Superseding Indictment, particularly where such pretrial litigation might have included an interlocutory appeal to the Second Circuit, and thereby potentially a delay in the trial. In any event, I have reviewed the grand jury minutes and exhibits related to the return of the Indictment and find that the grand jury that returned the Indictment was presented with "significant and sufficient evidence unprotected by the Speech or Debate

Clause." *Murphy*, 642 F.2d at 700.  Contrary to Defendant Collins's assertion, no violation of the Speech or Debate Clause occurred related to the grand jury process that led to the return of the Indictment.  Therefore, under the law in this Circuit the Indictment would not have been subject to dismissal.

c.   Evidence to be Offered at Trial

Rule 16 of the Federal Rules of Criminal Procedure provides, in part, that the Government must permit a defendant to "inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" in its "possession, custody, or control" if:  (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(i-iii).  Therefore, to the extent that the Government intends to offer any materials protected by the Speech or Debate Clause, it is required to produce those materials to Defendant Collins.  The only documents Defendant Collins has identified in the Rule 16 discovery produced by the Government that he claims might be protected by the Speech or Debate Clause are (1) documents used and/or generated by the OCE in connection with its investigation of Defendant Collins, and (2) talking points produced by a current or former staff member that included the heading "Questions About Legislation that Might Affect Innate."  (5/10/10 Tr. 22–23, 35.) These documents raise the following questions:  (1) is the mere fact that Defendant Collins was under investigation by the OCE protected by the Speech or Debate Clause; (2) is the fact that Defendant Collins was interviewed in connection with the investigation by the OCE protected by the Speech or Debate Clause; (3) is the transcript of the interview of Defendant Collins by the OCE protected by the Speech or Debate Clause; (4) are the transcripts and documents from the

34

OCE investigation of Defendant Collins protected by the Speech or Debate Clause; and (5) were any current or former staff members asked by the Government about whether any legislation that might affect Innate.

I find that the fact that Defendant Collins was the subject of an OCE investigation is not protected by the Speech or Debate Clause. The existence of the OCE investigation is not itself a legislative act, and the fact of the investigation is not "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. Similarly, I find that the fact that Defendant Collins was interviewed in connection with the investigation by the OCE also is not protected by the Speech or Debate Clause. *Id.* However, whether the transcript of the interview of Defendant Collins by the OCE, and the documents used in and transcripts generated during the OCE investigation of Defendant Collins are protected by the Speech or Debate Clause is a much closer question.[26] Assuming that materials generated by an OCE investigation are protected by the Speech or Debate Clause, the case law appears to suggest that I should conduct a review of the transcripts and documents at issue in order to make a determination if the underlying investigation related to a legislative act protected by the Clause. *See United States v. Rose*, 28 F.3d 181, 188 (D.C. Cir. 1994); *Ray v. Proxmire*, 581 F.2d 998, 1000 (D.C. Cir.1978). It does not appear as if either party provided me with copies of these materials and I have not undertaken such a review; therefore, I decline to make a ruling that these documents are or are not protected by the Speech or Debate Clause.

---

[26] Even if the OCE materials might be protected by the Speech or Debate Clause, that protection would not be based upon a non-disclosure privilege to the extent that the disclosure of these documents was not compelled. It is my understanding that these documents were and are available on a website accessible to the public.

However, I exercise my inherent authority related to managing my docket and the trial schedule in this case, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016), to preclude the Government from introducing (1) Defendant Collins's OCE interview, (2) transcripts generated during the OCE investigation; and (3) documents used during the OCE investigation.[27] Finally, with regard to whether any current or former staff members were asked by the Government about whether any legislation might affect Innate, it does not appear from my review of the interview notes and memoranda generated from the interviews of current and former staff members that such questions were asked. In any event, I preclude the Government from questioning witnesses about the "effect" of legislation—to the extent any such legislation was being considered—on Innate.

To the extent that the Government intends to offer the statement issued by one of Defendant Collins's staff to a reporter that "Neither Christopher Collins, [nor] his daughter . . . have sold shares prior, during or after Innate's recent stock halt," and that "Cameron Collins has liquidated all his shares after the stock halt was lifted, suffering a substantial financial loss," (Ind. ¶ 42), I find that the statement is not protected by the Speech or Debate Clause.[28] I also find that the statement by Defendant Collins about the press coverage that "We want this to go away," (*id.*), is similarly not protected by the Speech or Debate Clause. Although these statements were made by Defendant Collins and a member of his staff, they were not made in the House or Senate, and do not relate to a legislative act by Defendant Collins or more generally of the House or Senate. Instead, the statements were made to a member of the press and relate to actions taken

---

[27] I make this ruling in an effort to avoid issuing a decision that might trigger a right to an interlocutory appeal, *see Myers*, 635 F.2d at 935 (citing *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979)), which might impact the start of the trial on February 3, 2020.

[28] As noted above, references to this statement do not appear in the Superseding Indictment.

by Defendant Collins and his family members in their personal capacities. Therefore, they are not protected by the Speech or Debate Clause. In making this ruling I am not ruling that the statements are admissible, and leave any ruling on this issue until such time as an *in limine* ruling related to the admissibility of the statements is sought.

### IV.    Conclusion

Because I find that (1) the Government has complied with its Brady obligation as it relates to the carved out SEC materials, and (2) the Government and the SEC were not engaged in a joint investigation, I find that the Government has no *Brady* obligation as to any documents in the SEC's possession. With regard to materials from Individuals, I find that (1) the Government met its *Brady* obligation with regard to Brady/Rule 16 Material when it searched Individual-5's iCloud data for responsive documents, and (2) Defendants have provided an insufficient justification for their argument that the Government is obligated to search Individual-5's iCloud data over Individual-5's objection. Finally, I find that the Government met its *Brady* obligation with regard to exculpatory statements made by two former staff members of Defendant Christopher Collins, and is not obligated to turn over the interview notes or FBI 302s related to those statements. Accordingly, Defendants' motion for the production of *Brady* and Rule 16 Material is DENIED.

In addition, I find that Defendant Christopher Collins is not legally entitled to the discovery he asserts bears on the privilege established by the Speech or Debate Clause, and so his motion to compel limited production of those materials is DENIED. However, within my inherent authority as a district judge, I preclude the Government from introducing at trial (1) Defendant Collins's OCE interview, (2) transcripts generated during the OCE investigation; (3) documents used during the OCE investigation; and (4) testimony concerning the "effect" of

37

legislation—to the extent any such legislation was being considered—on Innate.

SO ORDERED.

Dated: September 6, 2019
New York, New York

_____
Vernon S. Broderick
United States District Judge