```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
            -v-                                            :
                                                           :    S1 18-CR-567 (VSB)
CHRISTOPHER COLLINS, et al.,                               :
                                                           :         **ORDER**
                        Defendants.                        :
                                                           :
-----------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/15/2020
```

<u>VERNON S. BRODERICK, United States District Judge</u>:

As the parties are aware, sentencing of Defendant Christopher Collins ("Collins" or "Defendant Collins") is scheduled in this matter for Friday, January 17, 2020, at 2:30 p.m. I have completed my initial review of the Presentence Report ("PSR"), the defense sentencing submission, and the Government's sentencing submission. Based upon that review, it is hereby:

ORDERED that the parties shall provide the following requested documents prior to sentencing and shall be prepared to discuss/answer the following topics and questions either at sentencing or prior to sentencing:

1. Please provide copies of the reports documenting the statements made to law enforcement by Christopher Collins, Cameron Collins, Lauren Zarsky, and Stephen Zarsky. In addition, to the extent there are reports documenting statements made to law enforcement by Mary Collins and Dorothy Zarsky, please provide copies.

2. In paragraph 19 of the PSR, it states that Cameron Collins owned approximately 2.3% of the shares in Innate.

    a. How much did these shares cost at the time purchased?

1

b. Where did the money come from that was used to purchase the approximately 2.3% of the shares of Innate?

3. Other than Christopher Collins's guilty plea allocution, what is the basis for the assertion in paragraph 27 of the PSR that "During the call, CHRISTOPHER COLLINS told CAMERON COLLINS that MIS416 had failed and they agreed that, if possible, CAMERON COLLINS would sell his shares in Innate."?

4. What is the basis for the assertions in paragraph 28 of the PSR that Cameron Collins and Lauren Zarsky informed "Dorothy and STEPHEN ZARSKY that MIS416 had failed" and they "agreed that they would sell their shares in Innate, but CAMERON would avoid selling all of his shares at once, so as not to depress the price of the stock before Dorothy, Lauren, and STEPHEN ZARSKY sold their shares."?

5. How were the avoided losses contained in the chart in paragraph 35 of the PSR calculated?

6. What did each of the Defendants originally pay for the shares of Innate in their possession on or before June 22, 2017? If another individual purchased the shares for a Defendant, how much did that individual pay?

7. If possible, please provide the closing prices of Innate stock for each day between June 22, 2017 and June 26, 2017, prior to the issuance of the Innate press release.

8. What was the total value of each Defendant's shares at the time they sold their shares on or after June 22, 2017?

9. Besides the calls to Cameron Collins listed in paragraph 22 of the Superseding Indictment, what calls did Christopher Collins make and receive on June 22, 2017

after Christopher Collins received the email from Innate's Chief Executive Officer ("CEO") at 6:55 p.m.? What were the times and durations of these calls?

10. What time did Innate issue its press release on June 22, 2017?

11. Paragraphs 30 and 31 of the PSR refer to sales of Innate stock made on June 23, 2017, and telephone calls between Christopher Collins and Cameron Collins on that same day.

    a. What time were the sales of Innate stock made?

    b. What time were the calls between Christopher Collins and Cameron Collins on June 23, 2017?

    c. What was the duration of the calls between Christopher Collins and Cameron Collins on June 23, 2017?

12. Besides timing and inferences, what is the basis for the statement in paragraph 38 of the PSR that "Between the time that CHRISTOPHER COLLINS first shared the drug test results with CAMERON COLLINS and the dates that CHRISTOPHER COLLINS and CAMERON COLLINS were interviewed by the FBI, they agreed that they would use the fact of the trading suspension as cover if law enforcement ever questioned the timing of Cameron Collins's stock sales."?

13. What is the basis for the statement in paragraph 41 of the PSR that "CAMERON COLLINS and STEPHEN ZARSKY had specifically discussed the fact that they would present the planned purchase of the condominium as an explanation for why CAMERON COLLINS could not afford to take a risk on Innate."?

14. Did the Government do an analysis for the frequency of calls between/among Christopher Collins, Cameron Collins, Stephen Zarsky and Dorothy Zarsky prior

to June 22, 2017 and between June 22, 2017 and August 25, 2018? If so, please produce that analysis.

15. Did the Government do an analysis for the frequency of calls between/among Christopher Collins, Cameron Collins, Stephen Zarsky and Dorothy Zarsky on August 25, 2018, and the days or weeks after August 25? If so, please produce that analysis.

16. Please provide copies of the settlements with the Securities and Exchange Commission referenced in paragraph 47 of the PSR.

17. Prior to June 22, 2017, is there any evidence that Christopher Collins had agreed to share nonpublic information with his co-defendants, Dorothy Zarsky, and/or Lauren Zarsky?

18. Did Christopher Collins leave the picnic early on June 22, 2017?

19. Soon after being indicted did Christopher Collins issue or cause his staff to issue a false or misleading statement and/or press release concerning the purchase and sale of Innate shares?

20. Soon after being indicted Christopher Collins suspended his reelection campaign. In September 2018 Collins reversed that decision and decided to seek another term in the House of Representatives.

    a. Does Collins's suspension of his campaign and reversal of that decision have any relevance to sentencing?

    b. In connection with his campaign for reelection did Collins make any statements professing his innocence in advertisements, press conferences or elsewhere?

21. Paragraph 85 refers to a home on Marco Island, Florida.

    a. How was this property purchased?

    b. Was there a down payment made on the property? If so, where did that money come from?

    c. Is there a mortgage on the property? If so, in whose name is the mortgage? Who makes payments on the mortgage?

22. On pages 36 and 37 of the defense submission there are references to a letter submitted by the former Innate CEO. In his letter, the former CEO states, among other things, that Christopher Collins wrote to him soon after his guilty plea.

    a. Please provide a copy of Collins's correspondence referenced in the former Innate CEO's letter.

    b. Please provide copies of any correspondence about this case from Collins to individuals who have submitted letters in connection with sentencing. (*See* Doc. 156.)

    c. Please provide information concerning public requests by Collins or others acting on his behalf soliciting letters from former constituents or others.

23. Between June 23 and June 26, 2017, when Innate issued its press release, was there any legal impediment to Cameron Collins purchasing Innate stock?

24. What is the legal or factual authority for the statement made on pages 43 to 44 of the defense submission that "The mere fact of a career-ending felony conviction generally deters bad conduct among first-time offenders, who largely comprise the class of insider-trading defendants. This is particularly true in the case of a convicted Congressman whose offense did not concern the misuse of his office."?

25. On page 2 in the second full paragraph of the Government's sentencing submission it states that Innate's CEO sent an email to "select insiders." What does "select insiders" mean?

26. How can the argument that Defendant Collins committed an emotional and impulsive act on June 22, 2017 be reconciled with his lying to law enforcement approximately ten months later?

SO ORDERED.

Dated:   January 15, 2020
           New York, New York

*Vernon S. Broderick*
Vernon S. Broderick
United States District Judge