# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

January 16, 2020

Jonathan B. New
direct dial: 212.589.4650
jnew@bakerlaw.com

**VIA ECF**

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:    United States v. Christopher Collins, et al*., No. 18-cr-567 (VSB) (S.D.N.Y.)*

Dear Judge Broderick:

We are counsel for Defendant Christopher Collins in this matter and write regarding the Court's January 15, 2020 Order, ECF No. 157, in particular items 10, 22, and 24 of the Order, wherein the Court requested the following:

10)    What time did Innate issue its press release on June 22, 2017?[1]

*Please see Exhibit A.*

22)    On pages 36 and 37 of the defense submission, there are references to a letter submitted by former Innate CEO. In his letter, the former CEO states, among other things, that Christopher Collins wrote to him soon after his guilty plea.

   a)  Please provide a copy of Collins's correspondence referenced in the former Innate CEO's letter.
   b)  Please provide copies of any correspondence about this case from Collins to individuals who have submitted letters in connection with sentencing. (*See* Doc. 156.)

---

[1] Please note the press release was issued at 12:53pm on June 23, 2017 in Australia, which equates to 10:53pm Eastern Standard Time on June 22, 2017.

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver    Houston*
*Los Angeles    New York    Orlando    Philadelphia    San Francisco    Seattle    Washington, DC*

    c) Please provide information concerning public requests by Collins or others acting on his behalf soliciting letters from former constituents or others.

    *Please see Exhibit B.*

24) What is the legal or factual authority for the statement made on pages 43 to 44 of the defense submission that "The mere fact of a career-ending felony conviction generally deters bad conduct among first-time offenders, who largely comprise the class of insider-trading defendants. This is particularly true in the case of a convicted Congressman whose offense did not concern the misuse of his office."

  As Ellen S. Podgor observes, "[t]he corporate white collar offenders of today are typically individuals who have never been convicted of criminal conduct and are now facing incredibly long sentences as first offenders." *The Challenge of White Collar Sentencing*, 97 J. CRIM. L. & CRIMINOLOGY 731, 732–33 (2007). This is consistent with the Sentencing Commission's observation that in fiscal year 2017, 85.6% of Economic Crime Offenders in the Securities and Investments subcategory were criminal history Category I.[2] *See* USSC, "What Does Federal Economic Crime Really Look Like" (2019) *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190130_Econ-Crime.pdf.

  The conviction alone, and the related shame and stigma, is often substantial punishment that serves a deterrent effect. *See, e.g., Gupta*, Sentencing Tr. at 54:3-6, wherein Judge Rakoff observed "[a]s to specific deterrence, it seems obvious that, having suffered such a blow to his reputation, Mr. Gupta is unlikely to repeat his transgressions, and no further punishment is needed to achieve this result." *Accord United States v. Yeaman*, 248 F.3d 223, 238 (3d Cir. 2001) (Nygaard, J., dissenting in part) ("it is widely recognized that the *duration* of incarceration provides little or no general deterrence for white collar crimes.").

  *Yeaman* cites for this proposition A. Mitchell Polinsky & Steven Shavell, *On the Disutility and Discounting of Imprisonment and the Theory of Deterrence,* 28 J. LEGAL STUD. 1, 12 (Jan.1999), wherein the authors conclude that for individuals committing white collar crimes, the probability of being apprehended and incarcerated is a powerful deterrent in of itself, because the "disutility of being in prison at all may be substantial and the stigma and loss of earning power may depend relatively little on the *length* of imprisonment." (emphasis added). Peter J. Henning reaches a similar conclusion, in considering the case of Ty Warner, the billionaire owner of Ty, Inc.:

    [C]onsider the case of another defendant, Ty Warner, the billionaire owner of Ty, Inc.-the company that makes "Beanie Babies" . . . In 2013, Warner pleaded guilty

---

[2] Technically, these offenders could have a single history point or ancient convictions, but there is nothing to indicate any frequency of this.

Honorable Vernon S. Broderick
January 16, 2020
Page 3

>to hiding a Swiss bank account for a number of years that, at its peak, held about $100 million, evading about $5.5 million in taxes on its earnings. He paid the back taxes, plus a penalty, in a civil settlement with the Internal Revenue Service. Rejecting the government's recommendation that the court impose a prison sentence of at least some modest length for the tax violation, Judge Charles Kocoras instead opted for only probation. During the sentencing hearing, the judge said that he was persuaded by a number of letters submitted on the defendant's behalf in finding that "Mr. Warner's private acts of kindness, generosity and benevolence are overwhelming. Never have I had a defendant in any case-white-collar crime or otherwise-demonstrate the level of humanity and concern for the welfare of others as has Mr. Warner." *Judge Kocoras discounted the deterrent effect a prison sentence might have on others, noting that Warner's case was "highly-publicized" and "the public humiliation and reproachment Mr. Warner has experienced is manifest. Only he knows the private torment he has suffered by the public condemnation directed at him."* In imposing a two-year term of probation and 500 hours of community service, along with a $100,000 fine, Judge Kocoras said, "*One of the considerations for me is whether society would be better off with Mr. Warner in jail or whether it would be best served by utilizing his talents and beneficience [sic] to help make this a better world.*"

Peter J. Henning in *Is Deterrence Relevant in Sentencing White-Collar Criminals?* 61 WAYNE L. REV. 27, 29–30 (2015) (emphasis added). *See also* Dan M. Kahan & Eric Posner, *Shaming White-Collar Criminals: A Proposal for Reform of the Federal Sentencing Guidelines* J. OF LAW & ECON Vol. 42 No. S1 (Apr. 1999) p. 365–392

We will, of course, be prepared to discuss these matters in detail at the sentencing tomorrow, Friday, January 17. In advance of the hearing we respectfully submit the enclosed documentary materials related to the above-categories. We hope the enclosures are helpful in the Court's consideration of the issues.

Respectfully submitted,

*/s/  Jonathan B. New*
Jonathan B. New
Jonathan R. Barr
Kendall E. Wangsgard
BakerHostetler LLP
212.589.4650

*Counsel for Christopher Collins*
Enclosures
cc: All Parties (*via* ECF)