UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
            :
UNITED STATES OF AMERICA,        :
            :
     -v-           :
            :    S1 18-CR-567 (VSB)
CAMERON COLLINS, et al.,        :
            :    **ORDER**
         Defendants.   :
            :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/2020

<u>VERNON S. BRODERICK</u>, United States District Judge:

      As the parties are aware, sentencing of Defendant Cameron Collins ("Collins" or "Defendant Collins") is scheduled in this matter for Thursday, January 23, 2020, at 3:30 p.m.  I have completed my initial review of the Presentence Report ("PSR"), the defense sentencing submission, and the Government's sentencing submission.  Based upon that review, it is hereby:

      ORDERED that the parties shall be prepared to discuss/answer the following topics and questions either at sentencing or prior to sentencing:

1. In paragraph 19 of the PSR, it states that Cameron Collins owned approximately 2.3% of the shares in Innate.
   a. Whose money was used to purchase these shares?
   b. How much in the aggregate did these shares cost at the time they were purchased?
   c. Were any of those shares owned by Caitlin Collins?
      i. If so, how many shares were owned by Caitlin Collins?
      ii. Whose money was used to purchase those shares?

1

   d. When was the first purchase of Innate shares by Cameron Collins and/or by someone on his behalf?

   e. Did Christopher Collins purchase some of the shares for Cameron Collins and/or Caitlin Collins using his money? If so, how many shares were purchased by Christopher Collins?

2. Can either party identify any insider trading case where an individual who was 24 years old at the time of the offense was sentenced within the Guidelines range for insider trading? If so, please provide the citation and be prepared to discuss how the case(s) are analogous or not analogous to the instant case.

3. Can either party identify any insider trading case where an individual who was 24 years old at the time of the offense was handled by the Securities and Exchange Commission rather than criminally by a United States Attorney's Office? If so, please provide the citation and be prepared to discuss how the case(s) are analogous or not analogous to the instant case.

4. Paragraphs 54 and 55 of the PSR quote a portion of Christopher Collins's guilty plea, in which he described his conversation with Cameron Collins on June 22, 2017, after Christopher Collins learned MIS416 had failed its drug trial. Other than Christopher Collins's guilty plea allocution, can either party provide additional details concerning what was discussed during the 6-minute call on June 22 between Christopher Collins and Cameron Collins? If so, please provide those details or be prepared to discuss them at sentencing or to indicate why such information will not and/or cannot be provided. For example,

   a. Were any alternatives to Cameron Collins selling his shares discussed?

   b. Did Cameron and Christopher Collins discuss the possibility of Christopher Collins using his own funds to ensure that Cameron Collins did not suffer losses in light of the failed drug trial?

   c. Were the shares owned by one or more of the Zarskys discussed? If so, was there discussion of the possibility that either Christopher Collins or Cameron Collins would use their own funds to ensure that the Zarskys did not suffer losses in light of the failed drug trial?

   d. Was there any discussion of what, if anything, would be said to Mary Sue Collins?

   e. Was there any discussion of what, if anything, would be said to Caitlin Collins?

5. A letter submitted to me in connection with the sentencing of Christopher Collins and Cameron Collins, (*see* Doc. 164), appears to suggest that Mary Sue Collins was not told about the failed drug trial during her call with her husband at 7:23 p.m. on June 22, 2017. Does either party have information concerning what was discussed during the five-minute call between Christopher Collins and Mary Sue Collins at 7:23 p.m. on June 22, 2017?

6. On page 32 of the defense submission it states that Cameron Collins "did not participate in a long-running scheme or act for reputational prowess, but out of fear and concern for his family and loved ones. The trading activity was extremely limited in scope." Was not the limited nature of the trading activity due to the nature of the material non-public information he received, rather than anything over which he had control? Stated differently, was not Cameron

   Collins's ability to avoid losses based on the non-public information he received from Christopher Collins limited by the fact the non-public information was soon going to become public when Innate issued its press release?

7. On pages 2 and 3, the Government's sentencing memorandum discusses various calls, also listed in Document 163-1, between Christopher Collins and Cameron Collins from the morning of June 23 through June 26.

    a. Does either party have evidence concerning what was discussed during these calls?

    b. If so, please provide those details or be prepared to discuss them at sentencing or to indicate why such information will not and/or cannot be provided.

8. How can the argument that Cameron Collins acted emotionally and/or—as stated on page 44 of the defense submission—that he "acted impulsively following an emotional call with his father and over a few days, made a terrible mistake" be reconciled with his lying to law enforcement approximately ten months later?

SO ORDERED.

Dated:   January 22, 2020
         New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge