# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

April 1, 2020

Jonathan B. New
direct dial: 212.589.4650
jnew@bakerlaw.com

**VIA ECF**

APPLICATION GRANTED
SO ORDERED
VERNON S. BRODERICK
U.S.D.J. 4/1/2020

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   United States v. Christopher Collins, et al*., No. 18-cr-567 (VSB) (S.D.N.Y.)*

Dear Judge Broderick:

      We are counsel for Defendant Christopher Collins in this matter and write regarding the date on which Mr. Collins must surrender at the institution designated by the Bureau of Prisons ("BOP") for service of his sentence (the "Report Date"). Specifically, we respectfully request that Mr. Collins' Report Date be extended and re-set to **2:00 pm on June 23, 2020**, for the reasons set forth below. We have conferred with counsel for the Government, which does not object to the relief requested herein.

      By way of background, on January 17, 2020, Mr. Collins appeared before Your Honor for sentencing pursuant to his plea of guilty to one count of conspiracy to commit securities fraud and one count of making a false statement. At sentencing Your Honor, in relevant part, sentenced Mr. Collins to concurrent sentences of 26 months imprisonment, recommended that Mr. Collins be designated to FPC Pensacola in Florida and set a Report Date of March 17, 2020. On January 31, 2020, a Judgment in a Criminal Case issued as to Mr. Collins, ECF No. 171, formalizing this sentence and recommending that BOP designate FPC Pensacola if possible. On February 28, 2020, Mr. Collins moved the Court, with the Government's consent, to continue the Report Date to April 21, 2020, because Mr. Collins had not yet been processed into the BOP system, had not been designated to a facility and there was a concern that the designation would not be able to occur prior to March 17. The Court granted the motion to continue the Report Date to April 21, 2020.

Honorable Vernon S. Broderick
April 1, 2020
Page 2

      Since the filing of the last motion to continue Mr. Collins' Report Date, the impact of the new strain of coronavirus which causes COVID-19 greatly worsened, prompting the World Health Organization, on March 11, 2020, to officially classify COVID-19 as a pandemic.[1] As of this morning, Johns Hopkins University reports more than 877,000 confirmed cases of COVID-19 worldwide and more than 43,000 deaths.[2] It reports that the United States currently has the largest number of confirmed COVID-19 cases at 189,633, and reports more than 4,000 deaths in the United States from the disease. New York Governor Cuomo declared a State of Emergency on March 7, 2020, and on March 20, 2020, ordered all nonessential businesses to close and residents to stay home.[3] On March 13, 2020, President Trump declared a National Emergency.[4] More than half of states have now imposed lockdown measures restricting gatherings and social contact.[5] Florida Governor DeSantis declared a State of Emergency in Florida, the state where Mr. Collins resides, on March 9, 2020.[6] Dr. Deborah Birx, the White House coordinator for the virus response team, has warned of the expected dire consequences of the pandemic stating that even if all social distancing guidelines are followed "perfectly," the nationwide death toll could reach 100,000 to 200,000.[7]

      The Centers for Disease Control and Prevention ("CDC") has issued guidance identifying individuals at higher risk of contracting and suffering severe illness from COVID-19 as those who are 65 and older or those who suffer from a variety of chronic health conditions including chronic lung disease or moderate to severe asthma and serious heart conditions.[8] Moreover, it has been widely reported that patients with hypertension appear to be at a higher risk of dying from the coronavirus.[9] As detailed in the Revised Pre-Sentence Report dated December 23, 2019

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (Mar. 11, 2020) *available at* https://bit.ly/2W8dwpS.

[2] *Coronavirus COVID-19 Global Cases by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU) available at* https://coronavirus.jhu.edu/map.html.

[3] *At Novel Coronavirus Briefing, Governor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State (Mar. 7, 2020) *available at* https://on.ny.gov/2TKzIoz; *Gov. Cuomo Orders All Workforce in State to Stay Home,* The Wall Street Journal (Mar. 20, 2020) *available at* https://www.wsj.com/articles/new-york-gov-cuomo-orders-all-nonessential-workers-in-state-to-stay-home-11584718223.

[4] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020) *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] *A Guide to State Coronavirus Lockdowns,* The Wall Street Journal (Updated Mar. 28, 2020) *available at* https://www.wsj.com/articles/a-state-by-state-guide-to-coronavirus-lockdowns-11584749351.

[6] State of Florida, Office of the Governor, Executive Order 20-52 (Mar. 9, 2020) *available at* https://www.flgov.com/wp-content/uploads/2020/03/EO-20-52.pdf.

[7] *Coronavirus Live Updates: U.S. Deaths Set to Surpass China's, but China's Figures Remain in Doubt,* The New York Times, https://www.nytimes.com/2020/03/31/world/coronavirus-news.html.

