**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      -against-

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

                Defendants.

18 Cr. 567 (VSB)

**MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER C. COLLINS'**
**EMERGENCY MOTION TO EXTEND REPORT DATE OR, IN THE ALTERNATIVE,**
**FOR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**

BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
*Attorneys for Christopher Collins*

## I.    <u>INTRODUCTION</u>

Despite the passage of many months, the novel coronavirus (COVID-19) pandemic tragically continues to rage. Medical experts predict an impending additional wave that will likely be far more deadly and widespread than the first. Dr. Anthony Fauci, the Director of the National Institute of Allergy and Infectious Diseases, warned a few days ago that "we're not in a good place" with flu season approaching and cases rising, and cautioned that the United States needs to "double down" now on protective measures. *See* NBC News "Covid Cases Climbing Again in U.S. While Fauci Warns 'We're Not in a Good Place'" (Sept. 28, 2020).[1] A well-respected University of Washington model projects that the U.S. death rate from COVID-19 will quadruple over the next few months, with the U.S. predicted to experience 3,059 deaths per day by January. *See, e.g.*, University of Washington Institute for Health Metrics and Evaluation (IHME).[2]

Prisons remain a particularly dangerous place for those at high risk of mortality from a COVID-19 infection. Against this backdrop, and as a person at high risk to suffer life-threatening consequences should he contract the disease, Mr. Collins brings this motion to respectfully request the Court exercise the good discretion previously exercised to extend further the date on which he must surrender for service of his sentence (the "Report Date") to **2:00 pm on December 8, 2020**, for the reasons set forth below. In the alternative, should service of the sentence commence as currently scheduled, then Mr. Collins moves the Court to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to time-served plus a period of supervised release with the special condition of home confinement.

---

[1] *Available at* https://www.nbcnews.com/news/us-news/covid-cases-climbing-again-u-s-while-fauci-warns-we-n1241256
[2] *Available at* https://covid19.healthdata.org/united-states-of-america?view=social-distancing&tab=trend

There is little debate that the COVID-19 pandemic continues its dramatic and deadly spread around the globe, with the United States being affected disproportionately. From an isolated outbreak last December, to the pandemic of today, COVID-19 has resulted in more than 1,000,000 deaths worldwide. *See* Johns Hopkins University Coronavirus Resource Center (Oct. 1, 2020) (hereinafter "JHU Resource Ctr.").[3] In the United States, the pandemic is expected to be the third leading cause of death in 2020. *See* National Safety Council, "COVID-19 on Pace to Become Third Leading Cause of Death in 2020" (Aug. 18, 2020).[4] At the time of Mr. Collins' sentencing in January, the pandemic was unforeseen. Changed circumstances have been swift and calamitous.

While the pandemic has already caused untold damage, equally alarming is the fact that it shows little sign of slowing down. Daily new cases in the United States continue at a pace of more than 40,000 per day. *See* JHU Resource Ctr. Experts predict that rate will increase precipitously over the next few months. As the Department of Justice has acknowledged, prisons remain hot spots for contagion. *See* U.S. Dep't of Justice Office of the Inspector General, Pandemic Response Report 20-072: COVID-19 Challenges for the U.S. Department of Justice (2020). This is especially dangerous for inmates with a high-risk of experiencing severe COVID-19 complications. For these reasons, the Court on three prior occasions extended the Report Date, which is now set for October 13, 2020. The facts, circumstances and rationale justifying the Court's prior decisions to extend Mr. Collins' Report Date have not changed, and the relief requested herein reflects the severity, and unfortunate reality, of this continuing crisis.

---

[3] *Available at* https://coronavirus.jhu.edu/
[4] *Available at* https://www.nsc.org/in-the-newsroom/covid-19-on-pace-to-become-third-leading-cause-of-death-in-2020

## II. BACKGROUND

On January 17, 2020, Mr. Collins appeared before the Court for sentencing pursuant to his plea of guilty to one count of conspiracy to commit securities fraud and one count of making a false statement. At sentencing, the Court, in relevant part, sentenced Mr. Collins to concurrent sentences of 26 months imprisonment, recommended that he be designated to FPC Pensacola in Florida, and set a Report Date of March 17, 2020. On January 31, 2020, a Judgment in a Criminal Case issued as to Mr. Collins, ECF No. 171, formalizing this sentence. On February 28, 2020, Mr. Collins moved the Court, with the Government's consent, to continue the Report Date to April 21, 2020 because Mr. Collins had not yet been processed into the BOP system, had not been designated to a facility, and there was a concern that the designation would not be able to occur prior to March 17. ECF No. 181. The Court granted the motion to continue the Report Date to April 21, 2020. ECF No. 182.

