18-cr-567 (VSB)
*United States v. Collins, et al.*

# EXHIBIT A

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **Collins, Christopher C.**     **86014-054**     --     **FPC Pensacola**
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**

       On June 16, 2020, I requested that the Warden of my facility, FPC Pensacola, use his authority under the CARES Act and Attorney General Barr's directives regarding the COVID-19 pandemic to transfer me to home confinement. Alternately, I requested that, pursuant to 18 U.S.C. § 3582(c)(1)(A), BOP make a motion to the sentencing Court to reduce the term of my imprisonment to time served and impose home confinement. I further adopted and incorporated by reference the application made by my attorneys setting forth the bases and reasons for my request.

       On June 19, 2020, the Warden, FPC Pensacola issued a determination regarding my application but failed to address the merits. The Warden's determination was in error. Accordingly, on July 7, 2020, I submitted a Level II Appeal to the Regional Director, Southeast Region. 45 days have elapsed without a response and, accordingly, my Regional Administrative Remedy Appeal is deemed denied. Accordingly, I now submit this Level III Central Office Administrative Remedy Appeal.

       In further support of my Appeal, I submit and incorporate by reference herein the enclosed letter.

August 21, 2020                             *Christopher C. Collins*
     DATE                                                         SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____                               _____
     DATE                                                           GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                 CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                                                                  CASE NUMBER: _____

Return to: _____    _____    _____    _____
             LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                                     _____
     DATE                                  SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

# Christopher C. Collins

317 Lamplighter Drive
Marco Island, FL 34145

August 21, 2020

National Inmate Appeals Administrator
Office of General Counsel
320 First Street, NW
Washington, D.C. 20534
cc: Mr. Ken Hyle, General Counsel (*via* email – *khyle@bop.gov*)

> Re: BP-11 (BP-231) Appeal Pursuant to 28 CFR § 542.15 and 28 CFR § 571.63 of Non-Determination by Regional Director, Southeast Region

Dear Inmate Appeals Administrator:

My name is Christopher C. Collins, BOP Reg. No. 86014-054. I have attached a copy of my Administrative Remedy Appeal Request filed on July 7, 2020. I did not receive a response. By operation of statute, such non-response is deemed a denial. I am now exercising my right to a Level III Appeal pursuant to 28 CFR § 542.15, incorporated by reference in 28 CFR § 571.63.[1]

On June 16, 2020, I filed my Administrative Remedy Request with the Warden at FPC Pensacola, my designated facility. By response dated June 19, 2020, the Warden denied my request. I disagreed with the Warden's determination and, on July 7, 2020, timely filed my Level II appeal to the BOP Regional Director, Southeast Region. As of August 21, 2020, 45 days have elapsed, but I have received no response from the Regional Director. *Cf.* 28 CFR § 542.18.

## REASON FOR APPEAL

On June 16, 2020, I requested that the Warden of my facility use his authority under the CARES Act and Attorney General Barr's directives regarding the COVID-19 pandemic to transfer me to home confinement. Alternately, I requested that, pursuant to 18 U.S.C. § 3582(c)(1)(A), BOP make a motion to the sentencing Court to reduce the term of my imprisonment to time served and impose home confinement. I further adopted and incorporated by reference the application made by my attorneys setting forth the bases and reasons for my request.[2]

My request detailed that in light of my age (70 years), health conditions, which include high blood pressure, asthma, and hyperlipidemia, and my vulnerability to experience severe illness or death should I be exposed to and contract the novel coronavirus (COVID-19), extraordinary and compelling reasons exist for favorable determination of my application. Indeed, these factors, along with the length of my sentence (26 months), the non-violent nature of my first-time offense, and the absolute lack of any danger I pose to the community, establish that I am an excellent candidate for early release to home confinement. They are also consistent with memoranda issued by Attorney General Barr to the BOP Director that, in response to the COVID-19 pandemic, call for consideration of home confinement for all inmates who (a) are at-risk because

---

[1] I am submitting this Appeal by email and USPS Overnight, by and through my attorneys, BakerHostetler LLP. My attorneys have authority to submit this appeal on my behalf. Four copies of all materials are enclosed.

