

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 7, 2020

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>   Re:    *United States v. Christopher Collins*, No. 18 Cr. 567 (VSB)

Dear Judge Broderick:

    The Government respectfully submits this letter in opposition to defendant Christopher Collins's most recent request for a further adjournment of his surrender date or, in the alternative, a modification of his sentence to a term of home confinement under 18 U.S.C. § 3582(c). (Dkt. No. 196). On January 17, 2020, this Court sentenced Collins to a term of imprisonment of 26 months, following his conviction of insider trading and lying to federal agents. Collins was initially scheduled to surrender into Bureau of Prisons ("BOP") custody on March 17, 2020.

    On March 2, 2020, with the consent of the Government, the Court granted Collins's request to adjourn his surrender date to April 21, 2020, in order to allow him to surrender directly to his designated institution. (Dkt. No. 182). On April 1, 2020, again with the Government's consent, the Court granted a further extension of Collins's surrender date to June 23, 2020, in light of the onset of the COVID-19 pandemic. (Dkt. No. 185). On May 29, 2020, also with the Government's consent, the Court granted a further extension of Collins's surrender date to August 18, 2020. (Dkt. No. 188). On August 6, 2020, with the Government's consent, the Court again adjourned Collins's surrender date to October 13, 2020, but requested that the parties submit a joint letter providing information about COVID-19-related restrictions and procedures concerning defendants surrendering to FPC Pensacola. (Dkt. No. 191). The parties submitted that letter on August 14, 2020. (Dkt. No. 194).

<u>Collins's Surrender Date Should Not be Further Adjourned</u>

    The Government respectfully submits that further adjournments of Collins's surrender date are not warranted. Over the past six months, much has been learned about COVID-19, and the BOP has adopted significant protective measures to prevent the introduction and spread of the virus in its facilities.

    Indeed, FPC Pensacola maintains a rigorous system of testing and quarantine to minimize the risk that arriving prisoners, like Collins, will introduce COVID-19 into the prisoner population

or that they themselves will be exposed to the virus once they have entered general population. As explained in the parties' joint letter of August 14, 2020, pursuant to the BOP's Coronavirus Action Plan, when a new prisoner arrives at the facility, the individual undergoes an initial COVID-19 screening. That screening includes a check for physical symptoms of the disease, a temperature check, and a COVID-19 diagnostic test. Inmates who test positive or exhibit COVID-19 symptoms are immediately placed in medical isolation until they meet CDC guidelines for integration into the prison population. New inmates who test negative for the disease and exhibit no symptoms are placed into quarantine for 14 days. During the 14-day quarantine period, inmates' temperatures are checked daily and they are monitored for other symptoms of COVID-19. At the end of the 14 day period, if an inmate has remained asymptomatic, he is screened and tested again. If the inmate continues to test negative and has no other symptoms, he is released into the general population.[1]

These protocols have proven successful. Over the past six months, not a single case of COVID-19 has been detected among the general population of prisoners at FPC Pensacola and the BOP's screening procedures have been able to cut off potential entry points for the disease.[2] Contrary to Collins's suggestion, this remarkable track record cannot be explained away as a product of inadequate testing. Since the pandemic began, Pensacola, which currently houses just over 300 prisoners, has tested over 50 prisoners, including, as discussed, all prisoners entering or leaving the facility, as well as any prisoners who exhibit credible COVID-19 symptoms.

Indeed, FPC Pensacola's track record in controlling the disease among the prisoner population appears to be significantly better than the track record of Collier County, Florida, where Collins now resides. According to data from the New York Times, since the pandemic began, nearly 13,000 cases of COVID-19 have been confirmed in Collier County, which translates to an infection rate of about 3.4% of the overall population. *See* https://www.nytimes.com/interactive/ 2020/us/florida-coronavirus-cases.html. In contrast, as indicated, the infection rate among prisoners at FPC Penscola is zero. Moreover, it is unlikely that the availability or frequency of testing accounts for the difference, given the BOP's strict requirement that symptomatic individuals be tested. In short, given the measures that the BOP has implemented and the inherently controlled nature of the prison environment, there is no reason to believe that Collins would be at a substantially greater risk of contracting COVID-19 at FPC Pensacola than he is in the community.

Collins's medical issues do not justify a postponement either. Collins cites his asthma and hypertension as "underlying health conditions" that place him at greater risk for complications if

---

[1] Previously, prisoners designated to FPC Pensacola were quarantined in an unused dorm at the camp itself. In order to conserve staffing resources and reduce the chances of staff infections, entering inmates are now quarantined in the Special Housing Unit at FCI Marianna and are then transported back to FPC Pensacola once they are cleared to enter the general population.

[2] Although several staff members have been diagnosed with COVID-19, they were immediately separated from the prisoner population. Likewise several prisoners have tested positive upon arriving at the facility and prior to entering the general population. These prisoners were isolated until they recovered and were no longer capable of transmitting the disease.

he were to contract COVID-19 (Mem. at 6), but under current guidance from the Centers for Disease Control ("CDC"), neither of these conditions has been definitively shown to be aggravators of the disease.   *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.   And although the CDC has said that hypertension and moderate to severe asthma *may* place sufferers of those conditions at increased risk, Collins's primary care physician has previously reported that, in Collins's case, both conditions are well controlled and that he is "in good health overall."  *See* PSR ¶ 99.