[8] "People who are at higher risk for severe illness," CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html

[9] *Top Coronavirus Doctor in Wuhan Says High Blood Pressure Is Major Death Risk*, Bloomberg News (Mar. 9, 2020) *available at* https://www.bloomberg.com/news/articles/2020-03-09/top-virus-doctor-says-high-blood-pressure-is-major-death-risk.

Honorable Vernon S. Broderick
April 1, 2020
Page 3

("PSR"), Mr. Collins is older than 65 and has additional risk factors, which place him at a high risk of contracting and suffering severe illness from COVID-19 if exposed to the virus. *See* PSR ¶ 99. It would be particularly dangerous for an elderly person with underlying health conditions like Mr. Collins to report for incarceration right now in the middle of the COVID-19 pandemic that is ravaging the United States.

As Judge Furman recognized in a decision issued yesterday, "[t]hose detained in jails and prisons face particularly grave danger."[10] It is wel-understood that conditions of confinement in prisons create the ideal environment for the transmission of contagious disease.[11] Inmates cycle in and out of BOP facilities from all over the country, and people who work in the facilities leave and return daily, without adequate screening. Incarcerated people have poorer health than the general population, and, even at the best of times, medical care is limited in federal prisons.[12] Many people who are incarcerated also have chronic conditions, like diabetes, hypertension, respiratory diseases, or HIV, which make them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe [ ] infection control is challenging in these settings."[13] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[14]

Indeed, as recently reported in the New York Times, "[t]he coronavirus is spreading quickly in America's jails and prisons, where social distancing is impossible and sanitizer is widely banned, prompting authorities across the country to release thousands of inmates in recent weeks to try to slow the infection, save lives and preserve medical resources."[15] Hundreds of COVID-19 diagnoses have been confirmed at local, state and federal correctional facilities — almost certainly an undercount, given a lack of testing and the virus's rapid spread — leading to hunger strikes in immigrant detention centers and demands for more protection from prison employee unions.[16] For these reasons, Judge Furman acknowledged that "[r]ealistically the best

---

[10] *United States v. Nkanga Nkanga*, 18-CR-713 (S.D.N.Y.), ECF No. 87, at 1 (Mar. 31, 2020).

[11] Joseph A. Bick, "Infection Control in Jails and Prisons" *Clinical Infectious Diseases* Vol. 45, No. 8 at 1047-55 (Oct. 15, 2007) *available at* https://doi.org/10.1086/521910.

[12] Laura M. Maruschak, *et al*., "Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12," U.S. Department of Justice, Bureau of Justice Statistics NCJ 248491 (rev. Oct. 4, 2016) *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[13] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (Mar. 2, 2020) *available at* https://bit.ly/2W9V6oS.

[14] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *available at* https://bit.ly/2TNcNZY.

[15] "'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars," The New York Times (Mar. 30, 2020) *available at*  https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

[16] *Id.*

Honorable Vernon S. Broderick
April 1, 2020
Page 4

— perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible."[17]

In light of these grave and growing concerns, Attorney General Barr has issued new recommendations that BOP explore releasing certain at-risk prisoners to home confinement in order to reduce the overall prison population."[18] The March 26, 2020 Memorandum of Attorney General Barr to the Director of the Bureau of Prisons concerning the "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic" (the "Barr Memorandum") notes that "one of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances."[19] The Barr Memorandum directs BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[20]

Notably, following the death of the first prisoner in BOP custody, Chairman Nadler of the House of Representatives Committee on the Judiciary and Chairwoman Bass of the House of Representatives Subcommittee on Crime, Terrorism, and Homeland Security sent a letter to Attorney General Barr on March 30, 2020 urging him and the BOP to utilize existing statutory authority, including the CARES Act, to modify the sentences of elderly prisoners to release them from prison to serve out the remainder of their sentences in home confinement without regard to how much of their sentences had been served.[21] This letter followed an earlier letter from Chairman Nadler and Chairwoman Bass to Attorney General Barr that pressed "the Department of Justice to limit the number of inmates being brought into the system," and urged BOP to use existing statutory authority to move "courts to release inmates who are vulnerable to COVID-19 (for instance, persons who are pregnant, who are 50 years old and older, and who suffer from chronic illnesses like asthma, cancer, heart disease, lung disease, diabetes, HIV or other diseases that make them vulnerable to COVID-19 infection)."[22]

In the present case, counsel for Mr. Collins contacted the Government to determine whether it would consent to a three month continuance of the Report Date after counsel learned that, in another case in the District of Connecticut, BOP had asked the Government to seek such