In light of the COVID-19 pandemic and uncontested significant age and health characteristics that place Mr. Collins at high risk of suffering serious and potentially life-threatening complications from a COVID-19 infection, Mr. Collins subsequently moved for extension of the Report Date, with no objection from the Government, on April 1, 2020, May 28, 2020, and August 4, 2020. ECF Nos. 184, 187, 190, respectively. The Court granted each, resulting in the current October 13, 2020 Report Date. Through mid-August, the Government, Mr. Collins, and the Court agreed on the appropriate action.

The Court's August 6, 2020 Order also directed the parties to provide additional information regarding the COVID-19 restrictions and procedures related to defendants surrendering to FPC Pensacola. A joint letter was filed on August 14, 2020. ECF No. 194. As of the August 14, 2020 Joint Letter, it appears that FPC Pensacola had performed only 17 COVID-

19 tests in total, raising serious questions about whether the BOP had accurately identified all active cases in the facility—particularly asymptomatic carriers who are particularly dangerous spreaders of the disease. *Id.* at 2. According to the statistics cited in the letter, which again likely undercounts the actual number of active cases, five staff members had tested positive, with four having fully recovered and one self-isolating as of that date.

Counsel for Mr. Collins sought the Government's position with respect to a further adjournment to the date requested herein. The Government does not consent to the requested relief. Rather, the United States Attorney's Office for the Southern District of New York has advised that it is that Office's assessment that the BOP safety protocols, along with the situation at FPC Pensacola in particular, are adequate.

The Office's position, however, does not appear to take into account either the April 3, 2020 finding by Attorney General Barr that emergency conditions are materially affecting the functioning of BOP, or the Attorney General's March 26, 2020 directive recognizing that there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities. Office of the Attorney General, Memorandum for Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" at 1 (Apr. 3, 2020); Office of the Attorney General, Memorandum for Director of Bureau of Prisons, "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic" at 1 (Mar. 26, 2020).[5] That finding and directive continue in full force, and Mr. Collins is precisely the type of prisoner that institutions are currently instructed to transition to home confinement. The BOP continues to

---

[5] *Available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf; https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf

operate under a modified operations plan. *See* BOP COVID-19 Resource Page.[6] The COVID-19 pandemic has claimed the lives of more than 120 inmates and two BOP staff members. *Id.* There are active cases at 115-plus BOP facilities, including FPC Pensacola. *Id.*

The Office's position also fails to consider the expected deterioration in conditions in the near future. Medical experts are predicting another wave that will be yet more deadly and pervasive. The impending flu season is expected to add an additional challenge. *See, e.g.,* NBC News "Experts Warn of 'Twindemic' as Covid Cases Rise and Flu Season Looms (Sept. 21, 2020).[7] Dr. Fauci warned at the end of September that "we're not in a good place." *See* NBC News "Covid Cases Climbing Again in U.S. While Fauci Warns 'We're Not in a Good Place'" (Sept. 28, 2020).[8] Dr. Fauci reportedly is "especially concerned" about Florida. *Id.* Vice President Pence warned recently that the "American People should anticipate that cases will rise in the days ahead." *See* CNBC, "Pence Says Americans Should Expect Coronavirus Cases to Rise 'in the days ahead'" (Sept. 28, 2020).[9]

Indeed, Florida's most recent statistics are a cause for concern. According to a rolling seven-day count by Johns Hopkins University, Florida residents are now testing positive at a rate of more than 10 percent. *See* Business Insider, "Florida Reported A Spike in COVID-19 Cases Just Days After Allowing Restaurants and Small Businesses to Fully Reopen" (Sept. 30, 2020).[10]

---

[6] *Available at* https://www.bop.gov/coronavirus/

[7] *Available at* https://www.nbcnews.com/news/us-news/experts-warn-twindemic-covid-cases-rise-flu-seasons-looms-n1240623

[8] *Available at* https://www.nbcnews.com/news/us-news/covid-cases-climbing-again-u-s-while-fauci-warns-we-n1241256

[9] *Available at* https://www.cnbc.com/2020/09/28/coronavirus-pence-says-expect-us-cases-to-rise-in-the-days-ahead.html

[10] *Available at* https://www.businessinsider.com/florida-covid-19-cases-spike-days-after-desantis-reopening-order-2020-9

Moreover, Florida's health department recorded 3,266 new coronavirus cases on Tuesday, September 29, a massive jump from the 738 new daily cases it recorded the previous day. *Id.*