[2] Enclosed with this Appeal is a copy of my Level II Regional Administrative Remedy Appeal. That appeal, in turn, enclosed a copy of my initial Level I Administrative Remedy Request, its attachments, and the response received from the Warden, FPC Pensacola. Accordingly, included with this Appeal are all filings and responses from the prior administrative levels. *See* 28 CFR § 542.15(b).

of health problems, (b) were convicted of non-violent offenses, and (c) pose minimum likelihood of recidivism. Attorney General Barr cited the "profound obligation to protect the health and safety of all inmates" and found that "emergency conditions are materially affecting the functioning of the Bureau of Prisons." Release to home confinement through the grant of my application is wholly appropriate under BOP's statutory authority pursuant to 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. Finally, my application in consistent with recent pronouncements of federal Courts considering the impact of COVID-19 on federal prisoners like me. *See, e.g., United States v. Nkanga Nkanga*, 18-CR-713 (S.D.N.Y.), ECF No. 87, at 1 (Mar. 31, 2020) ("Realistically the best — and perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible."). The Warden, FPC Pensacola, failed to fully consider my request or render a merits-based decision. Those shortcomings were the basis for my appeal to the Southeast Regional Director, who failed to act.

First, the Warden concluded, citing 18 U.S.C. § 3621, that there is no statutory authority allowing for designation of home confinement for an inmate at the beginning of a sentence. However, the authority cited in my application—including the CARES act and 18 U.S.C. § 3624, directives from the Attorney General, and federal jurisprudence—supports transfer to home confinement in appropriate circumstances. Per the Attorney General, such consideration is not limited to "those who were previously eligible for transfer." *See* Memorandum, William Barr to Director, Bureau of Prisons (Apr. 3, 2020). In any event, my request is for a transfer, not, as the Warden interpreted it, a request for initial designation to home confinement.

Second, the Warden concluded that I have not surrendered to the custody of the BOP and thus it would be "inappropriate" to determine my request at this time. However, my request included that the BOP make a motion, if necessary, under 18 U.S.C. § 3582(c)(1)(A) for modification of my sentence to time served plus home confinement. This section provides that a request be directed to the Warden at the "defendant's facility" and has no pre-condition of surrender. As I am a convicted defendant and have been designated, my request was appropriately directed to the Warden. In any event, when the Judgment in my Criminal Case was issued on January 31, 2020, I was committed to the custody of the BOP and, as a legal matter, officially became a BOP prisoner. The Warden should have considered my request on the merits.

Finally, the Warden asserted that several "discretionary factors" could not be evaluated until I am physically incarcerated. There is no identifiable statutory or practical mandate that I first be on-site at FPC Pensacola before my request can be considered. My crime of conviction, non-existent danger to the community, designated facility, and re-entry plan can certainly be evaluated on the current record, including through review of the detailed Pre-Sentence Report and other written submissions. Medical and COVID-19 risk factors can be evaluated through review of the Pre-Sentence Report, which specifically detailed the relevant health issues, the medical opinion of my physician which I previously submitted with my initial request to the Warden, medical records, or through a third-party examination conducted, with appropriate precautions, by a BOP designee at my expense. Any other unnamed intangible considerations can be evaluated through video conferencing as has become the norm in the federal system. Being physically present at FPC Pensacola, with its attendant COVID-19-related risks, simply is not a necessity for evaluation of my application. For these reasons, I respectfully urge that a home confinement transfer be granted or in the alternative that BOP make a motion under 18 U.S.C. § 3582(c)(1)(A) for modification of my sentence to time served and imposition of home confinement.

Sincerely,

*Christopher C. Collins*

Christopher C. Collins

Encl.