Collins also points to his age as a factor that the Court should consider, but while it is certainly true that risk for severe illness from COVID-19 increases with age, the latest CDC data indicates the COVID-19-related hospitalization rate for Collins's age bracket (65-74 years old) is 198.7 per 100,000 population, only slightly higher than the hospitalization rate for adults aged 50-64 (136.1), and significantly lower than the rate among individuals 85 or older (513.2).  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

At bottom, Collins's request to further extend his surrender date amounts to a generic assertion that his incarceration poses an unreasonably high risk to him of contracting the virus and experiencing complications from infection.  But the risk associated with Collins's age and medical conditions is not unique to the prison setting; that risk would also be present if he contracted the disease while at liberty, where, as discussed, his likelihood of infection is arguably greater.  Nor do Collins's arguments meaningfully distinguish him from the numerous other defendants in this District and around the country whose risk profiles are similar to or more serious than Collins's but have nevertheless seen their applications for bail, delayed surrender, or compassionate release denied.

To take just one example, in July, Judge Caproni rejected a request by Sheldon Silver to be sentenced to home confinement or, in the alternative, to extend his surrender date due to the fact that incarceration during the pandemic created an unwarranted risk to his health in light of his pre-existing conditions, which included his age (76 years old) and a history of prostate cancer, hypertension, gout, anemia, and gastrointestinal bleeding due to stomach ulcers.  *See United States v. Silver*, No. 15 Cr. 93 (VEC), Dkt Nos. 439, at 30 (describing health conditions); 528, at 24-27, 30-31 (sentencing transcript, noting that "other than a couple of prisons at the very beginning, the BOP has, "been doing a pretty good job" controlling the pandemic "in a situation where much of the country is not doing well.").

<u>Collins's Motion to Modify His Sentence Should Be Rejected</u>

For similar reasons, Collins's motion to modify his sentence to a term of home confinement under Section 3582(c) should be rejected.  As an initial matter, the weight of authority indicates that a sentenced defendant who, like Collins, is not yet in BOP custody cannot avail himself of Section 3582(c). *See United States v. Spruill*, No. 3:18 Cr. 0022, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020) (compassionate release is not appropriate where the defendant has not yet begun to serve the sentence); *United States v. Konny*, No. 19 Cr. 283 (JGK), 2020 WL 2836783 (S.D.N.Y. May 30, 2020) (same); *United States v. Jordan*, No. 19 Cr. 478 (GHW) 2020 WL 4195353 (S.D.N.Y. July 16, 2020) (same); *see also United States v. Brooker (Zullo)*, 2020 WL 5739712, at *7 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate

of extraordinary and compelling reasons that an *imprisoned person* might bring before them in motions for compassionate release.") (emphasis added); *United States v. Nazer*, No. 18 Cr. 00783, 2020 WL 2197840 (N.D. Ill. May 6, 2020) (noting "there is reason for the Court to doubt that Nazer may seek compassionate release prior to his incarceration"); *but see United States v. Austin*, No. 06 Cr. 991 (JSR), 2020 WL 3447521 (S.D.N.Y. June 22, 2020) (entertaining compassionate release motion by a defendant not in BOP custody).[3]

Even if the Court were to conclude that Section 3582(c) is available, the Court should still decline to modify the sentence it imposed earlier this year, both because "extraordinary and compelling reasons" do not exist to do so, and because the balance of factors under Section 3553(a) still tilts heavily in favor of the sentence of incarceration the Court originally imposed.

Under Section 3582, the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). In making this determination, judges are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 2020 W: 5739712, at *7.

Largely for the reasons set forth above in response to Collins's motion to extend his surrender date, Collins cannot establish that extraordinary and compelling circumstances exist in this case. Given the absence of COVID-19 at FPC Pensacola, Collins's risk of contracting and suffering complications form COVID-19 is no higher (and may even be lower) than the risk that he faces in the community. Moreover, as discussed, Collins is not differently situated from many prisoners entering or already detained within the BOP system, including some whose health issues are more significant than his.

As for the Section 3553(a) factors, the Court recognized at sentencing that a term of imprisonment was necessary to achieve general deterrence, to promote respect for the law, and to achieve just punishment for the offenses of conviction. *See* Sentencing Transcript at 93 (quoting Judge Rakoff for the proposition that "no sentence of probation, or anything close to it, could serve" the purposes of sentencing). While the world has changed significantly since January, the need to deter this conduct and to see justice done has not. Moreover, as Judge Caproni recognized in connection with the Silver sentencing, given that the pandemic has imposed significant limitations on the ability of much of the population to travel and socialize, a sentence of home confinement at the present time would have even less deterrent effect than it might otherwise have. *See Silver*, Dkt. No. 528, at 27 ("Given the fact that most of New York is effectively on home

---

[3] *Austin* is distinguishable. There, the defendant served approximately eleven years of his sentence before the district court granted the defendant's 28 U.S.C. § 2255 petition and released him. *Id*. at *1. The Second Circuit reversed the district court. The district court thus reinstated the defendant's sentence and ordered him to voluntarily surrender to complete his sentence. While at liberty, but before surrendering back to BOP custody, the defendant filed a Section 3582 petition. Judge Rakoff distinguished *Konny* and *Spruill* on the ground that the defendants in those cases, like Collins, "had not yet surrendered to federal custody," whereas Austin had served "the majority of his sentence, before this Court released him 2017." *Id*. at *2.

confinement now, and will be for the foreseeable future, that strikes me as an entirely inappropriate sentence that satisfies none of the 3553 factors.").

---

It has been over a year since Collins pled guilty in this case, and almost nine months since he was sentenced.  While it was appropriate to extend his surrender date early in the pandemic, when it remained uncertain whether BOP would be able to control the infection rate in its facilities, over six months of evidence has proven that it can and has done so.  The public has an interest in seeing justice done in this case without further delay.  It is time for Collins to begin his prison sentence.  His motion should therefore be denied.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by: ___/s/_____
Scott Hartman
Max Nicholas
Assistant United States Attorneys
(212) 637-2357/1565

cc:     Defense counsel (by ECF)