---

[17] *United States v. Nkanga Nkanga*, 18-CR-713, ECF No. 87, at 1.
[18] "AG William Barr pushes expansion of home confinement to reduce prison populations amid coronavirus," ABC News (Mar. 26, 2020) *available at* https://abcnews.go.com/Politics/ag-william-barr-pushes-expansion-home-confinement-reduce/story?id=69816504.
[19] Office of the Attorney General, Memorandum for Director of Bureau of Prisons, "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic" at 1 (Mar. 26, 2020) *available at* https://www.justice.gov/file/1262731/download.
[20] *Id.*
[21] Letter from Chairman Nadler and Chairwoman Bass to Attorney General Barr (Mar. 30, 2020) *available at* https://judiciary.house.gov/uploadedfiles/3.30.20_letter_to_ag_barr_re_covid19.pdf.
[22] Letter from Chairman Nadler and Chairwoman Bass to Attorney General Barr (Mar. 19, 2020) *available at* https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf.

Honorable Vernon S. Broderick
April 1, 2020
Page 5

a continuance for a defendant who was scheduled to report to FPC Pensacola on April 28, 2020 (attached as Exhibit A).[23] In that case, BOP requested the three month continuance because:

> Depending on an inmate's specific risk factors, the BOP may require the individual be quarantined for 14 days before admitting him or her to the designated facility's general population.
>
> Because some BOP minimum security camps do not have restrictive housing that would be necessary for a quarantine, local municipal or county jails are the only available option for housing an inmate who voluntarily surrenders with possible COVID-19 exposure. Unfortunately, many local jails are refusing to admit such inmates at this time.

*Id.* As the Court is aware, Mr. Collins had requested designation to FPC Pensacola, and the Court had recommended designation to FPC Pensacola. Moreover, effective today, in every BOP institution inmates are to be secured in their assigned cells/quarters for at least fourteen days, and BOP "is coordinating with the United States Marshals Service (USMS) to significantly decrease incoming movement at this time."[24]

At the time counsel contacted the Government, Mr. Collins still had not been entered into the BOP computer system, and, as far as counsel could determine, had not yet been designated to a facility. Counsel advised the Government of the BOP letter in the case in Connecticut, which prompted the U.S. Attorney's Office to contact BOP directly. Thereafter, the Government informed counsel that BOP had, in fact, designated Mr. Collins to the camp attached to FCI Estill in South Carolina, even though Mr. Collins has yet to be notified of this designation. Nevertheless, the Government consented to a two-month continuance of the Report Date with the understanding that further dialogue may be needed as the Report Date approaches. Given the Government's consent to a two-month continuance, Mr. Collins is respectfully requesting a two-month continuance of the Report Date at this time.

At sentencing, the Court allowed for self-surrender to a designated facility. Self-surrender to a designated facility has several benefits, including saving BOP the cost of transporting an inmate and saving the Marshals Service from involvement in detaining an inmate and arranging for temporary custody. *See, e.g., In the Matter of Standardizing Dates for the Completion of Documentation for Defendants Sentenced to Imprisonment*, Standing Order No. 14 Misc. 140 (S.D.N.Y. May 8, 2014) ("When a defendant is permitted to surrender voluntarily, judges should fix a surrender date that is forty-five days after sentencing, **unless individual circumstances warrant a variance**. . . .) (emphasis added); Todd Bussert, "The BOP: Bureau of Prisons Issues"

---

[23] We have redacted from the letter personal identifiable information of the defendant in that case.
[24] BOP, Press Release "Bureau of Prisons COVID-19 Action Plan: Phase Five" (Mar. 31, 2020) *available at* https://www.bop.gov/resources/news/pdfs/20200331_press_release_action_plan_5.pdf.

Honorable Vernon S. Broderick
April 1, 2020
Page 6

(Oct. 25, 2012) at 1039 ("To the extent that designation is slow in coming . . . the sentencing court alone has the power to authorize an extension of time within which to surrender; the BOP has no legal authority to modify surrender dates.").

      We respectfully submit that the unprecedented circumstances described above concerning the spread of COVID-19 in the United States, the extreme danger to elderly prisoners with high risk factors who enter or remain in incarceration, and the fact that BOP may have to isolate new prisoners in local and county facilities that may be ill-equipped for such tasks, combined with Mr. Collins' own high risk factors for susceptibility to severe COVID-19 illness, constitutes good cause for continuing the Report Date of Mr. Collins to the designated facility from April 21, 2020 to 2:00 p.m. on June 23, 2020.

      Wherefore, we respectfully submit that good cause exists to extend the Report Date and respectfully request that the Court issue an order extending the report date of Mr. Collins to **2:00 pm on June 23, 2020.**

Respectfully submitted,

*/s/  Jonathan B. New*
Jonathan B. New
Jonathan R. Barr
Kendall E. Wangsgard
BakerHostetler LLP
212.589.4650

*Counsel for Christopher Collins*

cc: All Parties (*via* ECF)