Although the Office, after consenting to prior extensions, may have suddenly changed its assessment of the COVID-related risks, the facts on the ground have not changed. COVID-19 continues to infect tens of thousands of Americans every day and is starting to spike again. BOP facilities have been, and continue to be, hot spots for infection, notwithstanding the BOP's lack of sufficient testing to quantify the extent of the danger. Individuals over 65 years old, particularly those like Mr. Collins who suffer from pre-existing conditions such as hypertension and asthma, are particularly likely to suffer serious and potentially life-threatening complications from infection. Although the CDC anticipates that a vaccine will soon be available for distribution in early 2021, none is yet available.

## III. THE REQUEST IS WARRANTED AND REASONABLE WHILE THIS CRISIS CONTINUES TO RAGE

Mr. Collins recognizes that the delay in his reporting was unexpected at the time of sentencing and is the result of great national tragedy. The situation, globally and domestically, needs little exposition. The facts of the COVID-19 pandemic are well-publicized and widely known, indeed, the subject of 24-hour news, seven days a week. In January, the virus was still localized to its origin in mainland China and was only beginning the worldwide spread that would follow in the ensuing months. Since then, what was once a localized outbreak has touched virtually every country on the globe causing more than 1,000,000 deaths from over 34,000,000 confirmed cases. *See* JHU Resource Ctr. The spread continues, with the United States seeing the largest effects. *Id.* As the fall season progresses and winter approaches, cases are expected to

surge, including in Florida. *See, e.g.,* Vox "Experts Say Covid-19 Cases Are About to Surge" (Sept. 28, 2020).[11]

In response to the crisis, courts around the country—and within the Second Circuit—have recognized the severity and singularity of this health crisis, and its effect on the justice system in deciding to grant compassionate release to individuals like Mr. Collins. *See, e.g., United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (granting compassionate release and explaining that the court "did not intend" for the sentence "to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic"); *United States v. Sawics*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from hypertension, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he faces in prison constitutes and extraordinary and compelling reason militating in favor of his release"—a proposition the Government did not contest); *United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020); *United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) ("The country faces unprecedented challenges from the novel Coronavirus pandemic. Those detained in jails and prisons face particularly grave danger."); *United States v. Pena*, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020); *United States v. Williams-Bethea*, No. 18-cr-78, 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020) ("[T]he COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals."); *United States v. Anderson*, No. 16-cr-824-1 (JMF), 2020 WL 2849483, at *1 (S.D.N.Y. June 2, 2020) ("[A]s many courts have recognized, the threat of COVID-19 to those in prison constitutes an extraordinary and compelling reason for compassionate release, especially for those whose preexisting medical

---

[11] *Available at* https://www.vox.com/future-perfect/2020/9/28/21451436/covid-19-coronavirus-pandemic-fall-winter-third-wave; *see also* n.8, *supra*.

conditions put them at heightened risk."). Necessary, and often unprecedented, adaptations have become commonplace.

While the COVID-19 pandemic touches each of us in one way or another, certain segments of the population are disproportionately impacted. Centers for Disease Control and Prevention ("CDC") guidance identifies individuals at higher risk of contracting and suffering severe illness from COVID-19 as those who are 65 and older and/or those who suffer from chronic health conditions including chronic lung disease or moderate to severe asthma and serious heart conditions. CDC, "People who are at higher risk for severe illness," (Sept. 11, 2020).[12] Moreover, it has been widely reported that patients with hypertension appear to be at a higher risk of dying from the coronavirus. Bloomberg News, "Top Coronavirus Doctor in Wuhan Says High Blood Pressure Is Major Death Risk" (Mar. 9, 2020).[13] As detailed in the Revised Pre-Sentence Report dated December 23, 2019 ("PSR"), Mr. Collins, now 70, is older than 65 and has additional risk factors, which place him at a high risk of contracting and suffering severe illness from COVID-19 if exposed to the virus. *See* PSR ¶ 99.[14] Being exposed to and contracting the virus should be expected to have an outsized and potentially devastating effect on persons in Mr. Collins' position. Indeed, his age alone makes him high-risk.