# Enclosure

Regional Administrative Remedy Appeal
Submitted to Regional Director, Southeast Region
July 7, 2020

U.S. Department of Justice

Federal Bureau of Prisons

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Collins, Christopher C.__ __86014-054__ __--__ __FPC Pensacola__
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

## Part A - REASON FOR APPEAL

On June 16, 2020, I requested that the Warden of my facility, FPC Pensacola, use his authority under the CARES Act and Attorney General Barr's directives regarding the COVID-19 pandemic to transfer me to home confinement. Alternately, I requested that, pursuant to 18 U.S.C. § 3582(c)(1)(A), BOP make a motion to the sentencing Court to reduce the term of my imprisonment to time served and impose home confinement. I further adopted and incorporated the application made by my attorneys setting forth the bases and reasons for my request.

On June 19, 2020, the Warden, FPC Pensacola issued a determination regarding my application but failed to address the merits. The Warden's determination was in error. Accordingly, I am submitting this Appeal.

In further support of my Appeal, I submit and incorporate by reference the enclosed letter.

__July 7, 2020__             _[signature: Christopher C. Collins]_
DATE                      SIGNATURE OF REQUESTER

## Part B - RESPONSE

_____        _____
DATE                      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _____

---

## Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                      SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                      BP-230(13)
                           JUNE 2002

# Christopher C. Collins
317 Lamplighter Drive
Marco Island, FL 34145

July 7, 2020

J.A. Keller
Regional Director, Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway S.W., Bldg. 2000
Atlanta, GA 30331-6226
SERO/ExecAssistant@bop.gov

Re: *BP-10 (BP-230) Appeal Pursuant to 28 CFR § 542.15 and 28 CFR § 571.63 of Adverse Determination by Warden, FPC Pensacola*

Dear Regional Director Keller:

My name is Christopher C. Collins, BOP Reg. No. 86014-054. I disagree with the decision that I received regarding my initial Administrative Remedy Request filed on June 16, 2020 and I am filing an appeal. This letter constitutes my Level II BP-10 (BP-230) appeal pursuant to 28 CFR § 542.15, incorporated by reference in 28 CFR § 571.63. I am submitting this Appeal via email and USPS Overnight, by and through my attorneys, BakerHostetler LLP. My attorneys have authority to submit this appeal on my behalf. Three copies of all materials are enclosed.

## REASON FOR APPEAL

On June 16, 2020, I requested that the Warden of my facility, FPC Pensacola, use his authority under the CARES Act and Attorney General Barr's directives regarding the COVID-19 pandemic to transfer me to home confinement. Alternately, I requested that, pursuant to 18 U.S.C. § 3582(c)(1)(A), BOP make a motion to the sentencing Court to reduce the term of my imprisonment to time served and impose home confinement. I further adopted and incorporated the application made by my attorneys setting forth the bases and reasons for my request.[1]

In short, my request detailed that in light of my age (70 years), health conditions, which include high blood pressure, asthma, and hyperlipidemia, and my vulnerability to experience severe illness or death should I be exposed to and contract the novel coronavirus (COVID-19), extraordinary and compelling reasons exist for favorable determination of my application. Indeed, these factors, along with the length of my sentence (26 months), the non-violent nature of my first-time offense, and the absolute lack of any danger I pose to the community, establish that I am an excellent candidate for early release to home confinement. They are also consistent with memoranda issued by Attorney General Barr to the BOP Director that, in response to the COVID-19 pandemic, call for consideration of home confinement for all inmates who (a) are at-risk because of health problems, (b) were convicted of non-violent offenses, and (c) pose minimum likelihood of recidivism. Attorney General Barr specifically cited the "profound obligation to protect the health and safety of all inmates" and found that "emergency conditions are materially

---

[1] Enclosed with this Appeal is a copy of my initial Level I Administrative Remedy Request, its attachments, and the response received from the Warden, FPC Pensacola.