Against the backdrop of this deadly and devastating pandemic there does exist, however, reason for hope. The Federal Government's "Operation Warp Speed" seeks to achieve

---

[12] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html

[13] *Top Coronavirus Doctor in Wuhan Says High Blood Pressure Is Major Death Risk*, Bloomberg News (Mar. 9, 2020) *available at* https://www.bloomberg.com/news/articles/2020-03-09/top-virus-doctor-says-high-blood-pressure-is-major-death-risk

[14] These conditions are also detailed in Mr. Collins' submissions to BOP, inclusive of a physician's letter, attached as Exhibits here.

unprecedented speed in developing and distributing a safe and effective vaccine. The goal is production and delivery of 300 million vaccine doses beginning as early as January "as part of a broader strategy to accelerate the development, manufacturing, and distribution of COVID-19 vaccines, therapeutics, and diagnostics." *See* U.S. Dep't of Health and Human Svcs. Operation Warp Speed Fact Sheet.[15] A January 2021 target may turn out to have been overly-conservative as a vaccine rollout later this year is increasingly likely. In the time since Mr. Collins' latest adjournment there have been high-profile announcements regarding a potential vaccine. Progress can be seen daily. *See, e.g.,* National Institutes of Health, "Fourth Large-Scale COVID-19 Vaccine Trial Begins in the United States" (Sept. 23, 2020);[16] National Journal of Managed Care, "Dr Anthony Fauci Speaks to the Likelihood of Vaccines for HIV and COVID-19" (Sept. 10, 2020).[17] The development and distribution of an effective, safe, accessible vaccine will be pivotal in this fight.

It is in this context that Mr. Collins now moves the Court. His high-risk profile has not changed given his age and underlying health conditions. What has changed, however, is the potentially positive impending developments in the campaign against the pandemic. Considering the substantial risk Mr. Collins faces contracting COVID-19 at FPC Pensacola and suffering serious or life-threatening compilations, it would be prudent to continue the Report Date for an additional period. The harm of further delay to the justice system is negligible, but the

---

[15] https://www.hhs.gov/coronavirus/explaining-operation-warp-speed/index.html

[16] *Available at* https://www.nih.gov/news-events/news-releases/fourth-large-scale-covid-19-vaccine-trial-begins-united-states (quoting HHS Secretary Alex Azar: "To have just one candidate vaccine in Phase 3 trials less than a year after a virus was first reported would be a remarkable accomplishment; to have four candidates at that stage is extraordinary.").

[17] *Available at* https://www.ajmc.com/view/dr-anthony-fauci-speaks-to-the-likelihood-of-vaccines-for-hiv-and-covid-19 (noting that Dr. Fauci "and other officials feel fairly confident that we'll get a vaccine for coronavirus disease 2019 (COVID-19), possibly by the end of the year and the beginning of 2021").

consequences of reporting now could be deadly. Time hopefully will allow for significant clarity on the vaccine front.

This conclusion is supported by Mr. Collins' individual situation as well. He is a non-violent, first-time offender who poses absolutely no danger to the community. Indeed, his characteristics are some of the *very same* factors cited by the Attorney General as warranting *release* to home confinement, *i.e.*, (a) being at-risk because of health problems, (b) having been convicted of a non-violent offense, and (c) posing minimum likelihood of recidivism or danger. *See* Office of the Attorney General, Memorandum for Director of Bureau of Prisons, "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic" at 1 (Mar. 26, 2020).[18] Reporting to prison while the situation on the ground remains critical would create a substantial and incompatible disconnect when similarly-situated inmates are being released under comparable circumstances. Finally, no credible argument can be made that Mr. Collins is not much safer at home where he remains quarantined with his family who are also sheltering in place, greatly reducing contact with others and with a diminished chance of contracting the virus, than at FPC Pensacola where he would be living in a facility with a large number of others with correctional officers cycling in and out from the wider community—four of whom have already tested positive for COVID-19. The safest situation is the status quo, and there is no real prejudice suffered by allowing Mr. Collins to wait to report until it is without question safe for elderly prisoners with underlying health conditions to serve their time without a high risk of contracting a mortal disease. With a vaccine predicted in the near future, it is particularly prudent for a short additional delay.

---

[18] *Available at* https://www.justice.gov/file/1262731/download

Although COVID-19 remains a grave and unparalleled challenge, but with an end potentially on the horizon, the negligible impact of a brief additional delay must be weighed against the danger of immediate incarceration. Accordingly, Mr. Collins submits that good cause exists for continuing the Report Date.