affecting the functioning of the Bureau of Prisons." Release to home confinement through the grant of my application is also wholly appropriate under BOP's statutory authority pursuant to 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. Finally, my application in consistent with recent pronouncements of federal Courts considering the impact of COVID-19 on federal prisoners like me. *See, e.g., United States v. Nkanga Nkanga*, 18-CR-713 (S.D.N.Y.), ECF No. 87, at 1 (Mar. 31, 2020) ("Realistically the best — and perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible."). Unfortunately, the Warden, FPC Pensacola, failed to fully consider the well-detailed and supported basis for my request and failed to render a merits-based decision. Those shortcomings are the basis for this Appeal.

First, the Warden concluded, citing 18 U.S.C. § 3621, that there is no statutory authority allowing for designation of home confinement for an inmate at the beginning of a sentence. However, the authority cited in my application—including the CARES act and 18 U.S.C. § 3624, directives from the Attorney General, and federal jurisprudence—supports transfer to home confinement in appropriate circumstances. Per the Attorney General, such consideration is not limited to "those who were previously eligible for transfer." *See* Memorandum, William Barr to Director, Bureau of Prisons (Apr. 3, 2020). In any event, my request is for a transfer, not, as the Warden interpreted it, a request for initial designation to home confinement.

Second, the Warden concluded that I have not surrendered to the custody of the BOP and thus it would be "inappropriate" to determine my request at this time. However, my request included that the BOP make a motion, if necessary, under 18 U.S.C. § 3582(c)(1)(A) for modification of my sentence to time served and impose home confinement. This section provides that a request be directed to the Warden at the "defendant's facility" and has no pre-condition of surrender. As I am a convicted defendant and have been designated, my request was appropriately directed to the Warden who nonetheless failed to render a decision on this issue. In any event, when the Judgment in my Criminal Case was issued on January 31, 2020, I was committed to the custody of the BOP and, as a legal matter, officially became a BOP prisoner. The Warden should have considered my request on the merits.

Finally, the Warden asserted that several "discretionary factors" could not be evaluated until I am physically incarcerated. However, there is no identifiable statutory or practical mandate that I first be on-site at FPC Pensacola before my request can be considered. Factors such as my crime of conviction, non-existent danger to the community, designated facility, and re-entry plan can certainly be evaluated on the record, including through review of the detailed Pre-Sentence Report prepared by the United States Probation Office and other written submissions. Medical and COVID-19 risk factors can be evaluated through review of medical records, or through a third-party examination conducted, with appropriate precautions, by a BOP designee at my expense. Any other unnamed intangible considerations can be readily evaluated through video conferencing as has become the norm in the federal system, including for court hearings, depositions, Grand Jury proceedings, and sentencing. Being physically present at FPC Pensacola, with its attendant COVID-19-related risks, simply is not a necessity for proper evaluation of my application. For these reasons, I respectfully urge that a home confinement transfer be granted.

Sincerely,

Christopher C. Collins

Encl.

# Attachment 1

Request for Administrative Remedy
Submitted to Warden, FPC Pensacola on June 16, 2020
with Attachments

# Christopher C. Collins
317 Lamplighter Drive
Marco Island, FL 34145

June 16, 2020

W.L. Woods, Warden
Pensacola FPC
110 Raby Avenue
Pensacola, FL 32509
pen/execassistant@bop.gov

    Re:    *Request for Release to Home Confinement*

Dear Warden Woods:

My name is Christopher C. Collins, BOP Reg. No. 86014-054, a prisoner scheduled to report to FPC Pensacola on August 18, 2020. I write to respectfully request that you use your authority under the CARES Act and Attorney General Barr's directives regarding the COVID-19 crisis to transfer me to home confinement to serve the remainder of my sentence. Alternately, I request that, pursuant to 18 U.S.C. 3582(c)(1)(A), BOP make a motion to the sentencing Court to reduce the term of my imprisonment to time served and impose home confinement. I incorporate by reference into this request, adopt and endorse the attached application made by my attorneys BakerHostetler LLP on my behalf setting forth in more detail the basis and reasons for my request that you use your authority to transfer me to home confinement to serve the remainder of my sentence.