## IV.    ALTERNATELY, MR. COLLINS' SENTENCE SHOULD COMMENCE WITH HOME CONFINEMENT

Following judgment, Mr. Collins anticipated commencing service of his sentence as scheduled. He had every desire to bring this shameful chapter of his life to a close and to serve his sentence so that he could begin to rebuild his life and give back to his community. In this, both Mr. Collins and the Government share a common interest. Both parties planned for a March Report Date at which time Mr. Collins could begin to serve his sentence. The pandemic was unanticipated. Now, Mr. Collins has largely been stuck in limbo with his life on hold. A federal sentence of imprisonment hangs over his head as he seeks to minimize the very real and serious risk of contracting and dying from a life-threatening illness for which he is particularly vulnerable especially in a prison environment. Already effectively home bound, he is under quasi-home confinement, yet with no credit for the same. The global health crisis presents him with the torturous choice between reporting and risking exposure and death in prison, or seeking to prolong his and his family's current uneasy stasis and delaying the completion of his sentence.

In light of this unanticipated extraordinary circumstance, Mr. Collins alternately asks that the Court modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to time-served plus a period of supervised release with the special condition of home confinement. Given Mr. Collins' age combined with the health conditions that place him at high risk of mortality should he contract COVID-19, in conjunction with the COVID-19 pandemic and its effects in prisons, extraordinary and compelling circumstances exist to warrant this relief. This will also serve the

dual purpose of reflecting the Government's interest in prompt punishment for crimes while also fulfilling "the profound obligation to protect the health and safety of all inmates." Office of the Attorney General, Memorandum for Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" at 1 (Apr. 3, 2020).[19]

A.      *Mr. Collins Satisfies the Section 3582(c)(1)(A) Criteria*

Amended as part of the First Step Act in 2018, 18 U.S.C. § 3582(c)(1)(A) provides that a "defendant" may move the sentencing court to "reduce [a] term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." For the Court to consider such a motion by the defendant, as opposed to one brought by the Director of the BOP, administrative remedies within the BOP first must be pursued and exhausted. *See* 18 U.S.C. § 3582(c)(1)(A). Once that prerequisite is satisfied, the Court, considering the factors set forth in 18 U.S.C. § 3553(a) as applicable, must then find that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Although not yet a resident in a BOP facility, Mr. Collins can and has exhausted his administrative remedies.[20] Each step of the procedural requirement has been satisfied. His

---

[19] *Available at* https://www.justice.gov/file/1266661/download

[20] Nothing in the statute requires a petitioner to first be incarcerated prior to seeking relief from BOP. Indeed, the reference is to a "defendant's facility" and not an "inmate's facility." Mr. Collins is, of course, a criminal defendant and he has been designated to a facility, FPC Pensacola. Therefore, a request can be directed to "the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Austin*, No. 06-cr-991 (JSR), 2020 WL 3447521, at *2 (S.D.N.Y. June 22, 2020) (granting motion for compassionate release where defendant was not in BOP custody and explaining that any requirement to first be in BOP custody was "[n]otably absent from this statute" and that "the relief available under the statute—a reduction in sentence, and not, specifically, release from custody—implies that the only absolute requirement is that a defendant be subject to a federal sentence.") (citing 18 U.S.C. § 3582(c)). *See also United States v. Levy*, No. 16-cr-270 (ARR), 2020 WL 2393837, at *1 (E.D.N.Y. May 12, 2020) (considering the merits of defendant's application where defendant was not in BOP custody);; *United States v. Gamboa*, No. Cr. 09-1741, 2020 WL 3091427, at *2 (D.N.M. June 11, 2020) (granting compassionate release to a defendant who had already been released to home confinement). *But cf. United States v. Konny*, No. 19-

request is ripe for consideration by the Court. Further, the heighted risk of COVID-19 exposure, combined with Mr. Collins' risk factors, presents severe medical circumstances that are "extraordinary and compelling." Finally, application of the 18 U.S.C. § 3553(a) factors in the context of grievously changed circumstances supports Mr. Collins' motion. Modification of the sentence to time served followed by a period of supervised release, with home confinement, is justified.

1.    <u>Mr. Collins Has Exhausted Administrative Remedies</u>

In *United States v. Ng Lap Seng* the Court examined a similar request for modification pursuant to 18 U.S.C. § 3582(c)(1)(A) recognizing, as it must, that the Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." No. S5-15-cr-706 (VSB), 2020 WL 2301202 at *3 (S.D.N.Y. May 8, 2020) (quoting *United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020)). The compassionate release provisions of section 3582(c) is one such statutory exception. Prior to adoption of the First Step Act, district courts could only act after receiving a motion from the BOP asking the court to consider modification. Now, however, the Court may take up a request either from the Director of BOP or "the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

As the Court observed in *Ng Lap Seng*, BOP has a Program Statement that outlines in detail the administrative appeal process for compassionate release applications. 2020 WL 2301202 at *7 (citing Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No.