In light of my age of 70 years, health conditions, which include high blood pressure, asthma, and hyperlipidemia (high cholesterol), and my vulnerability to experience severe illness or death should I be exposed to and contract the novel coronavirus (COVID-19), I submit that extraordinary and compelling reasons exist for such action. Thank you for your time and consideration of this request.

Sincerely,

*Christopher C. Collins*

Christopher C. Collins

Enclosure

cc:

Craig Simmons, Regional Counsel
Federal Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-6226
casimmons@bop.gov

# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Jonathan R. Barr
direct dial: 202.861.1534
jbarr@bakerlaw.com

June 16, 2020

**VIA EMAIL AND FEDERAL EXPRESS**

W.L. Woods, Warden
Pensacola FPC
110 Raby Avenue
Pensacola, FL 32509
pen/execassistant@bop.gov

    Re:    *Inmate Christopher C. Collins, Reg. No. 86014-054, Request for Release to Home Confinement*

Dear Warden Woods:

We write on behalf of our client, Christopher C. Collins, Reg. No. 86014-054, an inmate designated to surrender to your facility on August 18, 2020. A Judgment in a Criminal Case entered as to Mr. Collins on January 31, 2020, at which time according to the Judgment he was committed to the custody of the BOP and, as a legal matter, thereby officially became a BOP prisoner. We write specifically to urge you to transfer Mr. Collins to home confinement pursuant to statutory authority and recent directives issued by Attorney General William Barr to serve the remainder of his sentence.

Mr. Collins is 70 years old and his pre-existing medical conditions include asthma, hypertension (high blood pressure), and hyperlipidemia (high cholesterol).[1] These medical conditions, combined with his advanced age, make Mr. Collins particularly vulnerable to severe illness or death should he contract the novel coronavirus (COVID-19). These factors—along with the length of his sentence (26 months), the non-violent nature of his first-time offense, and the absolute lack of any danger to the community—establish that Mr. Collins is an excellent candidate for early release to serve the rest of his sentence in home confinement. Granting release to home confinement at this juncture will save the BOP resources and, perhaps, Mr. Collins' life.

Elderly inmates, particularly those with prevailing health conditions, are eligible for release to home confinement under the First Step Act of 2018 (Pub. L. 115-391) and BOP guidelines, supplemented by directives from the Attorney General. On March 26, 2020, and in response to

---

[1] *See* Ex. 1, Physician's Letter.

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Dallas   Denver   Houston
Los Angeles   New York   Orlando   Philadelphia   San Francisco   Seattle   Washington, DC

the COVID-19 crisis, Attorney General Barr issued a memorandum to the BOP Director calling on the BOP to grant home confinement to inmates who (a) are at-risk because of health problems, (b) were convicted of non-violent offenses, and (c) pose minimum likelihood of recidivism. A week later, on April 3, 2020, he issued another memorandum recognizing the "profound obligation to protect the health and safety of all inmates" and finding that "emergency conditions are materially affecting the functioning of the Bureau of Prisons." The unquestionable import of the Attorney General's memoranda is the conclusion that certain inmates may be safer at home than in BOP facilities. That is certainly true in Mr. Collins' case, particularly as asthma, hypertension, and age are major factors in COVID-19-related illness and mortality.[2] Indeed, the highest co-morbidity conditions associated with COVID-19 include both hypertension and chronic respiratory disease.[3]

Further, release of Mr. Collins to home confinement is wholly consistent with BOP's statutory authority under 18 U.S.C. 3624(c)(2) and 34 U.S.C. § 60541. The CARES Act, enacted on March 27, 2020, authorized the Director of the BOP to lengthen the amount of time prisoners can be placed on home confinement under Section 3624(c)(2) provided that the Attorney General makes a finding that "emergency conditions will materially affect the functioning of the Bureau." Pub L. 116-136, § 12003(b)(2) (2020). As noted above, Attorney General Barr made this finding as announced in his April 3, 2020 memorandum, which also directed the BOP to "immediately maximize appropriate transfers."