---

cr-283 (JGK), 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020) ("by its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility").

5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)," (Jan. 17, 2019) available at https://www.bop.gov/policy/ progstat/5050_050_EN.pdf). The Program Statement explains that the first step is submission of a written request for a motion to the Warden. *Id.* at 3 (citing 28 C.F.R. § 571.61). If the Warden denies the request, then the BOP Administrative Remedy Procedures outlined in 28 C.F.R. part 542, subpart B are triggered. *See id.* at 15 (citing 28 C.F.R. § 571.63). As the Court observed, "the same exhaustion procedure for routine administrative grievances" is applicable to requests for compassionate release. *Ng Lap Seng*, 2020 WL 2301202 at *7. 28 C.F.R. 542.15(a), in turn, provides the procedure for routine administrative grievances:

> [a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.

28 C.F.R. 542.18 details the obligations of BOP in responding, namely that response shall be made by the Warden within 20 calendar days, by the Regional Director within 30 calendar days, and by the General Counsel within 40 calendar days. Further, absence of a response within the time allotted for reply is considered "a denial at that level." *Id.*; *see also* Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 1330.18, Administrative Remedy Program (Jan. 6, 2014), *available at* https://www.bop.gov/policy/progstat/1330_018.pdf.

In this way, "BOP policy provides a clear timeline for the consideration of a compassionate release application, and provides that the BOP's failure to timely consider an appeal at any given stage will be deemed a denial." *Ng Lap Seng*, 2020 WL 2301202 at *7. Here, Mr. Collins first petitioned the Warden at FPC Pensacola on June 16, 2020 seeking a transfer to

home confinement or, in the alternative, asking that BOP bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Exs. A-C.[21] By letter dated June 19, 2020, well-within the 20 days to respond, the Warden rejected that request. *Id.*[22] Mr. Collins submitted his BP-10 "Regional Administrative Remedy Appeal" on July 7, 2020, within his 20-day window. *Id.* Denial, by operation of no response, occurred at the close of the Regional Director's 30-day window (*i.e.*, August 6, 2020). Mr. Collins then submitted his BP-11 "Central Office Administrative Remedy Appeal" on August 21, 2020, within his 30-day window. *Id.* A response from the General Counsel was due within forty days—by September 30, 2020—and no written response has been received. The Warden's written denial is, of course, a denial in fact, and the non-response at each additional level is deemed "a denial at that level." 28 C.F.R. 542.18. Because Mr. Collins has now proceeded through all three levels of the BOP Administrative Remedy Program without receiving relief, he has exhausted his remedies and this motion is ripe for consideration by the Court.

        2.      The 'Extraordinary and Compelling' Bases for Relief are Self-Evident

       With the threshold exhaustion requirement satisfied, the next consideration is whether the "extraordinary and compelling" requirement of 18 U.S.C. § 3582(c)(1)(A)(i) is satisfied. Mr. Collins' age and underlying health conditions combined with the effect of COVID-19 in prisons,

---

[21] Attached as Exhibit A is Mr. Collins' BP-11, the requisite form for the Level III Central Office Administrative Remedy Appeal. That final appeal, in turn, encloses the as-submitted materials from the Level I and Level II requests. Therefore, Exhibit A is one complete set of all materials submitted to BOP. Attached as Exhibit B are copes of the correspondence from counsel submitting documents by email. Attached as Exhibit C are proofs of mailing hard copies for each level.

[22] The original submission to the Warden was in the form of a letter, and not a BP-9. However, the Warden accepted and responded to the Level I request in that form. *See, e.g., United States v. Day*, No. 6:18-cr-06015 EAW, 2020 WL 4196357 at *2 (W.D.N.Y. July 21, 2020) (finding an email to the warden sufficient and noting criticism of "the Government's insistence 'in the face of a one-in-a-century pandemic, on opposing motions for compassionate release on technical grounds.'") (quoting *United States v. McIndoo*, No. 1:15-cr-00142 EAW, 2020 WL 2201970, at *9 (W.D.N.Y. May 6, 2020)). Although not required, Mr. Collins recently submitted an additional request to the Warden on a BP-9 requesting the same relief. No response was received by the Warden within the time required, thus constituting yet another denial. Mr. Collins thereafter submitted his BP-10 "Regional Administrative Remedy Appeal" on September 16, 2020, within his 20-day window. *Id.*

constitutes an "extraordinary and compelling" reason as contemplated by Congress and the U.S. Sentencing Commission. Pursuant to Congressional authority to interpret "extraordinary and compelling reasons," the Application Notes of the Sentencing Commission's Guidelines Manual considers the medical condition and ability to care for one's self. § 1B1.13. The Court may modify the sentence of a defendant who "suffer[s] from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