Under 18 U.S.C. § 3624, as expanded by the CARES Act, the BOP by statute must "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted." *See* 18 U.S.C. § 3624(c)(2).[4] In Attorney General Barr's March 26, 2020 memorandum, he stated that there are "at-risk inmates who are non-violent and pose minimal likelihood of recidivism," and who "might be safer serving their sentences in home confinement

---

[2] *See, e.g.,* CDC, Coronavirus Disease 2019, "People Who Are at Higher Risk for Severe Illness" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (including on list people 65 years and older, people with moderate or severe asthma, and people who have serious heart conditions).
[3] *See* Report of WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 28, 2020), at 31-32 https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf.
[4] Also persuasive, although less applicable than section 3624, are the criteria for home confinement under 34 U.S.C. § 60541 relating to "eligible elderly offenders." That section, which allows for release to home detention upon written request from either BOP staff or an eligible offender, provide relevant criteria to include:

- Whether the offender is older than 60;
- Whether the offender has been convicted in the past of any federal or state crime of violence;
- Whether the release would result in substantial net reduction of costs to the federal government; and
- Whether the offender is at substantial risk of engaging in criminal conduct or endangering the public if released to home detention.

Here, Mr. Collins is 70 years old, has no prior criminal history of any kind, would be responsible in full for costs of home confinement and has already paid a substantial fine, and poses no risk of reoffending or endangering the public.

rather than in BOP Facilities." Accordingly, BOP was directed to prioritize its various statutory authorities "to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." In providing the discretionary factors that should be considered in implementing his directive, the Attorney General of course included age and vulnerability, as well as the following directly applicable to Mr. Collins:

- priority for offenders in low and minimum security facilities (such as the Pensacola facility to which Mr. Collins has been designated);
- the existence of a verifiable plan for home confinement consistent with public safety and providing "a lower risk of contracting COVID-19" than would be faced in the BOP (such as the plan described below for Mr. Collins);
- and the nature of the offense giving rise to conviction (here, a non-violent financial offense that was, as stated by the U.S. Probation Office, aberrational behavior committed in moments of weakness that is "difficult to adjoin . . . with the otherwise commendable life [Chris] has led" including "dedicat[ing] himself to several charitable, self-less acts, helping and assisting others, both in the public and private sectors.")[5]

If released, Mr. Collins has a firm proposed release plan and he is well-positioned to reenter society as a productive citizen. He will reside at a home owned by his family in Marco Island, FL, where he will have the love and support of his wife and children and where he has been informally quarantining himself. This property has been a long-term home for the Collins family, and provides more than adequate ability to follow CDC Guidelines for self-quarantine, as applicable, social distancing, and other COVID-related precautions. Having already reached retirement age, Mr. Collins has more than adequate resources to support himself and his family while a prisoner, and upon release. Aided by this financial independence, and given his business and professional skills, Mr. Collins would endeavor to spend his time after release contributing to the community through volunteer work and community service, as approved by the Probation Office and when safe. In short, he has strong family support; the ability, opportunity, and desire to give back through service; and a plan to be a stable, contributing member of society.

The impacts of the worldwide COVID-19 pandemic continue to reverberate across all aspects of daily life. This is unquestionably an extraordinary public health crisis with no modern parallel. The impacts on operations of the BOP include issuance of the legislative and executive mandates discussed above and the necessity of expanded home confinement for non-violent, one-time elderly offenders—such as Mr. Collins. In no small part, maximizing the use of home confinement is one tool to counteract the undeniable fact that prisons are an ideal environment for the transmission of contagious disease[6] and that confirmed cases continue to grow.[7]  Incarcerated

---

[5] *See* Final Pre-Sentence Report as to Christopher C. Collins at 36.