District courts across the Second Circuit recognize defendants and inmates with pre-existing conditions face unique risks from contracting COVID-19. As such, these courts have granted compassionate release motions for those with health conditions including older inmates whose age alone places them in a higher risk category. *See, e.g., United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603, at *1 (S.D.N.Y. April 24, 2020) (releasing a 44-year-old person with a history of asthma and immune-compromising diseases because the COVID-19 death rate "continues to grow, especially for those with preexisting health conditions"); *Zukerman*, 451 F. Supp. 3d 329 (modifying a sentence to home confinement for a 75-year-old man finding his age combined with pre-existing conditions satisfy "extraordinary and compelling reasons for modification"); *United States v. Scparta*, No 18-cr-578 (AJN), 2020 WL 1910481, at *8–9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release motion for 55-year-old defendant with hypertension and other conditions who had served a little over half his sentence); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *4-5 (S.D.N.Y. Apr. 13, 2020) (granting compassionate release motion for 62-year-old high-risk defendant with asthma who is not a danger to society); *United States v. Franco*, No. 12 CR 932 (PAC), 2020 WL 4344834, at *1 (S.D.N.Y. June 24, 2020) (granting motion of 41-year-old defendant suffering from severe

diabetes, hypertension, an obesity); *United States v. Canini*, No. 04 CR 283 (PAC), 2020 WL 4742910, at *3 (S.D.N.Y. June 8, 2020) (grating motion of 46-year-old defendant suffering from chronic moderate to severe asthma); *United States v. Parker*, No. 3:17cr18 (JBA), 2020 WL 4432928, at *1 (D. Conn. July 31, 2020) (granting motion for compassionate release due to Defendant's latent tuberculosis, obesity, and high blood pressure readings); *United States v. Patel*, No. 3:17cr164 (JBA), 2020 WL 3187980 (D. Conn. June 15, 2020) (finding heart disease, diabetes, and hypertension to satisfy the criteria).

At 70 years old with pre-existing conditions, Mr. Collins' possibility of contracting COVID-19 at FCP Pensacola remains a high risk. "[T]his risk for individuals like [the defendant] is substantial; data recently released by the CDC indicates that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older, and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent." *Zukerman*, 451 F. Supp 3d at 335. According to the publicly available information provided by BOP, there are currently four active staff cases at FPC Pensacola. *See* BOP COVID-19 Resource Page, "COVID-19 Cases."[23] For inmates, it appears that there have been three positive tests out of the sixty-one that have been administered. *Id.* It seems that in the six weeks following the Joint Letter, conditions at FPC Pensacola are worsening. In the absence of wider testing, the actual health situation on the ground at Pensacola is opaque and likely much worse than represented by BOP. Asymptomatic carriers, which are particularly dangerous, are likely not being identified and isolated. Moreover, the positivity rate in Florida is currently 10.6%, more than double the positivity rate of the national average.[24] Mr. Collins would be at the mercy of staff who reside and live in the Florida

---

[23] *Available at* https://www.bop.gov/coronavirus/

[24] https://coronavirus.jhu.edu/testing/individual-states/usa

community to keep him safe. At present, Mr. Collins, who is well-aware that his advanced age and health conditions place him at great peril should he catch COVID-19, remains vigilant against the virus by taking numerous precautions and preventative measures unavailable to him at FPC Pensacola. Because prison facilities have limited testing,[25] and CDC notes the "unique challenges for control of [COVID-19] transmission among incarcerated/detailed persons,"[26] an individual inmate depends on the precautions taken by others, such as staff cycling in and out of the facility. A substantially more appropriate circumstance, as "the Bureau of Prisons itself has acknowledged" is home confinement which "may be more appropriate for certain 'at-risk inmates' in order to 'protect the health and safety of . . . people in our custody.'" *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (citation omitted).