[6] Joseph A. Bick, "Infection Control in Jails and Prisons" *Clinical Infectious Diseases* Vol. 45, No. 8 at 1047-55 (Oct. 15, 2007) *available at* https://doi.org/10.1086/521910

[7] NEW YORK TIMES, "Coronavirus Live Updates: U.S. Prisons See Spike in Cases" (June 16, 2020) *available at* https://www.nytimes.com/2020/06/16/world/coronavirus-live-updates.html?referringSource=articleShare

individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe [ ] infection control is challenging in these settings."[8] "[T]hose detained in jails and prisons face particularly grave danger."[9] Simply put, "[r]ealistically the best — and perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible."[10]

We respectfully submit that Mr. Collins is an ideal candidate for immediate transfer to home confinement. Against the backdrop of an unprecedented health crisis, and the rapid spread of a virus that poses extreme danger to elderly prisoners with high risk factors who enter or remain in incarceration, comes Mr. Collins. His age, health conditions, the non-violent nature of his offense, the continuing challenges posed by COVID-19, the pre-established and cost-effective plan for proper functioning of a home confinement sentence, and the absolute lack of any threat to society strongly counsel that transfer to serve the balance of his sentence in home confinement is sufficient to promote respect for the law, provide just punishment, and defer any further criminal activity. We urge you to grant Mr. Collins a home confinement transfer.

Sincerely,

Jonathan R. Barr

Attachment

cc:

Craig Simmons, Regional Counsel
Federal Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-6226
casimmons@bop.gov

---

[8] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (Mar. 2, 2020) *available at* https://bit.ly/2W9V6oS
[9] *United States v. Nkanga Nkanga*, 18-CR-713 (S.D.N.Y.), ECF No. 87, at 1 (Mar. 31, 2020).
[10] *Id.*

EXHIBIT 1



April 23, 2020

Regarding: **Christopher C Collins**
Date of Birth: **5/20/1950**

To Whom It May Concern:

Christopher C Collins is a patient in my practice. He has requested a letter documenting his medical conditions, which include moderate asthma, hypertension and hyperlipidemia. The patient's age and asthma are risk factors which would increase his morbidity if exposed to COVID-19.

If I can be of any further assistance in this matter, please do not hesitate to contact my office.

Sincerely,

Michael R. Jordan, MD

Collins, Christopher C [61156]
MRN #439645

# Attachment 2

Response Received from Warden, FPC Pensacola
Dated June 19, 2020



U.S. Department of Justice

Federal Bureau of Prisons

*Federal Prison Camp*

P.O. Box 3933
Pensacola, Florida 32516

June 19, 2020

Christopher Collins
317 Lamp Lighter Drive
Marco Island, FL 34145

Dear Mr. Collins:

This is in response to your letter dated June 16, 2020, wherein you request for the Federal Prison Camp, Pensacola (FPC) and my office to transfer you to Home Confinement (HC) for the remainder of your sentence, in response to the COVID-19 pandemic.

It is the mission of the Federal Bureau of Prisons to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens. We understand the impact this pandemic is having on our country, and especially our staff, inmate population, community and their families, many of whom also are working on the front lines of the crisis.

Unfortunately, the Bureau does not have statutory authority to designate a Home Confinement program placement for an inmate at the beginning of his or her sentence. This is supported in Title 18, U.S.C., Section 3621, which requires that the Bureau designate any available penal or correctional facility as the place of a prisoner's imprisonment. As you have not yet surrendered yourself to the custody of the Federal Bureau of Prisons, it would be inappropriate for my office or the staff at FPC Pensacola to render an opinion on this matter at this time. Moreover, our local decisions regarding placement of inmates on Home Confinement in response to the COVID-19 pandemic are based on discretionary factors, several of which cannot be evaluated while you are not in Bureau custody.

I trust this addresses your concerns.

Sincerely,

M. V. Joseph
Warden