### *3.*     The 3533(a) Factors Favor a Sentence Modification

Once a court finds that extraordinary and compelling reasons exist, it must consider the factors set forth in section 3553(a). Post-offense developments must be part of the equation. *See, e.g., Pepper v. United States*, 562 U.S. 476, 490-93 (2011). The COVID-19 pandemic is one such crucial consideration. *See United States* v. *Sanchez*, No. 18-cr-140 (VLB), 2020 WL 1933815, at *6 (D. Conn. Apr. 22, 2020). A prior sentence of incarceration should not become a death sentence. *Id.* at *6-7 (explaining that "[t]he Eighth Amendment prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody" and that "[t]he sentencing purpose of 'just punishment' cannot warrant a sentence that includes exposing a particularly vulnerable individual to a life-threatening illness which threatens him

---

[25] Keri Blakinger and Keegan Hamilton, *"I Begged Them To Let Me Die": How Federal Prisons Became Coronavirus Death Traps*, The Marshall Project (June 18, 2020) (reporting on the unprepared and slow response to the pandemic by the Bureau of Prisons).
[26] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (July 22, 2020).

uniquely."). *See also*, *United States v. Chopra*, No. 18 Cr. 20668 (DMM), ECF No. 606 (S.D. Fla. June 8, 2020) ("I sentenced Defendant to 48 months imprisonment, not death or confinement under threat of serious illness."); *United States v. Hernandez*, No. 18 CR. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) ("Had the Court known that sentencing Mr. Hernandez to serve the final four months of his term in a federal prison would have exposed him to a heightened health risk, the Court would have directed that these four months be served instead in home confinement.").

In January, the Court considered the section 3553(a) factors and concluded that a 26-month sentence was "sufficient, but not greater than necessary." That below-Guidelines sentence reflected the serious but non-violent nature of Mr. Collins' crime, taken together with the mitigating circumstances. However, the pandemic was not considered or even anticipated at sentencing. This significant, new development is crucial and alone can be dispositive. *See, e.g., Zukerman*, 451 F. Supp. 3d at 336 ("The severity of [the] conduct remains unchanged. What has changed, however, is the environment where [defendant] is serving his sentence. When the Court sentenced [him], the court did not intend for that sentence 'to include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.").

Mr. Collins' post-sentencing conduct should also be considered. *See Pepper*, 562 U.S. at 492 (the Court must consider "the most up-to-date picture" of the defendant's history and characteristics). Here, Mr. Collins promptly paid the $200,000 fine in full shortly after sentencing. He has already been under effective home-confinement and abided by his bail conditions at all times. The fact remains that Mr. Collins pled guilty early and admitted his role in criminal conduct. He has shown extreme remorse and already paid dearly for his crimes. His exemplary character, acceptance of responsibility, long history of community and public service,

and extensive record of charitable acts remain unchanged. Finally, modification of the sentence will not affect the *length*, but merely the location. *Cf. United States v. Leitch*, No. 11 Cr. 00039 (JG), 2013 WL 753445 (E.D.N.Y. Feb. 28, 2013) (identifying an array of enhanced punishment options that need not require sending the defendant to prison in recognition of the reality that "when a judge chooses between a prison term and probation, she is not choosing between punishment and no punishment. Probation is less severe than a prison term, but both are punishment. And as the Supreme Court has recognized, probation is *significant* punishment."). Judges in the Southern District of New York (and elsewhere) have recognized that, for defendants who have pled guilty to insider trading, probation or home confinement provides appropriate, substantial, and just punishment. Probation, with conditions including home confinement, is a substantial punishment which in this case achieves the statutory sentencing purposes of section 3553.

Far from being a "pass," imposing home confinement for the full original term is a substantial punishment that will achieve the purposes of sentencing, while also accommodating health and safety.

## V.    <u>CONCLUSION</u>

The unprecedented COVID-19 pandemic has already created and imposed significant challenges. The need for daily adaptation is the norm. This is no different for a judicial system that is simultaneously under great pressure and also well-suited to adjust and respond accordingly. Mr. Collins remains susceptible to serious illness or death should he contract the virus. In the first instance, an additional delay in the Report Date will preserve the status quo while, hopefully, awaiting an essential and much-needed vaccine. Alternately, in the absence of this essential development, prudence dictates that a modified sentence to accommodate health and safety is warranted.

For the foregoing reasons, Mr. Collins respectfully requests that the Court extend the

Report Date to December 8, 2020 or, in the alternative, modify his sentence to time-served plus a

period of supervised release with the special condition of home confinement.

Respectfully submitted,

New York, NY
October 1, 2020

BAKER HOSTETLER LLP
By: /s/ Jonathan B. New
Jonathan B. New
45 Rockefeller Plaza
14th Floor
New York, NY 10111
T: 212.589.4200
F: 212.589.4201
jnew@bakerlaw.com

Jonathan R. Barr
Kendall E. Wangsgard
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
T: 202.861.1500
F: 202.861.1783
jbarr@bakerlaw.com
kwangsgard@bakerlaw.com